UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC., and PHILIPS MEDICAL SYSTEMS DMC, GmbH<br><br>Plaintiffs,<br><br>v.<br><br>JOSE BUAN, GL LEADING TECHNOLOGIES, INC., KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD., KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD., AND SHERMAN JEN,<br><br>Defendants. | No. 1:19 CV 02648<br>Hon. Marvin E. Aspen |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

This lawsuit concerns the alleged misappropriation of trade secrets. Before us are Defendants Kunshan Yiyuan Medical Technology Co., LTD. ("Yiyuan") and Kunshan Guoli Electronic Technology Co., LTD's ("Guoli"; collectively, "Defendants")[1] motions to dismiss Plaintiffs Philips Medical Systems (Cleveland), Inc. and Philips Medical Systems DMC, GmbH's (collectively, "Philips" or "Plaintiffs") Second Amended Complaint (Dkt. No. 92) ("SAC"). (Dkt. Nos. 158, 161.)[2] Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(4) for insufficient process, and

---

[1] The briefing also refers to Guoli as "GuoLi."

[2] Also before us is Defendant Yiyuan's motion to seal Exhibits 1, 2, and 3 of Feng Zhou's Declaration. We grant this motion to seal because they relate to the Confidentiality Order's designated materials of "business or strategic plans . . . price information . . . sales and financial data . . . other information of a competitive, financial or commercial significance." (Confidentiality Order (Dkt. No. 31) ¶ 2.)

12(b)(5) for insufficient service of process.  (*Id*.)  For the reasons set forth below, we deny Defendants' motions to dismiss.

## BACKGROUND

The following facts are taken from Plaintiffs' Second Amended Complaint and are taken as true for the purposes of this motion.  *See Bell v. City of Chi*., 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff Philips Medical Systems (Cleveland), Inc. is a California corporation with its principal place of business in Cleveland, Ohio.  (SAC ¶ 1.)  Plaintiff Philips Medical Systems DMC, GmbH, is a German entity with its principal place of business in Hamburg, Germany.  (*Id*. ¶ 2.)  Plaintiffs engage in "research, development, and commercialization of medical imagining technology," among other lines of business.  (*Id*. ¶ 3.)

Plaintiffs allege that Yiyuan is a Chinese entity with its principal place of business in Kunshan, Jiangsu Province, China.  (*Id*. ¶ 7.)  They believe that Yiyuan is engaged in research and development, manufacturing and selling products for medical imaging equipment, providing technical development, technical services and technical consultation in the field of medical imaging technology," as well as the "import and export of goods and technologies."  (*Id*. ¶ 8.)

Plaintiffs allege that Guoli is a Chinese entity with its principal place of business at the same location in China as Yiyuan.  (*Id*. ¶ 9.)  According to Plaintiffs, Guo Li is a stockholding enterprise specializing in developing and manufacturing electrical vacuum products, including X-ray tubes.  (*Id*. ¶ 10.)

2

I.  **Former Employees Misappropriate Plaintiffs' Information.**

   A.  **Jose Buan**

Plaintiffs allege that two of their former employees, Defendants Jose Buan ("Buan") and Sherman Jen ("Jen"), misappropriated trade secret information from Philips' computer system to share with their new employer, Defendant GL Leading. (*See, id*. ¶¶ 72–83, 88–92, 96–97, 100–101.) On December 26, 2017, Buan "copied over 740 [of] Philips' files, including trade secret and other confidential business information" onto a portable drive. (*Id*. ¶¶ 72, 74–77.) Plaintiffs believe that these files included, among other documents, presentations related to Philips' "2XXX X-ray Tubes and other X-ray tub products." (*Id*. ¶ 73.)

The following day, Buan copied more than 70 additional Philips files onto a portable drive. (*Id*. ¶¶ 78, 80–83.) These files included additional information pertaining to Philips' x-ray tubs. (*Id*. ¶ 79.) A subsequent investigation revealed that Buan took "a trove" of additional files containing "confidential and trade secret technical and business information pertaining to the 2XXX series X-ray tubes, and other important Philips X-ray technologies, including Philips iMRC X-ray tubes." (*Id*. ¶ 89.)

