**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC. and PHILIPS MEDICAL SYSTEMS DMC, GmbH, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 19-cv-02648 |
| v. | ) ) | Judge Marvin E. Aspen |
| JOSE BUAN, GL LEADING TECHNOLOGIES, INC., KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD., KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD., and SHERMAN JEN, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiffs Philips Medical Systems (Cleveland), Inc. ("Philips Cleveland") and Philips

Medical Systems DMC, GmbH ("Philips Germany") have brought suit against Defendants Jose

Buan, GL Leading Technologies, Inc. ("GL Leading"), Kunshan Yiyuan Medical Technology

Co., Ltd. ("Yiyuan"), Kunshan GuoLi Electronic Technology Co., Ltd. ("GuoLi"), and Sherman

Jen, alleging that Defendants misappropriated trade secrets and confidential information

pertaining to the development and production of X-ray tubes that are used in medical imaging

machines.  In light of another lawsuit brought by Plaintiffs against them in China, Yiyuan and

GuoLi (collectively, the "Kunshan Defendants") now move to dismiss Plaintiffs' claims against

them in this litigation on *forum non conveniens* grounds or, alternatively, to stay the claims based

on the abstention doctrine set forth in *Colorado River Water Conservation District v. United*

*States*, 424 U.S. 800, 96 S. Ct. 1236 (1976).  (Dkt. No. 285, Mot. to Dismiss; Dkt. No. 286,

Mem. in Supp. of Mot. to Dismiss ("Mem.").) Plaintiffs oppose the motion.[1] (Dkt. No. 294,

Pls.' Opp'n to Mot. to Dismiss ("Opp'n").) For the following reasons, we deny the Kunshan

Defendants' motion in its entirety.

## FACTUAL BACKGROUND

We take the following facts from the pleadings, other filings in this case, and the

materials submitted or identified by Plaintiffs and the Kunshan Defendants in briefing this

motion. Unless contradicted by other evidence in the record, we have accepted the allegations in

Plaintiffs' Second Amended Complaint (the operative complaint) as true for purposes of this

motion. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (*forum non conveniens*

motion); *Loughran v. Wells Fargo Bank, N.A.*, No. 19 C 4023, 2019 WL 6349890, at *2 (N.D.

Ill. Nov. 27, 2019) (*Colorado River* abstention motion), *aff'd*, 2 F.4th 640 (7th Cir. 2021).

Philips Cleveland is a California corporation with its principal place of business in

Cleveland, Ohio. (Dkt. No. 92, Second Am. Compl. ("SAC"), ¶ 1.)[2] Philips Germany is a

German entity with its principal place of business in Hamburg, Germany. (*Id.* ¶ 2.) Plaintiffs

engage in "research, development, and commercialization of medical imaging technology." (*Id.*

¶ 3.) In October 2001, Philips Cleveland acquired "a company with a facility in Aurora, Illinois

that designed, manufactured, and distributed X-ray tubes for OEM and replacement

---

[1] Plaintiffs filed their opposition and certain accompanying exhibits under seal. If we refer to a
sealed document, we attempt to do so without revealing any information that could be reasonably
deemed confidential. Nonetheless, to the extent we discuss confidential information, we have
done so because it is necessary to explain the path of our reasoning. *See In re Specht*, 622 F.3d
697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are
presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute,
rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568
(7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

[2] For ECF filings, we cite to the page number(s) set forth in a document's ECF header unless
citing to a particular paragraph or other page designation is more appropriate.

applications." (*Id.* ¶¶ 24, 25.)  Philips Cleveland thereafter designed and manufactured X-ray tubes at the Aurora facility for Philips Germany.  (*Id.* ¶ 64.)  By the end of 2017, however, Plaintiffs had closed the Aurora facility and transferred the facility's operations to Hamburg, Germany.  (*See* Dkt. No. 158-1, Ex. 1 to GuoLi's May 18, 2020 Mot. to Dismiss, at 2–3; Dkt. No. 158-4, May 18, 2020 Decl. of Xiaoqin Du ("Du Decl."), ¶ 10.)

GuoLi and Yinyuan are Chinese corporations with their principal places of business in Kunshan, Jiangsu Province, China.  (SAC ¶¶ 7, 9; Mem. at 4.)  By the end of 2013, GuoLi had established a medical X-ray tube division, and in February 2014, it began developing a medical X-ray tube product known as GLA2153.  (Du Decl. ¶ 4.)  In May 2018, GuoLi formed Yinyuan "to focus on the medical x-ray vacuum tube business," and it transferred its medical X-ray business, including its work on GLA2153, to Yiyuan.  (*Id.* ¶¶ 6–7; Dkt. No. 161-3, May 16, 2020 Decl. of Feng Zhou ("Zhou Decl."), ¶ 4; Dkt. No. 210-5, July 16, 2020 Suppl. Decl. of Feng Zhou ("Suppl. Zhou Decl."), ¶ 4.)  GuoLi does not have any employees in Illinois or facilities in the United States, and it has not sold any medical X-ray tubes in the United States.  (Dkt. No. 158-3, May 16, 2020 Decl. of Hao Huang ("Huang Decl."), ¶ 5.)  Yiyuan does not have any employees or facilities in the United States, and it has never sold any products in the United States.  (Zhou Decl. ¶ 5.)

GL Leading is an Illinois corporation with its headquarters and principal place of business in Aurora, Illinois.  (SAC ¶ 5.)  GL Leading was established in late 2017 as a company to consult in the design of replacement and OEM components for medical imaging equipment.  (*Id.* ¶¶ 6, 98.)  GL Leading provided consulting services first to GuoLi, and then to Yiyuan after Yiyuan's formation.  (Du Decl. ¶¶ 12, 24; Suppl. Zhou Decl. ¶ 7.)  GuoLi and Yiyuan have been

GL Leading's only customers.  (Dkt. No. 210-3, July 17, 2020 Suppl. Decl. of Xiaoqin Du ("Suppl. Du Decl."), ¶ 14.)

GL Leading's services to GuoLi and Yiyuan involved the design of X-ray tube products. (Du Decl. ¶¶ 8, 12.)  In early 2018, GL Leading reviewed GuoLi's designs for GLA2153 and provided comments and suggested improvements to the designs.  (Dkt. No. 193-26, GL Leading's 3d Am. Resps. to Pls.' 1st Set of Interrogs., at 12; Suppl. Du Decl. ¶ 10; Dkt. No. 210-4, July 16, 2020 Decl. of Shiqiang Xu ("Xu Decl."), ¶ 4.)  GL Leading also participated in designing another X-ray tube, YY8019, which Yiyuan began developing in 2019.  (Du Decl. ¶ 8; GL Leading's 3d Am. Resps. to Pls.' 1st Set of Interrogs. at 12 (asserting that GL Leading used "parts from the GLA2153 tube to create the YY8019 tube").)  When GL Leading provided services to GuoLi, GuoLi personnel visited GL Leading's facility in Illinois several times.  (*See* Suppl. Du Decl. ¶ 8.)  Similarly, once GL Leading began providing services to Yiyuan, Yiyuan personnel frequently traveled to GL Leading's facility to work with its personnel on projects. (Suppl. Zhou Decl. ¶ 2.)  In particular, "Yiyuan held monthly meetings with GL Leading engineers" in the second half of 2018 "to understand GL Leading's progress with projects it was working on for Yiyuan and to ensure that GL Leading was making sufficient progress."  (Suppl. Du Decl. ¶ 13.)  Yiyuan and GL Leading also share a file folder that engineers from both companies can access to upload and download technical documents for the projects they work on with each other.  (Suppl. Zhou Decl. ¶ 5.)