At least one of the drives used to download the data referenced above was connected to Buan's work computer at GL Leading. (*Id*. ¶ 91.) Plaintiffs believe that "additional USB devices that had been connected to Buan's Philips Company Workstation . . . have also been connected to Buan's work computer at GL Leading." (*Id*. ¶ 92.)

   B.  **Sherman Jen**

By August 2017, Jen was communicating with Guoli regarding the formation of GL Leading. (*Id*. ¶ 51.) Plaintiffs believe that between August 2017 and December 2017, Jen was

3

also involved in recruiting Philips employees to join Guoli/GL Leading and sending Philips confidential information and trade secrets to Guoli/GL Leading. (*Id*.)

Plaintiffs suspect that Jen kept "more than **three thousand**" of Philips' electronic materials after he was terminated from Philips. (*Id*. ¶ 96 (emphasis in original).) A number of these documents' legends indicate that they contain Philips' confidential and proprietary information and contain schematics for various components, among other technical information. (*See, e.g.*, *id*. ¶ 97.)

### II.  Buan and Jen Begin Working for GL Leading / Guoli.

Soon after Buan left Philips' Dunlee facility, he began working at GL Leading as a Director of Engineering, and later, as a Senior Manager for Product Engineering. (*Id*. ¶ 100.) Plaintiffs believe that Buan is using information obtained from Philips in his new role. (*Id*.)

Jen began working with Guoli before GL Leading's formation and before he left Philips, "at least as of August 2017." (*Id*. ¶ 101.) This "'under the table'" work included R&D planning, visiting a Guoli manufacturing site in China, instructing the copying of certain of Plaintiffs' proprietary materials, and asking Plaintiffs' employees to join GL Leading, among other things. (*Id*.) At some point, Jen assumed the role of Principal Engineer at GL Leading. (*Id*. ¶ 102.)

Plaintiffs believe that Jen and Guoli were "directly involved" in forming GL Leading and recruiting various Philips employees who had "designed manufactured and commercialized" Plaintiffs' x-ray tubs, including Buan, to join GL Leading. (*Id*. ¶¶ 103, 105.)

The SAC provides additional information concerning how each of the Defendants purportedly used the misappropriated information. (*See id*. ¶¶ 114–161.) By way of example, while working at GL Leading, Buan and Jen purportedly used Philips' proprietary information to

4

design an x-ray tube "for manufacture and commercialization by Guoli and/or Yiyuan." (*Id.* ¶¶ 114–16.)

### III. Relationship Between GL Leading, Guoli, and Yiyuan

Plaintiffs allege that GL Leading, Guoli, and Yiyuan are all competitors and that two of their x-ray tube products are meant to "replace, operate similarly to, or be interchangeable with" certain of Philips' x-ray tubes. (*Id.* ¶ 104.) Plaintiffs further allege that Guoli was "directly involved in the formation of GL Leading" and the hiring of Buan and other personnel from Philips. (*Id.* ¶ 105.)

Plaintiffs believe that Yiyuan is a subsidiary of Guoli, and that one or both of those entities controls GL Leading and "have been acting in concert with GL Leading" with respect to the misuse of Plaintiffs' trade secrets. (*Id.* ¶¶ 108–09.) Apart from that, Plaintiffs allege that Guoli, Yiyuan, and GL Leading share "common directors and/or management" and "certain information technology, electronic data storage and/or communication infrastructure;" one or both of the Defendants "exercise significant financial control over GL Leading;" and GL Leading uses a logo that is identical to the logo used by Guoli, among other things. (*Id.* ¶¶ 110–13.) In short, Plaintiffs allege that there is a high degree of inter-relatedness between GL Leading, Guoli, and Yiyuan, and all played a role in the misappropriate and misuse of Plaintiffs' proprietary information.