Defendant Jose Buan is an Illinois citizen.  (SAC ¶ 4.)  Defendant Sherman Jen lives in Wisconsin but regularly conducts business in Illinois.  (*Id.* ¶ 11; Dkt. No. 69-1, GL Leading's 2d Am. Resps. to Pls.' 1st Set of Interrogs., at 17.)  In 2017, both Buan and Jen were working on X-ray tubes at Philips Cleveland's Aurora facility.  (Dkt. No. 294-1, Ex. A to Opp'n, at 26, 31, 37.)

They left Philips Cleveland's employ on December 29, 2017 and thereafter joined GL Leading, where they work as engineers. (SAC ¶¶ 11, 38, 52, 100, 102.) Several other individuals who used to work on Plaintiffs' X-ray tubes at the Aurora facility work or have worked for GL Leading as well. (Id. ¶ 103; GL Leading's 2d Am. Resps. to Pls.' 1st Set of Interrogs. at 17; GL Leading's 3d Am. Resps. to Pls.' 1st Set of Interrogs. at 12–13; Ex. A to Opp'n at 26, 28, 30, 34, 37–39.)

Between August 2017 and December 2017—and while still working for Philips Cleveland—Jen emailed documents belonging to Plaintiffs, including documents relating to Plaintiffs' X-ray tubes, to GuoLi personnel. (SAC ¶¶ 127, 129, 131, 133; Dkt. Nos. 193-1 to 193-4, Exs. 1–4 to Pls.' Resp. to Kunshan Defs.' May 18, 2020 Mot. to Dismiss; Du Decl. ¶¶ 5, 7; Suppl. Du Decl. ¶ 9.) During this time, he also worked "under the table" for GuoLi; this work included R&D planning, visiting GuoLi's manufacturing site in China in the summer of 2017, and preparing documents based on information from Plaintiffs. (SAC ¶ 101.) Upon leaving Philips Cleveland, Jen kept more than three thousand electronic files belonging to Plaintiffs that contained confidential information regarding Plaintiffs' X-ray tubes, and he later emailed some of this information to GuoLi and GL Leading personnel. (Id. ¶¶ 96, 97, 136, 138, 139, 141, 144, 155, 157.) As for Buan, he used his work computer to copy hundreds of Plaintiffs' files, including trade secret and other confidential information relating to Plaintiffs' X-ray tubes, from Plaintiffs' secured cloud storage system and download them onto high-capacity USB storage drives before leaving Philips Cleveland. (Id. ¶¶ 66, 69–83, 89–90.) Buan later used his work computer at GL Leading to access files from at least one of these USB drives. (Id. ¶¶ 88, 89, 91.) Plaintiffs allege that the information downloaded by Buan and disclosed by Jen to others reflects trade secret or confidential information; that GuoLi, Yiyuan, and/or GL Leading received

this information; and that GuoLi, Yiyuan, and/or GL Leading have used this information to develop the GLA2153 and/or YY8019 X-ray tubes. (*See, e.g., id.* ¶¶ 128, 130, 132, 134, 135, 137, 140, 142, 143, 145, 156, 158, 160, 163, 165, 172–76, 211–13.)

## PROCEDURAL BACKGROUND

In April 2019, Plaintiffs brought this lawsuit against GL Leading and Buan. (Dkt. No. 1, Compl.) Plaintiffs added the Kunshan Defendants and Jen as defendants in November 2019 and March 2020, respectively. (Dkt. No. 46, First Am. Compl.; SAC.) Plaintiffs allege that the Kunshan Defendants are liable for (1) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (2) trade secret misappropriation under the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*; and (3) unjust enrichment under Illinois law. (SAC Counts I, II, & IV; Opp'n at 14–15 (assertion by Plaintiffs that their claims are governed by federal and Illinois law).)

The Kunshan Defendants moved to dismiss Plaintiffs' claims against them for lack of personal jurisdiction and failure to serve process. (Dkt. Nos. 158, 161.) We denied these motions on April 19, 2021. (Dkt. No. 282, Apr. 19, 2021 Mem. Op. & Order ("Apr. 19, 2021 Op.").) In doing so, we ruled that we had personal jurisdiction over the Kunshan Defendants because Plaintiffs had made "a *prima facie* showing that [the Kunshan] Defendants intentionally engaged in the misappropriation of trade secrets, expressly aimed at Illinois, with knowledge that Philips would be injured in Illinois." (*Id.* at 13 (footnote omitted).) "Plaintiffs' allegations and the evidence before us," we continued, "show[ed] a variety of Illinois based conduct, namely, that the [Kunshan] [D]efendants did business in Illinois and received stolen designs and drawings in and from business operations in Illinois." (*Id.* at 13 n.7.) The Kunshan Defendants answered Plaintiffs' SAC on May 3, 2021. (Dkt. Nos. 287, 288.)

Although discovery commenced in July 2019, the Kunshan Defendants did not begin participating in discovery until May 2021, when the magistrate judge overseeing discovery in this case ordered the parties to complete written discovery by October 15, 2021. (*See* Dkt. No. 169, May 22, 2020 Am. Joint Status Rpt., at 2–4, 7–9; Dkt. No. 293, May 11, 2021 Minute Entry.) The magistrate judge further ordered (1) GL Leading to share the discovery requested and produced to date with the Kunshan Defendants as soon as possible; (2) the Kunshan Defendants to review these materials as soon as possible; (3) Plaintiffs and the Kunshan Defendants to confer "about each side's data and electronic communication systems in preparation for their eventual ESI discovery discussions"; and (4) the parties to "confer about a protocol for deposing witnesses who are residents of China." (May 11, 2021 Minute Entry.)

On February 19, 2021, Plaintiffs sued the Kunshan Defendants in China for trade secret misappropriation under China's Anti-Unfair Competition Law (the "Chinese Litigation"). (Dkt. No. 285-1, May 3, 2021 Decl. of Eric C. Cohen ("Cohen Decl."), ¶ 2; Dkt. No. 285-2, Ex. 1 to Cohen Decl., at 4–15.) Plaintiffs' complaint in the Chinese Litigation was served on the Kunshan Defendants on or about April 21, 2021. (Cohen Decl. ¶ 2.) The court overseeing the Chinese Litigation is a little more than an hour's drive from the Kunshan Defendants' facilities. (*Id.* ¶ 3.)

## LEGAL STANDARD

In considering a motion to dismiss based on *forum non conveniens*, we "assume[] the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb*, 832 F.3d at 809 (emphasis in original). We "may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for [our] decision." *Id.* In considering a motion to stay based on *Colorado River* abstention, we "accept all well-pleaded facts as true and draw reasonable inferences in" the

plaintiff's favor. *Loughran*, 2019 WL 6349890, at *2. We "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether" we should abstain. *Id.* (internal quotation marks omitted).

## ANALYSIS

### I. *Forum Non Conveniens*

Because the plaintiff is "master of the complaint," a district court must normally defer to the plaintiff's "choice of where to bring suit." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). But under the doctrine of *forum non conveniens*, a district court may dismiss a case when an alternative foreign forum "has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Deb*, 832 F.3d at 805 (alteration in original) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429, 127 S. Ct. 1184, 1190 (2007)). A district court may also dismiss claims against a particular defendant—as opposed to the entire case—on *forum non conveniens* grounds. *See Scottish Air Int'l, Inc. v. Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) ("Depending upon the facts of the particular case, a district court may dismiss part of a lawsuit while deciding the merits of other issues."). The doctrine, however, "is an exceptional one that a court must use sparingly," and a defendant seeking to invoke the doctrine "ordinarily bears a heavy burden." *Deb*, 832 F.3d at 805–06.