## LEGAL STANDARD

### I. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) 'tests whether a federal court has personal jurisdiction over a defendant.'" *MOLD-A-RAMA Inc. v. Collector-Concierge-International*, 451 F. Supp. 3d 881, 884 (N.D. Ill. 2020) (quoting *United Airlines, Inc.*

*v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). If a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of establishing that it exists. *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

When the court rules on a 12(b)(2) motion based on its review of written materials submitted by the parties, as opposed to an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A., et al.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "[A]ny well-pleaded facts alleged in the complaint are taken as true and any factual disputes in the affidavits are resolved in the plaintiff's favor." *MOLD-A-RAMA*, 451 F. Supp. at 884. However, if a defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Capital Int'l Limited*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue*, 338 F.3d at 783). "While in this context affidavits trump the pleadings, in the end all facts disputed in the affidavits will be resolved in the plaintiff's favor." *Leong v. SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1061 (N.D. Ill. 2008).

A court may exercise either general or specific personal jurisdiction over a dispute.[3] *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). "Specific jurisdiction exists 'for controversies that arise out of or are related to the defendant's forum contacts.'" *Abbott Labs., Inc. v. Biovalve Techs., Inc.*, 543 F. Supp. 2d 913, 920 (N.D. Ill. 2008) (quoting *Hyatt Int't Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In the Seventh Circuit, there are "three essential requirements" for specific jurisdiction:

---

[3] No party argues that we have general jurisdiction over Defendants. (*See generally* Dkt. Nos. 159, 162; Combined Resp.)

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 673 (7th Cir. 2012) (internal citations omitted); *see also Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[I]f Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so."); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002).

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedures 12(b)(4) and 12(b)(5).

Federal Rule of Civil Procedure 4 requires that every defendant be served with a copy of the operative complaint and summons. *Luxxotica Grp. S.P.A. v. Partnerships*, 391 F. Supp. 3d 816, 821 (N.D. Ill. 2019) (citing Fed. R. Civ. P. 4(b), 4(c)(1)). "Only proper service vests a district court with personal jurisdiction over a defendant. *Id*. (internal citation omitted).

"Rule 12(b)(4) motions challenge the form of the process; they test matters such as whether the summons bore the seal of the court, was signed, or was addressed to the proper party." *Luxxotica*, 391 F. Supp. 3d at 821 (internal citation omitted). By contrast, Rule 12(b)(5) motions challenge the way the process was served. *Id*. "Because motions under both rules ultimately test the court's personal jurisdiction over the defendant, the same standards govern motions under both rules." *Id*. (internal citation omitted).

"The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (internal citation omitted). If a court finds that a plaintiff has not met this burden and lacks good cause for not perfecting service, the court must either dismiss the lawsuit or specify a time within which the plaintiff should serve the defendant. *Id*.

7

## ANALYSIS

**I.  Yiyuan and Guoli's Motions to Dismiss for Lack of Personal Jurisdiction.**

Defendants argue this this case should be dismissed for lack of personal jurisdiction because they have not engaged in suit-related conduct in this jurisdiction.  (Dkt. Nos. 159 at 6–12, 162 at 5–12.)  For example, Guoli argues that it was not "directly involved" in the formation of GL Leading, but even if it was, that conduct was lawful and unrelated to Plaintiffs' DTSA and unjust enrichment claims.  (Dkt. No. 159 at 6–7.)  Both Defendants dispute that they control or have been "acting in concert" with GL Leading.  (Dkt. Nos. 159 at 7, 162 at 6–7.)  According to Defendants, they do not share common directors or management, nor certain information technology, electronic data storage, or communication infrastructure with GL Leading.  (Dkt. Nos. 159 at 7, 162 at 6.)  Defendants assert that they do not exert significant financial control over GL Leading either.  (*Id*.)