The *forum non conveniens* analysis consists of two steps. *Hyatt*, 302 F.3d at 718. "First, the court must determine whether an adequate alternative forum is available." *Id.* Here, Plaintiffs do not dispute that China is an available and adequate forum. Indeed, Plaintiffs presumably would not have initiated the Chinese Litigation if they deemed the Chinese courts to

be unavailable or inadequate. Thus, the first step is satisfied, and we proceed to the second step of the analysis, where we "must weigh several private and public interest factors related to the proper location for the litigation." *Id.*

At this second step, we consider the following private interest factors:

1) "the relative ease of access to sources of proof";

2) the availability of compulsory process to compel the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses;

3) whether the premises may be viewed;

4) "[t]he enforceability of the judgment, if one is obtained"; and

5) "all other practical problems that make trial [] easy, expeditious[,] and inexpensive."

*Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947)). The public interest factors include:

1) "the administrative difficulties stemming from court congestion";

2) "the local interest in having localized disputes decided at home";

3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action";

4) "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law"; and

5) "the unfairness of burdening citizens in an unrelated forum with jury duty."

*Id.* (citing *Gulf Oil*, 330 U.S. at 508–09, 67 S. Ct. at 843). There is no precise formula for weighing these factors. *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1379 (N.D. Ill. 2016). But in general, "a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant." *Clerides*, 534 F.3d at 628.

Before we balance the relevant private and public interest factors, we address certain arguments made by the Kunshan Defendants that do not fall neatly within the scope of any of

these factors.  First, the Kunshan Defendants assert that whether we have personal jurisdiction over them is, at best, "questionable."  (Mem. at 5; *see also* Dkt. No. 298, Reply Mem. in Supp. of Mot. to Dismiss ("Reply") at 6 n.3 (characterizing personal jurisdiction as "an open question").) There is nothing questionable about the fact that we have already directly addressed—and rejected—the Kunshan Defendants' personal jurisdiction arguments and held that "we have specific jurisdiction" over them.  (Apr. 19, 2021 Op. at 8–13.)  True, evidence obtained later in this litigation could make it necessary for us to revisit this holding.  *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 914–15 (7th Cir. 1994) ("[T]he denial of a preliminary challenge to personal jurisdiction . . . is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial.").  But this mere possibility, which may never come to pass, in no way calls into question our current ruling that we have personal jurisdiction over the Kunshan Defendants.

Relatedly, the Kunshan Defendants attempt to downplay our jurisdictional ruling because, they argue, the standard we applied in making the ruling does not apply to their current motion.  (Reply at 6, 15.)  To rule on the Kunshan Defendants' motion to dismiss for lack of jurisdiction, however, we were required to accept the allegations in Plaintiffs' Second Amended Complaint unless the allegations were contradicted by affidavits or other evidence (*see* Apr. 19, 2021 Op. at 6), and we must do the same in ruling on the Kunshan Defendants' *forum non conveniens* motion, *see Deb*, 832 F.3d at 809.  And even though we also had to resolve any disputed evidence in Plaintiffs' favor to decide the Kunshan Defendants' previous motion, the Kunshan Defendants do not point to any disputed evidence that, if resolved in *their* favor, would undermine our jurisdictional ruling or our consideration of the ruling in evaluating their current

*forum non conveniens* motion.  As such, any difference between the applicable standards does not prevent our jurisdictional ruling from informing our *forum non conveniens* analysis.

Second, the Kunshan Defendants ask us to presume that GL Leading, Buan, and Jen did not disclose any trade secrets to them because Plaintiffs purportedly have not sufficiently identified their alleged trade secrets.  (Reply at 6–9.)  The Kunshan Defendants forfeited this request by raising it for the first time in their reply brief.  *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 922 (7th Cir. 2020) ("Columbia did not raise these arguments in its initial brief, so they are forfeited."); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").  But we would decline the request even if we were to consider it.  We see no reason to make such a presumption, which goes to the merits of Plaintiffs' trade secret misappropriation claims, in deciding the Kunshan Defendants' *forum non conveniens* motion, which seeks "a determination that the [claims'] merits should be adjudicated *elsewhere*."  *Sinochem*, 549 U.S. at 432, 127 S. Ct. at 1192 (emphasis added).  Nor do the Kunshan Defendants direct us to any legal authority that might justify making the requested presumption.  *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (a party waives "arguments unsupported by legal authority").

With these arguments addressed, we proceed to weighing the private and public interest factors.

### A.    Private Interest Factors

#### 1.    Obtaining the Attendance of Witnesses

We begin with the private interest factor that looks at the availability of compulsory process to compel the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses.  *See Clerides*, 534 F.3d at 628.  This factor consists of two distinct

considerations: (1) whether we can compel *unwilling* witnesses to attend trial in this forum; and (2) the costs of obtaining attendance by *willing* witnesses.

***Compelling Unwilling Witnesses.*** The Kunshan Defendants contend that "[c]ompulsory process for attendance of [their] witnesses . . . is not available" because these witnesses are all located in China. (Mem. at 10; Reply at 9.) The Kunshan Defendants, however, employ all the individuals they identify as possible witnesses: Hao Huang is GuoLi's General Manager, Feng Zhou is Yiyuan's General Manager, Xiaoqin Du is Yiyuan's Vice General Manager, and Shiqiang Xu is a senior mechanical engineer at Yiyuan.[3] (Huang Decl. ¶ 1; Zhou Decl. ¶ 1; Du Decl. ¶ 1; Xu Decl. ¶ 1; *see also* Mem. at 10 ("Other witnesses employed by the [Kunshan] Defendants might also testify.").) These individuals, as well as any other employees, are under the Kunshan Defendants' control, so "there is no need for compulsory process to secure their attendance at trial." 17 James Wm. Moore et al., *Moore's Federal Practice*, § 111.74[3][c][iii] (3d ed. 2021); *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 340, 342–43 (8th Cir. 1983) (because many of the witnesses located in the Cayman Islands worked for the defendant, the defendant probably would not need compulsory process to produce these witnesses at trial in Iowa); *Bruemmer v. Marriott Corp.*, No. 90 C 4190, 1991 WL 30141, at *3–4 (N.D. Ill. Mar. 4, 1991) ("Three of the potential witnesses [in Bermuda] are employees of the defendants and as such compulsory process is probably not necessary."); *see also Wilson v. Humphreys (Cayman)*

---

[3] The Kunshan Defendants assert for the first time in their reply that they no longer employ some of the individuals that will testify on their behalf. (Reply at 9.) We do not consider this assertion because (1) the Kunshan Defendants should have made it in their opening memorandum, and (2) even if this development occurred after the memorandum's filing, the Kunshan Defendants' reply fails to identify which (or even how many) individuals are former employees. *See Narducci*, 572 F.3d at 324 ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Schaefer*, 839 F.3d at 607 ("Perfunctory and undeveloped arguments are waived[.]").

*Ltd.*, 916 F.2d 1239, 1246–47 (7th Cir. 1990) (affirming denial of *forum non conveniens* motion where the district court relied exclusively on *Lehman*'s reasoning). Nor do the Kunshan Defendants provide any evidence indicating that any of their witnesses would, in fact, be unwilling to testify at trial here. *See Shi v. New Mighty U.S. Tr.*, 918 F.3d 944, 951 (D.C. Cir. 2019) (the defendants' failure to "suggest they will be unlikely to persuade their proposed witnesses located abroad . . . to appear voluntarily in a U.S. court" weighed against *forum non conveniens* dismissal); *Beaton v. SpeedyPC Software*, No. 13-cv-08389, 2015 WL 3573601, at *3 (N.D. Ill. June 5, 2015) (the defendant somewhat undercut its argument regarding this factor by not providing "any evidence that [key] witnesses would be unwilling to testify at trial").