Guoli claims that it no incentive to "act in concert" with GL to misappropriate Plaintiffs' trade secrets because it had no use for them.  (*Id*. at 8.)  Yiyuan denies that it used the Philips intellectual property identified in the Second Amended Complaint and further adds that in its contract with GL Leading, Yiyuan "obtained a promise from GL Leading that GL Leading owned the intellectual property it was providing to Yiyuan and that GL Leading had not misappropriated trade secrets."  (Dkt No. 162 at 9–10.)  In support of these contentions, Defendants submit declarations by Guoli's General Manager Hao Huang (Dkt. No. 158-3), Yiyuan's General Manager Feng Zhou (Dkt. No. 161-3), and Yiyuan's Vice General Manager Xiaoqin Du (Dkt. No. 158-4) that generally refute the aforementioned allegations and others made in Plaintiffs' Second Amended Complaint.  (*See generally* Dkt Nos. 158-3, 158-4; 159 at 6–11, 161-3, 162 at 7–8.)

In response, Philips argues that the declarations submitted by Guoli and Yiyuan should be given limited weight, if any, because they are contradicted by documentary evidence produced by Defendants in this case,[4] GL Leading's interrogatory responses, and admissions in Jen's Answer to the Second Amended Complaint. (Philips' Consolidated Opposition to Kunshan Guoli Electronic Technology Co., LTD.'s, and Kunshan Yiyuan Medical Technology Co., LTD.'s Motions to Dismiss ("Combined Response" or "Combined Resp.") (Dkt. No. 193) at 7–10.) According to Philips, these materials demonstrate "that numerous GuoLi and Yiyuan personnel" have directed business activity to Illinois with the purpose of acquiring proprietary and confidential Philips documents, and have maintained "absolute control" over GL Leading in Illinois, including, for example, the recruitment and hiring of employees in Illinois and the approval of capital improvements to GL Leading's facility in Illinois. (*Id*. at 10.) In support of this argument, Plaintiffs attached 74 exhibits to their Combined Response, including email correspondence, schematics, and webpages, among other documents. (Combined Resp. at Exs. 1–74.)

Defendants moved to exclude 47 of those exhibits on various grounds. *See generally Philips Medical Systems (Cleveland), Inc. v. Buan*, No. 19 CV 2648, 2021 WL 83736 (N.D. Ill. Jan. 11, 2021). That motion was denied in January 2021. *Id*. at *1. Philips later filed declarations authenticating the webpage exhibits, as directed by Magistrate Kim. (*See* Dkt. Nos. 256, 258.)[5] Defendants then objected to Magistrate Judge Kim's ruling (Dkt. No. 259), necessitating another round of briefing. We denied Defendants' motion to reconsider Magistrate

---

[4] Discovery has been ongoing between Plaintiffs and other defendants in this case. (*See, e.g.*, Dkt. Nos. 27, 30, 251.)

[5] Dkt. No. 258 appears to be a corrected version of Dkt. No. 256-6.

Judge Kim's Order for reasons explained in the separate Opinion issued contemporaneously with this one.

Plaintiffs met their burden at this juncture. As Magistrate Judge Kim observed, "All that is needed at this stage . . . is a *prima facie* showing that Defendants are subject to personal jurisdiction in this district." *Philips Medical Systems*, 2021 WL 83736, at *4 (citing *Purdue*, 338 F.3d at 782).) The numerous exhibits attached to the Combined Response satisfy this standard.

For example, the exhibits suggest that Yiyuan received certain of Philips' proprietary information from individuals who left Philips' Illinois facility to work for GL Leading:

- On August 29, 2017, Jen sent Xiaoqin Du[6] an eighteen-page schematic bearing the word "Philips" and "© 2014 Philips Healthcare USA Aurora, IL" on every page. (Dkt. No. 193-1.)
- On September 3, 2017, Jen sent Xiaoqin Du an email attaching a Philips PowerPoint stamped "Confidential," which sets forth information about Philips' "Organizational Direction," "Organizational Changes," and "Organizational Development." (Dkt. No. 193-2.)