We also observe that several other individuals who may have information relevant to Plaintiffs' claims against the Kunshan Defendants *are* subject to compulsory process. We can compel Buan and Jen—the individuals who allegedly set into motion the misappropriation at issue and the conduits through which the Kunshan Defendants allegedly obtained the misappropriated information—to testify in this District because they are named parties in this case and work in Illinois. Fed. R. Civ. P. 45(a)(2), (c)(1)(B)(i). We can also compel other GL Leading employees to testify in this District. Fed. R. Civ. P. 45(a)(2), (c)(1)(A). For instance, in addition to Buan and Jen, at least seven individuals who worked on Plaintiffs' X-ray tubes at the Aurora facility later went to work on the GLA2153 and YY8019 tubes at GL Leading, including two individuals who GL Leading has identified as the "lead engineers" for these X-ray tubes. (GL Leading's 2d Am. Resps. to Pls.' 1st Set of Interrogs. at 17; GL Leading's 3d Am. Resps. to Pls.' 1st Set of Interrogs. at 12–13; Ex. A to Opp'n at 26, 28, 30, 34, 37, 39.) These individuals may provide evidence regarding a number of issues that are relevant to Plaintiffs' claims against the Kunshan Defendants, such as (1) what measures, if any, Plaintiffs took to keep the alleged

trade secrets and confidential information secret (*see* SAC ¶¶ 170, 171); (2) whether the information the Kunshan Defendants allegedly misappropriated was already publicly known (*see id.* ¶ 168); (3) whether anybody at GL Leading, including Buan or Jen, disclosed Plaintiffs' information to the Kunshan Defendants, and, if so, where, when, and how these disclosures took place; and (4) whether the design and development of the GLA2153 and YY8019 X-ray tubes are based in any way on Plaintiffs' alleged trade secrets and confidential information. In contrast, there is no indication that a Chinese court can compel Buan, Jen, or any of GL Leading's employees to travel to China to testify in the Chinese Litigation. Thus, the ability to obtain the attendance of unwilling witnesses weighs against dismissal.

*Costs for Willing Witnesses.* As for the costs for willing witnesses to attend trial, this consideration is, at best, neutral. If we deny the Kunshan Defendants' motion, their witnesses will have to incur costs to travel from China to Chicago for trial. By the same token, though, if we grant the Kunshan Defendants' motion, other potential witnesses, such as Buan, Jen, and any witnesses from GL Leading, will have to incur costs to travel from the Chicagoland area to China. Plaintiffs' witnesses, located in New York and Germany (*see* Opp'n at 6), will have to travel in either instance, although we surmise that airline travel from these locations to Chicago costs less than airline travel to China. Wherever the case is tried, willing witnesses will have to travel a long way and likely incur significant expenses. Especially given the Kunshan Defendants' failure to explain how it would be costlier for all the relevant witnesses to travel to Chicago than to China, we conclude that this factor does not tip in either direction. *See In re Air Crash Near Athens, Greece on Aug. 14, 2005*, 479 F. Supp. 2d 792, 801 (N.D. Ill. 2007) (finding this factor neutral where costs for transporting willing witnesses would "be incurred no matter where [the] litigation proceed[ed]").

14

The unwilling witness consideration weighs against dismissal and the willing witness consideration is neutral, so this factor, on balance, counsels against dismissing Plaintiffs' claims.

### 2.    Relative Ease of Access to Proof

We next evaluate the relative ease of access to proof.[4]  Types of evidence that may be relevant to proving or disproving Plaintiffs' claims against the Kunshan Defendants could include deposition testimony, documentary evidence, and physical evidence.  We consider the parties' ability to access each type of proof in turn.

***Deposition Testimony.***  The Kunshan Defendants argue that depositions are not permitted in mainland China.  (Mem. at 5, 9.)  This is not entirely accurate.  Attorneys cannot "take depositions in China for use in foreign courts," but "taking depositions . . . in China for use in foreign courts may, as a general matter, [] be accomplished through requests to [China's] Central Authority under the Hague Evidence Convention."  China Judicial Assistance Information, U.S. Department of State – Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/legal/ Judicial-Assistance-Country-Information/China.html (Taking Voluntary Depositions of Willing Witnesses section) (last visited July 26, 2021).  Of course, it may not be possible in practice to take a deposition in China because the Central Authority never or rarely grants deposition

---

[4] It may be true, as the Kunshan Defendants contend, that "China's state secrecy and other related laws . . . criminalize the disclosure of information that relates to Chinese national security and other potentially sensitive interests" and that these laws "can preclude disclosure of a host of nebulously defined categories of information."  (Mem. at 9 (quoting *Munoz v. China Expert Tech., Inc.*, No. 07 Civ. 10531(AKH), 2011 WL 5346323, at *1 (S.D.N.Y. Nov. 7, 2011)).)  But the Kunshan Defendants provide no reason for us to find that producing information relevant to *this* case will run afoul of these laws.  We will not reach this conclusion without some showing that China's government is likely to treat the relevant information in the Kunshan Defendants' possession as implicating its national security or other interests.  *Cf. Munoz*, 2011 WL 5346323, at *1–2 (requiring the defendants to produce discovery in accordance with the Federal Rules of Civil Procedure despite the defendants' asserted concern regarding Chinese secrecy laws because "[t]he effect of disclosure on China's national interests [was] unproven and uncertain").

requests. The Kunshan Defendants, however, did not provide any evidence (such as an affidavit

from someone with knowledge on the matter) showing this is the case.[5]

At any rate, conducting a deposition with all participants on Chinese soil is not

necessarily the only way to obtain testimony from the Kunshan Defendants' witnesses. Perhaps

Plaintiffs can conduct the depositions remotely by telephone or video, and the parties should be

presently considering the feasibility of this option. (*See* May 11, 2021 Minute Entry (ordering

the parties to "confer about a protocol for deposing witnesses who are residents of China").) Or

the parties could agree that the Kunshan Defendants will produce their witnesses for deposition

in a country that has less strict laws regarding depositions. And, if necessary and appropriate, we

could order the Kunshan Defendants to produce their Rule 30(b)(6) witnesses for deposition here

in the United States. *Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437,

446 (4th Cir. 2007) ("Foreign corporations that are subject to the personal jurisdiction of a

district court can be and often are required to produce officers, directors, or managing agents—

regardless of where such witnesses personally reside—in the United States for a Rule 30(b)(6)

deposition."); *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000)

("[A] foreign corporation, subject to the in personam jurisdiction of this court, can be ordered

under Rule 30(b)(6) to produce its officers, directors or managing agents in the United States to

give deposition testimony."); *see New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 462,

465 (N.D. Ill. 2007) (compelling defendants to produce Japanese Rule 30(b)(6) witnesses in the

---

[5] The two cases the Kunshan Defendants cite for their contention that depositions are not permitted *at all* in mainland China do not acknowledge the possibility of making a deposition request to China's Central Authority. *See Plastech Holding Corp. v. WM Greentech Auto. Corp.*, No. 14-cv-14049, 2016 WL 3536749, at *2 n.1 (E.D. Mich. June 29, 2016); *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13-CV-01043 SPM, 2014 WL 2986685, at *5 n.6 (E.D. Mo. July 1, 2014).

United States for deposition).  Accordingly, although obtaining deposition testimony from the Kunshan Defendants' witnesses for use in this litigation may involve some additional work, it appears to be achievable.

Furthermore, deposition testimony from the Kunshan Defendants' witnesses in China is not the only relevant testimony.  As already discussed, Buan, Jen, and certain GL Leading employees have or likely have information relevant to Plaintiffs' claims against the Kunshan Defendants, and their depositions can be taken in this District.  *See* Fed. R. Civ. P. 45(a)(2), (c)(1)(A)–(B).  When considering *all* the deposition testimony Plaintiffs and the Kunshan Defendants may want to obtain in connection with their dispute, the ease of access factor with respect to this category of evidence is neutral.