The exhibits also suggest that Defendants' personnel were involved in establishing GL Leading in Illinois and played a role in its ongoing operations:

- On November 22, 2017, Jen sent an email to a number of individuals, including Xiaoqin Du, whom he cc'd, in which he appears to describe steps being taken in connection with the establishment of GL Leading in Illinois. Among other things, he writes that "Ms. D""—presumably Xiaoqin Du—"will finish all the paper work for the company

---

[6] Xiaoqin Du is Yiyuan's Vice General Manager. (Dkt. No. 158-4.)

registration and everyone's contract. . . . Ms. Du will fly to Cleveland to get all the IT support issue [sic] done." (Dkt. No. 193-13.)

- On June 18, 2018, Xiaoqin Du advises Buan that the "budget was approved by president Mr. Yin," Guoli's Chairman. (Dkt. No. 193-15.)

- On July 26, 2018, Buan sent Xiaoqin Du and others a PowerPoint presentation entitled, "Monthly Management Review" in anticipation of an upcoming meeting. (Dkt. No. 193-61.) The presentation relates to GL Leading Technologies, Inc. and describes the company's "Engineering Activities," as well as its "Management/Site Activities." (*Id*.)

- On April 25, 2019, Xiaoqin Du sent Buan a schedule, presumably for Du's upcoming trip to Illinois. Du describes logistics for meeting lawyers who Buan apparently "found," noting "according [to] the evaluation by our lawyer we will make decision on most suitable one to be **our** attorney." (Dkt. No. 193-20 (emphasis added).) Du comments on other tasks and writes, "Of course, every day **we** will have a meeting with Harry and Mr. Yin to discuss and analyze progress. Especially before **we** make any decision **we** have to get approval by Mr. Yin." (*Id*. (emphasis added).)

- On April 30, 2019, Xiaoqin Du sent what appears to be a draft employment agreement to Buan. Buan remarks that he as updated the agreement "to make sure it is correct for Illinois." He adds that he "will send it out to everyone and ask them to sign it today." The employment agreement attached to his email relates to employment for GL Leading Technologies, Inc., located in Aurora, Illinois. (Dkt. No. 193-14.)

There is some suggestion that GL Leading may be a subsidiary of one or both Defendants:

- On October 31, 2017, an individual at Cushman & Wakefield asked Jen to provide information about GL Technologies in connection with a rental arrangement. Jen

11

responded, "Basically, we are the subsidiary from GL Electronic which is based at KunShan, China. It is a well established company, and we will be the R&D division in US. The Company registered in US will be GL-Leading Technologies Inc. You can check this website www.glvac.com." (Dkt. No. 193-49.) Exhibits to the declarations of Nicholas W. Armington (Dkt. No. 256-1) and Jan Leheij (Dkt. No. 256-5) reflect that Guoli and Yiyuan are located in Kunshan, China. (*See* Dkt. Nos. 256-2, 256-7, 258.) The exhibits further suggest that Yiyuan took steps to facilitate information sharing between Yiyuan and GL Leading:

- On May 17, 2018, Xiaoquin Du sent Buan and others an email concerning an "IT Project." (Dkt. No. 193-31.) Du wrote, "Mr. Yin decide [sic] to set up individual IT sysetem [sic] for Kunshan Yiyuan and GL Leading so that we can share the same server through VPN, each colleague can find and save documents in same place and easy to share the information." (*Id.*)

- On February 15, 2019, an individual who appears to be associated with Yiyuan based on his email address (xujiajia@glvac.cn) advised a group of individuals with @glleading.com email addresses, including Jen and Buan: "We created a folder for sharing the tube building status and record information **(yiyuan/ks-au-common folder/GLA2153 tube built**)." (Dkt. No. 193-33.)