***Documentary Evidence.***  The Kunshan Defendants also assert that all their relevant documents for this litigation are in China.  (Mem. at 8; Reply at 10.)  We do not question this assertion; however, the Kunshan Defendants have made no effort to explain why providing these documents in this forum will be particularly burdensome.  *See Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 857 (S.D.N.Y. 2017) ("[T]he location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would incur absent transfer." (alteration in original) (internal quotation marks omitted)).  To the extent the Kunshan Defendants store relevant documents electronically, they should be able to easily provide those documents in electronic format for use in this District.  *See Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, No. 20-cv-3375, 2021 WL 1978342, at *6 (N.D. Ill. May 18, 2021) (finding that the ease of access factor weighed in favor of retaining jurisdiction where the defendant did not dispute "that most business records are stored electronically and can be provided in electronic format without need for physical travel"); *Abdul-Ghafoor v. Pro. Transp., Inc.*, No. 17-CV-1105-

SMY-GCS, 2019 WL 425233, at *3 (S.D. Ill. Feb. 4, 2019) ("[T]he physical location of electronic records has limited weight as they can be easily transmitted."). And even if some relevant documents are not in electronic form, the Kunshan Defendants can scan and electronically transfer (or copy and ship) those documents to this District. *See Pence*, 236 F. Supp. 3d at 857 (noting that "[i]n an era of electronic documents, easy copying and overnight shipping," the location of relevant documents and ease of access to proof factor "assumes much less importance than it did formerly" (internal quotations omitted)). To be sure, there may be situations where it is prohibitively burdensome for a party to produce documents (electronically or otherwise) located in another country for use in a United States court. But it is the Kunshan Defendants' burden to prove that is the situation here, and they have not met that burden.

Also, the Kunshan Defendants' documents are not the only potentially relevant documents. Documents from Plaintiffs and the other parties in this litigation are potentially relevant as well, and the Kunshan Defendants do not dispute that "all of the documentary evidence produced to date" in this litigation "is [] already in this jurisdiction." (Opp'n at 3.) Given the documentary evidence already in this District and the absence of any suggestion that the Kunshan Defendants will be unduly burdened by producing their own documents in this District, the ease of accessing documentary evidence weighs against dismissal.

***Physical Evidence.*** The parties only identify one category of relevant physical evidence: the Kunshan Defendants' X-ray tubes themselves. The Kunshan Defendants say these tubes "cannot be imported into the U.S. because they are not approved for use in the U.S. by the FDA." (Reply at 9.) It is not clear, however, that FDA approval is necessary before the Kunshan Defendants can ship the X-ray tubes for "use" as evidence in this litigation, and they do not direct us to any statute, regulation, guideline, policy, or other authority indicating that they

would be prohibited from sending the X-ray tubes to the United States for this purpose. Accordingly, we find that this consideration is, at best, neutral.

In sum, the ease of accessing deposition testimony and physical evidence considerations are neutral, and the ease of accessing documentary evidence consideration weighs against dismissal. Consequently, the ease of access factor, in its entirety, weighs against dismissal.

### 3. Viewing the Premises

The Kunshan Defendants argue that this factor favors dismissal because they design and manufacture the accused X-ray tubes in China, in the same province as the court overseeing the Chinese Litigation. (Mem. at 10.) Plaintiffs, however, dispute that the X-ray tubes are designed and manufactured in China. (Opp'n at 8.)

Although the Kunshan Defendants repeatedly state that they design and make the accused X-ray tubes only in China (*see, e.g.*, Mem. at 4, 5, 8, 10, 11, 12; Reply at 6, 10, 16, 17), they never once support these statements with evidence. *See Wendt v. Offshore Tr. Serv., Inc.*, No. 08 C 3612, 2010 WL 1849426, at *9 (N.D. Ill. May 7, 2010) ("[U]nsupported statements in briefs are not evidence and do not count."). And the evidence in the record suggests that these statements are not undisputed. For instance, there is evidence indicating that at least some aspects of the design processes for the GLA2153 and YY8019 took place in Illinois, where GL Leading is located:

- "The GLA2153 was re-engineered in China and the designs were sent to GL Leading in January 2018 soon after GL Leading started as a company. The requirements for that project were for GL Leading to review the designs based on their re-engineering work and then suggest improvements to the designs." (GL Leading's 3d Am. Resps. to Pls.' 1st Set of Interrogs. at 12.)

19

- "GL Leading used . . . parts from the GLA2153 tube to create the YY8019 tube."  (*Id.*)

- "In early 2018, I exchanged multiple emails with GL Leading engineers about the drawings of different mechanical parts of the housing of GLA2153. . . .  One or more of the GL Leading engineers would provide comments, suggestions, edits, and annotations. Sometimes we went back and forth a few times."  (Xu Decl. ¶ 4.)

- "The design of YY8019 has been based on reverse engineering services provided by GL Leading engineers."  (Du Decl. ¶ 8.)

As for manufacturing, Plaintiffs refer to a May 2019 technical service cooperation agreement between Yiyuan and GL Leading, under which GL Leading's services were to include "medical CT tube and tube assembly design solution and manufacture processes technical evaluation" and "manufacture equipment solution."  (Dkt. No. 193-55, May 2019 Yinyuan-GL Leading Agmt., at GL_000083–85, 91.)  At the same time, one of GL Leading's interrogatory responses states that Yiyuan manufactures the GLA2153 and YY8019 X-ray tubes.  (GL Leading's 3d Am. Resps. to Pls.' 1st Set of Interrogs. at 13.)

In any event, we do not need to conclusively determine where the accused X-ray tubes are designed and made to address this factor.  Even if we accept the Kunshan Defendants' assertions, there is no indication that Plaintiffs will seek to inspect the Kunshan Defendants' premises in connection with proving their claims.  To the contrary, Plaintiffs state that all premises they may view for this case are in this District.  (Opp'n at 8 (Heading II.1.c.).)[6]  Thus, this factor does not support dismissal.

_____

[6] We acknowledge that Plaintiffs also assert that if they seek "to view premises in connection with this case, those premises will *include* GL Leading's facilities in Illinois."  (Opp'n at 8 (emphasis added).)  As the Kunshan Defendants point out, this assertion does not foreclose a request to view the Kunshan Defendants' premises.  (Reply at 13.)  Even so, we take Plaintiffs at their word that *all* premises they may seek to view for this case are in this District.

### 4. Enforceability of Any Judgment

Next, we consider the enforceability of any judgment against the Kunshan Defendants. According to the Kunshan Defendants, "[t]here is a serious question as to whether this Court has the authority to issue an enforceable injunction or damages award" against them "based on manufacturing and sales that take place solely in China." (Mem. at 10.) This argument is based on the presumption against extraterritoriality, *i.e.*, the presumption "that federal statutes apply only within the territorial jurisdiction of the United States." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018) (internal quotation marks omitted).

This argument falls flat for several reasons. First, as just discussed, the Kunshan Defendants have not demonstrated with evidence that the accused X-ray tubes are manufactured only in China. Second, making and selling the accused X-ray tubes are not the only actions that can constitute trade secret misappropriation. Under both the DTSA and the ITSA, trade secret misappropriation includes not only the unauthorized use of a trade secret, but the improper or unauthorized *acquisition* and *disclosure* of a trade secret as well. 18 U.S.C. § 1839(5); 765 Ill. Comp. Stat. 1065/2(b). If the Kunshan Defendants improperly acquired or disclosed Plaintiffs' trade secrets, they would be liable for misappropriation regardless of whether they actually "used" the trade secrets as well.[7] Third, Plaintiffs represent that their claims in this litigation seek to redress wrongdoing committed by the Kunshan Defendants in the United States. (Opp'n at 14.) Thus, to the extent the Kunshan Defendants improperly used, acquired, or disclosed Plaintiffs' trade secrets in the United States, questions regarding the extraterritorial reach of the governing law do not come into play.