Additionally, the exhibits suggest that certain schematics used by Philips in Illinois may have been repurposed by Guoli for its own use:

- Schematics produced by GL Leading include references to both Philips and Kunshan Guoli Electronic. (*See, e.g.*, Dkt. Nos. 193-6 (noting that a "certificate of compliance" should be transmitted "BY E-MAIL TO INCOMING.INSP.AURORA@PHILIPS.COM"

12

and also bearing the phrase "KUNSHAN GUOLI ELECTRONIC" elsewhere on the document); 193-8 (noting "PHILIP'S/DONE APPROVAL REQUIRED" and also bearing the phrase "KUNSHAN GUOLI ELECTRONIC" elsewhere on the document).) Together, these and many other materials attached to, or otherwise referenced in, Plaintiffs' Response make a *prima facie* showing that Defendants intentionally engaged in the misappropriation of trade secrets, expressly aimed at Illinois,[7] with knowledge that Philips would be injured in Illinois. *See Felland*, 682 F.3d at 674–75. Based on the information put forth by the parties to date, Defendants could reasonably anticipate being hailed into court here and doing so accords with traditional notions of fair play and justice. Accordingly, we have specific jurisdiction over Defendants in this case.

At trial, Plaintiffs will still bear the burden of proving that jurisdiction is appropriate in this case. *See Rice v. Nova Biomed. Corp.*, 38 F.3d 909, 914–15 (7th Cir. 1994 (noting that "the denial of a preliminary challenge to personal jurisdiction . . . is not an automatic bar to renew[a] of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial"). And to the extent Plaintiffs intend to use any of the exhibits attached to their Response to prove their case at trial, the exhibits must be in admissible form.

## II. Yiyuan and Guoli's Rule 12(b)(4) and (5) Motions to Dismiss.

Defendants argue that Plaintiffs should have served them pursuant to the Hague Convention since they are Chinese corporations with their principal places of business in China. (Dkt. Nos. 159 at 14–15, 162 at 13–15.) They further argue that since Plaintiffs did not serve

---

[7] Defendants filed supplemental briefing analogizing this case to *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571 (7th Cir. Jul. 13, 2020). These cases are distinguishable. In *Foxconn*, there were not enough facts to show that the defendants' conduct was targeted to Illinois. Here, however, Plaintiffs' allegations and the evidence before us shows a variety of Illinois based conduct, namely, that the defendants did business in Illinois and received stolen designs and drawings in and from business operations in Illinois. (*See, e.g.*, SAC ¶¶ 16, 18.)

13

them through this mechanism, and only attempted service through an individual and an entity who were not authorized to accept service, service has not been accomplished.[8] (Dkt. Nos. 159 at 15, 162 at 14–15.)

Plaintiffs dispute that they are required to comply with the service provisions of the Hague Convention. (Dkt. No. 193 at 22 n.6.) According to Plaintiffs, the service provisions of the Hague Convention do not apply where service of process is accomplished within the United States and in accordance with state law and the Due Process Clause. (Dkt. No. 193 at 22–29.) Plaintiffs claim that they properly served Defendants through Defendants' subsidiary in Illinois (GL Leading) and Guoli's U.S. Director of Operations (Jose Frias) in California. (Combined Resp. at 22–29.)

Plaintiffs need not effectuate service using Hague Convention procedures if they properly effectuate service in the U.S. *See Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 n.2 (N.D. Ill. 198) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)); *see also Wissmiller v. Lincoln Trail Motosports, Inc.*, 552 N.E.2d 295, 299-300 (4th Dist. 1990). Accordingly, we will consider whether they properly served Defendants when they served GL Leading and Jose Frias.

**A. Service Upon GL Leading**

Under Federal Rule of Civil Procedure 4(h), a foreign corporation may be served in the manner directed by Rule 4(e)(1). This rule provides that an individual may be served in a judicial district of the United States by "following state law for serving a summons in an action

---

[8] Plaintiffs attempted to serve Guoli through both GL Leading and Jose Frias, but Yiyuan through GL Leading only. (Dkt. Nos. 159 at 15, 162 at 14–15.)

brought in courts of general jurisdiction in the state where the district court is located or where services is made. . . ." Fed. R. Civ. P. 4(e)(1).