---

[7] As such, the Kunshan Defendants' contention that they are liable for misappropriation only if they used the alleged trade secrets to design or make the X-ray tubes (*e.g.*, Reply at 6, 9) is also without merit.

Fourth, and finally on this point, the presumption against extraterritoriality is rebutted if a statute's text "provides a clear indication of an extraterritorial application." *WesternGeco*, 138 S. Ct. at 2136 (internal quotation marks omitted). The DTSA, which governs one of Plaintiffs' trade secret misappropriation claims, rebuts the presumption against extraterritoriality by expressly authorizing injunctive relief and damages as remedies for certain "conduct occurring outside the United States."[8] 18 U.S.C. §§ 1836(b)(3), 1837; *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 436 F. Supp. 3d 1150, 1159–63 (N.D. Ill. 2020); *Inventus Power*, 2021 WL 1978342, at *5 ("[T]he DTSA . . . provides for worldwide injunctive relief and remedies."). Relevant here, the DTSA applies to foreign conduct if "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2). Considering the evidence indicates that GL Leading provided design services to the Kunshan Defendants for the X-ray tubes that allegedly use Plaintiffs' information and that GuoLi and Yinyuan personnel traveled to Illinois to work with GL Leading engineers on these X-ray tubes, it is plausible that acts in furtherance of the alleged trade secret misappropriation were committed in the United States.

The Kunshan Defendants also question whether "Plaintiffs have standing to bring this action in this District against" them. (Mem. at 11–12.) But this argument fares no better than their extraterritoriality argument. We do not read the "enforceability" private interest factor as requiring us to consider every defense or obstacle a plaintiff might face in obtaining a judgment that will not be overturned on appeal. This would require us to analyze the merits of the plaintiff's claims, which is not the purpose of a *forum non conveniens* analysis. *See Sinochem*, 549 U.S. at 432, 127 S. Ct. at 1192 (a *forum non conveniens* dismissal "is a determination that

---

[8] Because the DTSA provides a potential avenue by which Plaintiffs can hold the Kunshan Defendants liable for foreign conduct, we do not consider whether the same can be said for the ITSA or Illinois' law on unjust enrichment.

the merits should be adjudicated elsewhere"). Rather, we understand this factor to be looking at the possibility that a plaintiff can enforce a judgment it obtains against a defendant, with the assumption that the judgment will stand. If a defendant wants to challenge a plaintiff's standing, it should do so in a properly supported Rule 12(b)(1) motion, not as one aspect of a *forum non conveniens* motion. *See Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786, 791 (S.D. Ill. 2018) ("Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle to challenge a plaintiff's standing."). Thus, Plaintiffs' standing does not bear on our analysis here.

Because the Kunshan Defendants have not shown that Plaintiffs will not be able to enforce a judgment against them if their claims remain here, this factor does not favor dismissal.

### 5. Other Practical Problems

The last private interest factor for us to address is "other practical problems that make trial [] easy, expeditious[,] and inexpensive." *Clerides*, 534 F.3d at 629. For this factor, we consider the Kunshan Defendants' argument regarding the need for interpreters and documentary translation. The Kunshan Defendants contend that (1) all their documents are in Chinese and would need to be translated to English for trial in this District, and (2) all their witnesses speak Chinese and "would require interpreters if they were required to testify in this District." (Mem. at 10.) Plaintiffs do not dispute these contentions.

We are not persuaded, however, that any need for translation weighs in favor of dismissal. Using interpreters to assist witnesses during depositions and at trial "is commonly done in this district," *Inventus Power*, 2021 WL 1978342, at *6, and translation services for documents are readily available as well, *Aon Corp. v. Cabezas*, No. 15-cv-04980, 2018 WL 1184728, at *3 (N.D. Ill. Mar. 7, 2018). The Kunshan Defendants also have not given us any indication that the cost of translating their discovery documents and their witnesses' testimony from Chinese to English for use in this litigation would be prohibitively burdensome. *See Abad*

*v. Bayer Corp.*, 563 F.3d 663, 669 (7th Cir. 2009) (considering the costs of translation to be "a wash" because there was no realistic estimate provided as to the quantity of discovery materials to be translated or the cost of translating them).  But even if translating all the Kunshan Defendants' discovery documents into English for use in this Court would be costly, the same likely can be said for translating Plaintiffs' documents into Chinese for use in the Chinese Litigation.  And just as the Kunshan Defendants' witnesses would need interpreters to testify in this court, Plaintiffs' witnesses would need interpreters to testify in the Chinese Litigation.  In other words, because the need to translate documents and testimony exists "regardless of where this case is tried," it does not support dismissing Plaintiffs' claims.  *See Shi*, 918 F.3d at 951.

\*      \*      \*

In conclusion, none of the private interest factors weighs in favor of dismissing Plaintiffs' claims against the Kunshan Defendants.  What is more, at least two factors—obtaining the attendance of witnesses and ease of access to proof—affirmatively weigh against dismissal.  We now turn to the public interest factors.

### B.      Public Interest Factors[9]

#### 1.      Court Congestion

For the court congestion factor, we consider "the speed with which a case can come to trial and be resolved" in both the current forum and the alternative forum.  *In re Factor VIII or*

---

[9] The Kunshan Defendants did not address the different public interest factors in their opening memorandum.  They instead discussed a single case, *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008), where the Seventh Circuit, in affirming a *forum non conveniens* dismissal, found that transporting witnesses and documents from Japan to Chicago and conducting a trial largely on the basis of evidence translated from their original language placed unreasonable burdens on the defendants and the district court.  (Mem. at 12.)  "The same is true here," the Kunshan Defendants continue, because the court and a Chicago jury would have to sit through a long trial, considering evidence that has been translated, and even then, "there are often disputes regarding the translation of Chinese language testimony and documents."  (*Id.*)  The Kunshan Defendants' reliance on *U.S.O. Corp.* is unpersuasive, however, because there are

24

*IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958–59 (7th Cir. 2007). This consideration does not support dismissal here because the Kunshan Defendants did not provide any evidence regarding the speed to trial in either this District or the court in which the Chinese Litigation is pending. *See id.* (treating this factor as neutral where "the record [was] silent about the relative administrative advantages or disadvantages of" the forums at issue); *Philiotis v. Exec. Mfg. Techs., Inc.*, No. 04 C 3239, 2004 WL 2433226, at *3 (N.D. Ill. Oct. 28, 2004) (refusing to weigh this factor in the defendant's favor where the defendant failed to provide any evidence regarding the comparative congestion between the two forums). This case also has been pending for more than two years, with Plaintiffs first asserting their claims against the Kunshan Defendants more than a year-and-a-half ago. Discovery has been ongoing since July 2019, and although the Kunshan Defendants only recently began participating in discovery, the magistrate judge has ordered the Kunshan Defendants to review the discovery already produced in this case as soon as possible. (May 11, 2021 Minute Entry.) And the parties in this case are to complete written discovery by October 15, 2021. (*Id.*) At this stage in the litigation, we see "little efficiency to be gained by dismissing [the Kunshan Defendants] in favor of another forum." *See Inventus Power*, 2021 WL 1978342, at *7. Thus, this factor does not favor dismissal.