In Illinois, a private corporation may be served by leaving a copy of the process with any officer or agent of the corporation found anywhere in the State. 735 ILCS 5/2-204. Plaintiffs contend that GL Leading is such an agent by virtue of being a subsidiary of one or both Defendants. (Combined Resp. at 22–23.)

Plaintiffs assume that GL Leading is Defendants' subsidiary based on Defendants' purported involvement in GL Leading's operations and an email from Jen to an individual at Cushman & Wakefield, in which Jen wrote of GL Leading: "Basically, we are the subsidiary from GL Electronic. . . ." (Combined Resp. at 22–27; Dkt. No. 193-49.) Plaintiff's assumption is problematic for several reasons.

The chief issue is that Defendants have put forth declarations attesting to the fact that GL Leading *is not* a subsidiary of either Defendant. (*See, e.g.*, Dkt. No. 158-3 at ¶ 8 ("GuoLi does not have, and has never had, any ownership interest in GL Leading Technologies, Inc. . . ."); Dkt. No. 161-3 at ¶ 8 ("Yiyuan does not have any ownership interest in GL Leading.").)

Evidence put forth to the contrary is not persuasive because it is consistent with the idea that GL Leading *is not* Defendants' subsidiary. Defendants' purported involvement in the formation of GL Leading suggests a parent-subsidiary relationship but not definitive proof of it. Likewise, Jen's email does not conclusively demonstrate that GL Leading is a subsidiary of either one or both of the Defendants. For one thing, it is not clear that Jen understood the legal significance of the term "subsidiary" when he used it in his email. Based on the information available to us, Jen was trained as an engineer, not an attorney. Additionally, Jen's use of the term "basically" suggests that Jen regards GL Leading as akin to a subsidiary, though it might

15

not be one in fact. Further, Jen does not reference either Defendant by name in his email, referring to only "GL Electronic." Without more information, it would be difficult to discern whether Jen's use of the term "GL Electronic" was intended to encompass either, both, or neither of the Defendants.

Had Plaintiffs put forth corporate formation documents demonstrating that GL Leading is a subsidiary of one or both Defendants, we might have reached a different conclusion. But as it stands, we cannot conclude that GL Leading is or was Defendants' subsidiary, such that service upon Defendants was properly effectuated through GL Leading.

Even if we were to assume that GL Leading is Defendants' subsidiary, it is not clear that GL Leading would qualify as an "agent" for service of process under Illinois law. Illinois courts consider thirteen factors to determine whether a domestic subsidiary is an agent for the purpose of service of process:

> (1) the subsidiary was established and wholly owned by the parent; (2) the parent paid the salaries of the subsidiary's directors; (3) the parent guaranteed the subsidiary's lease; (4) the subsidiary's sole business was the sale of parts for the parent; (5) the parent listed the subsidiary's address in advertisements; (6) the subsidiary existed primarily to promote the sale and distribution of the parent's products; (7) the subsidiary was obligated to repaid and sell parts for the parent's products; (8) the subsidiary was contractually required to apprise the parent of all aspects of its business; (9) the subsidiary was authorized to prosecute trademark infringement suits in the parent's name; (10) the parent controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering; (11) the parent dominated the subsidiary's board of directors; (12) the subsidiary conducted its board meetings in the domicile of the parent; and (13) the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report.

*Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 (N.D. Ill. 1998).

By Plaintiffs' own admission, there is insufficient evidence in the record to conclude that GL Leading satisfies many of these factors, purportedly because such information has not been

produced by other defendants. (*See, e.g.* Combined Resp. at 24 (writing of factor two: "While it appears that GL Leading's president, Harry Jiang, is also a director of Yiyuan. . .GL Leading has not provided any discovery concerning the make-up and/or compensation of its board of directors. . . ."), 26 (writing of factor 11: "GL Leading has yet to produce information concerning its board of directors. . . . But its president is a Yiyuan director, and *on information and belief*, GuoLi's chairman effectively controls GL Leading's board's actions.") (emphasis added); 26 (writing of factor 12: "GL Leading has yet to produce any board documents. . . ."); 27 (writing of factor 13: "No defendant has yet to produce any GuoLi or Yiyuan financial statements.").)