---

several material differences between that case and this litigation. In *U.S.O. Corp.*, both the plaintiff and the defendants were headquartered in Japan, making the litigation "an intramural Japanese dispute"; "almost all the witnesses and documents" were in Japan; and the plaintiff's claim was most likely governed by Japanese law. 547 F.3d at 749–51, 755. By contrast, this litigation is not an intramural Chinese dispute, as Plaintiffs are American and German entities; the Kunshan Defendants have not demonstrated that almost all the relevant witnesses and documents are in China; and Plaintiffs' claims against the Kunshan Defendants in this litigation are not governed by Chinese law. Moreover, although translating testimonial or documentary evidence may pose some challenges in this litigation, the Kunshan Defendants have not explained why those challenges would be so insurmountable that dismissing Plaintiffs' claims against them is warranted.

## 2. Local Interest and Unfairness of Jury Duty

We evaluate the local interest and jury duty factors together because "the burdens of jury duty are closely linked with the local interest in the litigation." *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d at 959. The relevant local interest "is the interest of the state in which the federal district of filing is located"; here, Illinois. *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 531 F. Supp. 2d 957, 977–78 (N.D. Ill. 2008), *aff'd sub nom. Abad v. Bayer Corp.*, 563 F.3d 663 (7th Cir. 2009). The Supreme Court has also explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation." *Gulf Oil*, 330 U.S. at 508–09, 67 S. Ct. at 843.

These factors are neutral. On one side of the balance, Philips Cleveland had a facility in this District from 2001 through 2017; at least some of the alleged misappropriation took place in this District; and Plaintiffs have already made a *prima facie* showing that the Kunshan Defendants engaged in Illinois-based conduct "with knowledge that Philips would be injured in Illinois." (Apr. 19, 2021 Op. at 13 & n.7.) Illinois and the people of this District's community have an interest in remedying wrongdoing occurring in or directed at this District, as well as harm suffered by Plaintiffs in this District. *See Inventus Power*, 2021 WL 1978342, at *7 ("Illinois [] has an interest in remedying an alleged injury suffered by one of its residents[.]" (internal quotation marks omitted)); *Wasendorf v. DBH Brokerhaus AG*, No. 04 C 1904, 2004 WL 2872763, at *7 (N.D. Ill. Dec. 13, 2004) ("Illinois clearly has a strong interest in regulating the activities of economic actors operating in the state . . . [and] an interest in assuring remedial relief for its citizens who have been injured by foreign actors." (alteration in original) (internal quotation marks omitted)). On the other side of the balance, the Kunshan Defendants are Chinese corporations, and China has "an interest in resolving a dispute involving one of [its] corporations[.]" *Inventus Power*, 2021 WL 1978342, at *7 (internal quotation marks omitted).

There is also no indication that Plaintiffs currently operate or have recently operated any facilities in this District (Plaintiffs closed the Aurora facility by late 2017), making it less likely that potential jurors would feel strongly about the results of this litigation. Given all these inputs, we conclude that neither side of the balance tips the scale for or against dismissal. *See Philiotis*, 2004 WL 2433226, at *3 (finding that Ontario's greater interest "in policing the potential wrongdoing of its own corporations" was offset "by the local interest in protecting Illinois employees against alleged wrongdoing").

### 3. Issues of Foreign Law

The two remaining public interest factors are "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" and "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law." *Clerides*, 534 F.3d at 628. Plaintiffs have brought their trade secret misappropriation claims against the Kunshan Defendants under federal and Illinois law and their unjust enrichment claim under Illinois law. As a federal district court sitting in Chicago, we are "at home" with both federal and Illinois law. Moreover, neither side suggests that we will need to consider conflict-of-law issues or Chinese law to address Plaintiffs' claims. These two factors do not favor dismissal.

\*      \*      \*

No public interest factor or group of related public interest factors weighs in favor of dismissal. Consequently, the public interest factors, like the private interest factors, do not support dismissing the Kunshan Defendants' claims.

### C. Plaintiffs' Choice of Forum

Finally, we weigh the balance of the private and public interest factors against the deference we must afford to Plaintiffs' choice of forum. *See Clerides*, 534 F.3d at 628, 634. Ordinarily, "there is a strong presumption in favor of the plaintiff's choice of forum." *AAR Int'l*,

*Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 524 (7th Cir. 2001) (internal quotation marks omitted). When a plaintiff does *not* bring suit in its home forum, however, "the presumption in the plaintiff's favor applies with less force" because "the assumption that the chosen forum is appropriate is [] less reasonable" in such cases. *Sinochem*, 549 U.S. at 430, 127 S. Ct. at 1191 (internal quotation marks omitted).

The Kunshan Defendants argue that Plaintiffs did not sue in their home forum because neither Plaintiff currently has a facility or employees in this District. (Mem. at 7–8; Reply at 8.) Certainly, Philips Germany—a German entity that principally does business in Hamburg—has not sued the Kunshan Defendants in its home forum. But the same is not true for Philips Cleveland, a California corporation principally doing business in Ohio. The "home" forum for a U.S. plaintiff like Philips Cleveland is any federal district court in the United States. *See Abad*, 563 F.3d at 667 (equating "an American plaintiff wanting to litigate in an American rather than foreign court . . . to a plaintiff who has sued in his *home* court" (emphasis added)); *Clerides*, 534 F.3d at 628 (explaining that a court affords less deference to a plaintiff's choice of forum in the United States when "the plaintiff is a foreign citizen and resident," as opposed to when "the choice is made by a *United States* plaintiff" (emphasis added)); *Wendt*, 2010 WL 1849426, at *6 ("In *forum non conveniens* cases, 'home' is generally taken to mean home country." (citing *Abad*, 563 F.3d at 666–67 and *Clerides*, 534 F.3d at 628)); *see also, e.g.*, *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 525 (6th Cir. 2010) (Utah corporation that brought suit in Michigan district court was entitled to the deference normally given to a plaintiff's home forum because it was a U.S. plaintiff); 17 *Moore's Federal Practice* § 111.75[1] (for purposes of *forum non conveniens*, "[a]n American plaintiff's choice of a U.S. court is afforded [] deference regardless of whether the plaintiff resides in that forum or in another

location in the U.S.").  Furthermore, the presence of Philips Germany does not diminish the deference we must afford to Philips Cleveland's choice of its home forum.  17 *Moore's Federal Practice* § 111.75[1] ("[W]hen foreign as well as domestic plaintiffs are present in the suit, the choice of a U.S. forum is nevertheless entitled to a strong presumption of convenience because of the U.S. plaintiff or plaintiffs.").

Arguing otherwise, the Kunshan Defendants cite several cases from this District in which judges have afforded less deference to a plaintiff's choice of forum when the plaintiff does not reside in that forum.  (Reply at 8 (citing *Knight v. Baxter Healthcare Corp.*, No. 20 C 1652, 2020 WL 6287404, at *1 (N.D. Ill. Oct. 27, 2020); *Johnson v. United Airlines, Inc.*, No. 12 C 5842, 2013 WL 323404, at *5 (N.D. Ill. Jan. 25, 2013); *Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, No. 09 C 2123, 2011 WL 1357516, at *2 (N.D. Ill. Apr. 11, 2011); *More Cupcakes, LLC v. Lovemore LLC*, No. 09 C 3555, 2009 WL 3152458, at *6 (N.D. Ill. Sept. 24, 2009)).)  All these cases, however, dealt with motions to transfer venue.  *Knight*, 2020 WL 6287404, at *1; *Johnson*, 2013 WL 323404, at *1, *4–5; *Sunrise Bidders*, 2011 WL 1357516, at *1; *More Cupcakes*, 2009 WL 3152458, at *1.  Whereas a plaintiff's "home" forum may be where it resides for purposes of determining whether the plaintiff's case should be transferred to another federal district court, this is not the case when determining whether the plaintiff's case should be *dismissed* and pursued, if at all, in another country.  *See Interpane Coatings, Inc. v. Austl. & N.Z. Banking Grp. Ltd.*, 732 F. Supp. 909, 914–15 (N.D. Ill. 1990) (relying upon this "critical distinction" to reject a similar argument by the defendant); *see also U.S.O. Corp.*, 547 F.3d at 753 (explaining that "the showing required to prove that the *forum* is indeed *non conveniens* is greater than that required for obtaining a change of venue from one district court to another"

because *forum non conveniens* dismissal "may have more serious consequences for a plaintiff . . . than merely being transferred to another district court within the federal system").