Other factors are in dispute and not fully satisfied by evidence put forth by Plaintiffs. For example, in support of factor one ("Parent Established and Owned Subsidiary"), Plaintiffs state only that GL Leading was "established under the direction and control" of two of Defendants' employees, that one of Defendants' employees "was kept closely apprized and authorized and approved actions taken by his operatives both before and after GL leading was established," and that GL Leading has represented itself to be a Guoli subsidiary, citing the Jen email referenced above. (Combined Resp. at 24.) Although some of these allegations might be consistent with the contention that one or both Defendants "established and owned" GL Leading, they far from demonstrate that fact. Arguments relating to factors three, five, and eight suffer from similar deficiencies.

Another issue is that Plaintiffs address some of the factors in relation to one, but not both defendants. For example, Plaintiffs claim that factor 9 ("Subsidiary Authorized to Prosecute Trademark Suit for Parent") is satisfied because "The Technical Service Corporation Agreement provides that all GL Leading's inventions belong to Yiyuan" but makes no mention of Guoli. (*See* Combined Resp. at 26.)

In sum, Plaintiffs have not put forth enough evidence to suggest that GL Leading satisfies the bulk of these factors in relation to the Defendants. Accordingly, this is a separate reason to conclude that service was not properly effectuated upon Defendants through GL Leading.

### B. Service Upon Jose Frias

Plaintiffs argue that service was also accomplished by serving Jose Frias in California; they contend Frias is a "general manager" of both Defendants. (Combined Resp. at 27–29.) California law decides when an individual is properly served in California. There, a foreign corporation can be served against the foreign corporation's general manager. Cal. Corp. Code § 2110. California defines "general manager" to include "any agent of the corporation of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." *Flaco v. Nissan North America, Inc.*, 987 F. Supp. 2d 1071, 1074 (C.D. Cal. 2013); *see also Yamaha Motor Co., Ltd. V. Superior Court*, 174 Cal. App. 4th 264, 273 (2009).

In support of their argument that Frias is Guoli and Yiyuan's general manager, Plaintiffs attach an exhibit of Frias' LinkedIn page from around the time that he was served. Frias' LinkedIn page indicates that he was holding himself out as a "MANUFACTURING EXECUTIVE/OPERATIONS LEADERSHIP" and employed by Guoli as "Director- US Operations" since April 2019. (Dkt. No. 193-73.) Plaintiffs contend that since they served GuoLi's general manager, Frias, that they thereby served Yiyuan through Guoli since they alleged that "Yiyuan is a subsidiary of GuoLi" such that a Guoli general manager is also a Yiyuan general manager for purposes of service. (*See* SAC ¶ 108.) Yiyuan did not reply to this argument. (Consolidated Reply (Dkt. No. 210) at 36.) The allegation that Guoli and Yiyuan are related business entities is bolstered by the facts that they are represented by the same counsel and share similar naming conventions (Dkt. No. 193-23 (*Compare* "Kunshan Yiyuan Medical

18

Technology Co., Ltd." *with* "Kunshan Guoli Electronic Technology Co., Ltd.").) More, the fact that Yinyuan ultimately learned of this lawsuit confirms that service on Frias was "reasonably certain" to make them "apprised of the service made," as it did just that. *Flaco*, 987 F. Supp. 2d at 1074 (Dkt. No. 193-23 (Guoli and Yiyuan's lawyer stating that they are apprised of the amended complaint).) Accordingly, we hold that service has properly been effectuated by having served Frias.

## CONCLUSION

For the above reasons, we deny the motions to dismiss and grant Defendant Yiyuan's motion to seal Exhibits 1, 2, and 3 of Feng Zhou's Declaration. (Dkt. Nos. 158, 160, 161.)

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: April 19, 2021
       Chicago, Illinois

19