The Kunshan Defendants also quote *Post Media Systems LLC v. Apple Inc.*, No. 19 C 5538, 2020 WL 833089, at *2 (N.D. Ill. Feb. 20, 2020), for the proposition that "any deference owed to Plaintiffs' choice of forum is further diminished when the forum of choice is not the situs of material events." (Reply at 8 (internal quotation marks omitted).) But *Post Media Systems* also addressed a request to transfer venue. 2020 WL 833089, at *1–2. The Kunshan Defendants also concede that material events—the alleged misappropriation of Plaintiffs' documents—have taken place in this District (Reply at 8), so we do not see how this consideration, even if relevant, helps the Kunshan Defendants' argument.

In any case, even if we assumed that this District is not Philips Cleveland's "home" forum, we would still afford *some* deference to Plaintiffs' decision to bring suit here. *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 168 (2d Cir. 1991). "A defendant must show that litigation in the chosen forum is oppressive or vexatious regardless of whether the plaintiff brings suit in his home forum." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 195 (3d Cir. 2008). Here, even if we were to give less weight to Plaintiffs' side of the scale than we would by applying the home forum presumption, the "balance of private and public interest factors" still would not "strongly favor[]" the Kunshan Defendants. *See Clerides*, 534 F.3d at 628; *R. Maganlal & Co.*, 942 F.2d at 168 ("[S]ince a foreign plaintiff's choice of forum is entitled to some weight, a defendant must still show that the balance of convenience sufficiently favors trial in the foreign forum to overcome the presumption in favor of plaintiff's choice."); *see also Deb*, 832 F.3d at 806 ("[A]lthough the citizenship of the plaintiff defending against a forum non

conveniens claim is relevant to the issue of convenience, it is not dispositive of the issue."). Quite the contrary: as already discussed, *no* factor or group of related factors favors dismissal.

### D.    Conclusion

Philips Cleveland sued in its "home" forum, so there is a strong presumption that its claims against the Kunshan Defendants should remain in this District. But even if this District is not Plaintiffs' home forum, the balance of the *forum non conveniens* private and public interest factors does not favor dismissing Plaintiffs' claims against the Kunshan Defendants. Because the Kunshan Defendants have not met their "heavy burden" to show that dismissal is warranted, *Deb*, 832 F.3d at 806, we deny their motion to dismiss based on *forum non conveniens*.

## II.    Abstention under *Colorado River*

Next, we consider whether we should abstain from hearing Plaintiffs' claims against the Kunshan Defendants under the *Colorado River* doctrine. Under this doctrine, a federal court can seek "to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding" in a state or foreign court. *Deb*, 832 F.3d at 814; *AAR Int'l*, 250 F.3d at 517–18. "There is a presumption against abstention," however, *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011), and because "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them[,]'" abstention under *Colorado River* "'is the exception, not the rule.'" *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 646 (7th Cir. 2021) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817, 96 S. Ct. 1236, 1244, 1246 (1976)).

A *Colorado River* analysis consists of two steps. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). First, we "must determine whether the [foreign] and federal court actions are parallel." *Id.* If the two actions are not parallel, the analysis ends because the *Colorado River* doctrine does not apply. *Id.*; *Culp v. Flores*, 454 F. Supp. 3d 764,

772 (N.D. Ill. 2020). If the two actions are parallel, we proceed to the second step, where we consider a variety of factors to determine "whether the necessary exceptional circumstances exist to support a stay or dismissal." *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020). The Kunshan Defendants bear the burden of demonstrating that we should abstain under *Colorado River*. *Culp*, 454 F. Supp. 3d at 772; *Eisenmann Corp. v. Tek-Mor, Inc.*, No. 03 C 4375, 2004 WL 547253, at *3 (N.D. Ill. Feb. 5, 2004).

Our analysis begins—and ends—with the first step because the Kunshan Defendants have not shown that the Chinese Litigation and this litigation are parallel. Indeed, the Kunshan Defendants forfeited any such argument by failing to address this threshold issue in their opening memorandum. (*See* Mem. at 13–15 (only addressing the factors courts consider at the second step of a *Colorado River* analysis).) It was not until after Plaintiffs pointed out this omission that the Kunshan Defendants asserted in their reply that the two litigations are parallel.[10] (Reply at 17.) This is too late. *See Scottsdale Ins.*, 972 F.3d at 922; *Narducci*, 572 F.3d at 324.

But even if we consider the parallel litigation arguments set forth in the Kunshan Defendants' reply, they do not convince us that abstention is justified. "At bottom, the 'critical question'" in determining whether two litigations are parallel "is whether there is a 'substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.'" *Loughran*, 2 F.4th at 647 (quoting *Huon*, 657 F.3d at 646). Here, the Kunshan Defendants have

---

[10] In their reply, the Kunshan Defendants assert that they addressed the parallel litigation issue "at pages 11–12 of their memorandum, pointing out that China's unfair competition law includes misappropriation of trade secrets, the same allegation that Philips has made against the [Kunshan] Defendants in this case." (Reply at 17.) This assertion is disingenuous. The Kunshan Defendants discussed the fact that China has a law to prevent trade secret misappropriation in the context of arguing that the Chinese Litigation would protect Plaintiffs' rights, which is one factor for a court to consider at the *second* step of a *Colorado River* analysis. *Loughran*, 2 F.4th at 647. The Kunshan Defendants did not link this argument to the threshold parallelism inquiry in any way.

not shown that the Chinese Litigation will dispose of any, let alone all, of Plaintiffs' claims against them in this litigation. The Kunshan Defendants' reply does not explain how the answer to the ultimate question in the Chinese Litigation—whether the Kunshan Defendants are liable for trade secret misappropriation under Chinese law—will resolve any of the questions in *this* litigation, such as whether the Kunshan Defendants are liable for trade secret misappropriation under federal law and trade secret misappropriation and unjust enrichment under Illinois law. The Kunshan Defendants do not contend, for example, that a finding or ruling in the Chinese Litigation that they misappropriated Plaintiffs' trade secrets under Chinese law would require us to find for Plaintiffs on one or more of their claims against the Kunshan Defendants. Similarly, the Kunshan Defendants do not contend that a finding or ruling in the Chinese Litigation that they did *not* misappropriate Plaintiffs' trade secrets under Chinese law would exonerate them of the claims at issue in this litigation. Nor do the Kunshan Defendants identify any rulings that must be made in the Chinese Litigation before Plaintiffs' claims in this litigation can be adjudicated. *Cf. Freed*, 756 F.3d at 1021 (affirming the district court's finding that two federal actions were parallel to a state court proceeding because the state court's resolution of two issues was "necessary before either of the federal cases [could] be decided").

The Kunshan Defendants' failure to direct us to anything suggesting that the outcome in the Chinese Litigation will dispose of one or more of Plaintiffs' claims against them in this litigation makes us doubt that the Chinese Litigation is parallel to this litigation. Accordingly, we deny the Kunshan Defendants' request to abstain under *Colorado River*. *See Huon*, 657 F.3d at 646 ("If there is any doubt that cases are parallel, a district court should not abstain.").

33

## CONCLUSION

For the foregoing reasons, we deny the Kunshan Defendants' motion to dismiss or stay (Dkt. No. 285) in its entirety.  It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated:  July 28, 2021