**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PHILIPS MEDICAL SYSTEMS            )
(CLEVELAND), INC. and PHILIPS      )
MEDICAL SYSTEMS DMC, GmbH,         )
                                   )
      Plaintiffs,                 )
                                   )        No. 19-cv-2648
    v.                          )
                                   )        Judge Marvin E. Aspen
JOSE BUAN, GL LEADING              )
TECHNOLOGIES, INC., KUNSHAN        )
YIYUAN MEDICAL TECHNOLOGY CO.,     )
LTD., KUNSHAN GUOLI ELECTRONIC     )
TECHNOLOGY CO., LTD., SHERMAN      )
JEN, and ALLISON HIBBARD,          )
                                   )
      Defendants.                 )

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Having obtained a default judgment against Defendants Kunshan Yiyuan Medical

Technology Co. ("Yiyuan") and Kunshan GuoLi Electronic Technology Co., Ltd. ("GuoLi")

(collectively, the "Kunshan Defendants"), Plaintiffs Philips Medical Systems (Cleveland), Inc.

("Philips Cleveland") and Philips Medical Systems DMC, GmbH ("Philips Germany")

(collectively, "Plaintiffs" or "Philips") now move for a permanent injunction and an award of

attorneys' fees against the Kunshan Defendants. (Philips's Motion for Permanent Injunction and

Attorneys' Fees Against Kunshan Yiyuan Medical Technology Co., Ltd. and Kunshan GuoLi

Electronic Technology Co., Ltd. ("Mot.") (Dkt. Nos. 425, 426).)[1]  For the following reasons, we

grant the motion in part and deny it in part.

---

[1] Docket No. 425 is the publicly available redacted version of Plaintiffs' motion, and Docket No.
426 is the sealed version of Plaintiffs' motion.  In this opinion, we cite to the sealed version of
Plaintiffs' motion, as well as the sealed versions of any other filings.  If we refer to a sealed

## FACTUAL BACKGROUND

Because we are evaluating the propriety of relief following the entry of a default judgment against the Kunshan Defendants, for purposes of this opinion we accept as true all well-pled factual allegations from the Second Amended Complaint[2] that pertain to the Kunshan Defendants' liability. *See Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020); *Quincy Bioscience, LLC v. Ellishbooks*, 957 F.3d 725, 729 (7th Cir. 2020). We also take the facts from other aspects of the record, including our July 28, 2021 opinion denying the Kunshan Defendants' motion to dismiss or stay Plaintiffs' claims (see July 28, 2021 Memorandum Opinion & Order ("July 28, 2021 Op.") (Dkt. No. 303)), to the extent these facts do not contradict relevant factual allegations from the Second Amended Complaint. *See Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) ("When a default judgment is entered, facts alleged in the complaint may not be contested.").

Plaintiffs research, develop, and commercialize medical imaging technology. (Second Amended Complaint ("SAC") (Dkt. No. 92) ¶ 3.) This technology includes Plaintiffs' 2XXX family of X-ray tubes, such as the CTR2150 and CTR2280 X-ray tubes, and iMRC X-ray tubes.

---

document, we attempt to do so without revealing any information that could be reasonably deemed confidential. Nonetheless, to the extent we discuss confidential information, we have done so because it is necessary to explain the path of our reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain"). For all ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] The current operative complaint is the Third Amended Complaint (Dkt. No. 445), which was filed in August 2022, but the allegations from the Second Amended Complaint are relevant for purposes of this opinion because that was the operative complaint when we entered default judgment against the Kunshan Defendants in May 2022. (*See* Dkt. No. 419.)

(*Id.* ¶¶ 58, 60, 65.)  The 2XXX and iMRC X-ray tubes, which are the result of many years of research and development at great expense to Plaintiffs, are vitally important to Plaintiffs' medical imaging business.  (*Id.* ¶¶ 60, 65.)  For a time, Philips Cleveland designed and manufactured the 2XXX X-ray tubes for Philips Germany at a facility in Aurora, Illinois.  (*Id.* ¶¶ 24–25, 64.)  By the end of 2017, however, Plaintiffs had closed the Aurora facility and transferred the facility's operations to Germany.  (July 28, 2021 Op. at 3.)

The Kunshan Defendants are Chinese corporations with their principal places of business in China.  (SAC ¶¶ 7, 9; July 28, 2021 Op. at 3.)  Like Plaintiffs, they develop X-ray tubes for medical imaging.  (SAC ¶¶ 8, 10; July 28, 2021 Op. at 3.)  The Kunshan Defendants and Plaintiffs are competitors, and as of October 2021, Yiyuan marketed two X-ray tube models, the GLA2153 and the YY8019, that compete with Plaintiffs' 2XXX X-ray tubes.  (SAC ¶ 104; Kunshan Defs.' Answers to Pls.' First Set of Interrogs. (Dkt. No. 426-1) at 27 (Answer to Interrog. No. 12).)  The Kunshan Defendants do not manufacture or develop X-ray tubes in the United States, nor do they sell the GLA2153 or YY8019 models in the United States.  (Kunshan Defs.' Answers to Pls.' First Set of Interrogs. at 9, 14–15 (Answers to Interrog. Nos. 1 & 5).)

Defendant GL Leading Technologies, Inc. ("GL Leading") was an Illinois corporation headquartered in Aurora, Illinois.  (SAC ¶ 5.)  It was established in late 2017 to consult in the design of components for medical imaging equipment.  (*Id.* ¶¶ 6, 98.)  GL Leading consulted with the Kunshan Defendants regarding the design of the GLA2153 and YY8019 models.  (July 28, 2021 Op. at 3–4.)  In connection with GL Leading's consulting services, personnel from both GuoLi and Yiyuan traveled several times to GL Leading's facility in Illinois.  (*Id.* at 4.)  As of July 2022, Yiyuan was GL Leading's only client.  (July 29, 2022 Declaration of Jose Buan (Dkt. No. 446) at 27–29, ¶ 3.)

3

In 2017, Defendants Jose Buan and Sherman Jen were working on X-ray tubes at Philips Cleveland's Aurora facility. (July 28, 2021 Op. at 4.) They left Philips Cleveland in December 2017 and began working for GL Leading as engineers. (SAC ¶¶ 11, 38, 52, 100, 102.) Several other individuals who used to work on Plaintiffs' X-ray tubes at the Aurora facility work or have worked for GL Leading as well. (July 28, 2021 Op. at 5.)

According to Plaintiffs, Jen emailed documents relating to Plaintiffs' X-ray tubes to GuoLi personnel and prepared documents for GuoLi based on Plaintiffs' information while he was still working for Philips Cleveland. (*Id.*) Plaintiffs further allege that when Jen left Philips Cleveland, he kept more than three thousand electronic files containing confidential information regarding Plaintiffs' X-ray tubes and later emailed some of the information to GuoLi and GL Leading personnel. (SAC ¶¶ 96–97, 136, 138–39, 141, 144, 155, 157.) Buan is alleged to have downloaded trade secret and other confidential information relating to Plaintiffs' X-ray tubes before leaving Philips Cleveland and then accessing this information once he was at GL Leading. (*Id.* ¶¶ 66, 69–83, 88–91.) Plaintiffs allege that the information downloaded by Buan and disclosed by Jen to others reflects trade secrets relating to Plaintiffs' 2XXX and iMRC X-ray tubes; that the Kunshan Defendants obtained these trade secrets; and that the Kunshan Defendants used these trade secrets to develop the GLA2153 and YY8019 X-ray tubes. (*E.g.*, *id.* ¶¶ 62, 65, 73, 89, 109, 116, 122, 128, 130, 132, 135, 137, 140, 142, 145, 153, 156, 158, 160–61, 163, 172, 175.)

Plaintiffs assert that the Kunshan Defendants are liable for (1) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (2) trade secret misappropriation under the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*; and (3) unjust enrichment under Illinois law. (SAC Counts I, II, & IV; July

28, 2021 Op. at 6.)  Plaintiffs seek damages, attorneys' fees, and injunctive relief for their trade

secret misappropriation claims (SAC ¶¶ 179, 180, 197, 198) and damages for their unjust

enrichment claim (*id.* ¶ 216).

## PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit in April 2019 against GL Leading and Buan and added the

Kunshan Defendants as defendants in November 2019.  (*See generally* Complaint (Dkt. No. 1);

First Amended Complaint (Dkt. No. 46).)  During discovery, the Kunshan Defendants refused to

produce documents the magistrate judge had ordered them to produce.  (Dkt. No. 385; Dkt. No.

399; Dkt. No. 416 at 1.)  Plaintiffs moved for an entry of default judgment against the Kunshan

Defendants as a sanction for their refusal to comply with the magistrate judge's discovery orders.

(Dkt. Nos. 401, 403.)  The Kunshan Defendants did not respond to Plaintiffs' motion—indeed,

by this time they had indicated their intent to no longer defend against Plaintiffs' claims (see

Dkt. No. 410 at 2–3)—but GL Leading, Buan, and Jen (the "GL Leading Defendants") objected

to Plaintiffs' motion.  (Dkt. No. 406.)  The magistrate judge granted the motion.  (Dkt. No. 416

at 1.)  The magistrate judge found that Plaintiffs were "entitled to draw all reasonable inferences

in their favor and against [the] Kunshan Defendants based on [the] Kunshan Defendants' failure

to respond to Plaintiffs' requests for production of documents," and also recommended that we

enter a default judgment against the Kunshan Defendants.  (*Id.*)

Neither the Kunshan Defendants nor the GL Leading Defendants objected to the

magistrate judge's order and recommendation within 14 days, as required by Federal Rule of

Civil Procedure 72.  *See* Fed. R. Civ. P. 72(a), (b)(2).  On May 26, 2022, we adopted the

magistrate judge's recommendation and entered default judgment against the Kunshan

Defendants.  (Dkt. No. 419.)

On June 29, 2022, Plaintiffs moved for a permanent injunction and an award of attorneys' fees against the Kunshan Defendants. (Dkt. Nos. 425, 426.) The Kunshan Defendants did not respond to Plaintiffs' motion, but the GL Leading Defendants did, lodging their own objections. (Defendants GL Leading Technologies, Inc., Jose Buan, and Sherman Jen's Objection to Plaintiffs' Motion for Permanent Injunction (Dkt. No. 446).) In December 2022, while Plaintiffs' motion was still under consideration, the GL Leading Defendants withdrew their objections to the motion. (Dkt. No. 476 ¶ 7; Dkt. No. 477.) According to the GL Leading Defendants, GL Leading dissolved itself and ceased all operations in October 2022, thereby rendering their objections moot. (Dkt. No. 476 ¶¶ 4, 7; Dkt. No. 477.)

## ANALYSIS

The May 26, 2022 default judgment "establishe[d], as a matter of law, that" the Kunshan Defendants are liable to Plaintiffs for trade secret misappropriation under the DTSA and ITSA and unjust enrichment under Illinois law.[3] *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007); (SAC Counts I, II, & IV; July 28, 2021 Op. at 6.) Even so, the default judgment "does not answer whether any particular remedy is appropriate." *e360 Insight*, 500 F.3d at 604. We must determine whether the permanent injunction and attorneys' fees sought by Plaintiffs are appropriate forms of relief for the default judgment entered against the Kunshan Defendants.

## I.    Permanent Injunction

A permanent injunction is "a creature of equity," *Liebhart v. SPX Corp.*, 998 F.3d 772, 774 (7th Cir. 2021), and its issuance depends upon the facts and circumstances of a case, *Deckers Outdoor Corp. v. He*, No. 1:19-cv-07920, 2020 WL 1983876, at *1 (N.D. Ill. Mar. 11,

---

[3] Plaintiffs have not established that any of the other defendants are liable on the claims against them, and nothing in this opinion should be read to suggest otherwise.

2020); *see also Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004–05 (N.D. Ill. 2008) (explaining that even with an entry of default, the court "must still analyze whether the facts alleged in the Complaint, when accepted as true, support the issuance of a permanent injunction"). If a permanent injunction is warranted, we then must tailor the injunction "to the scope of the violation." *e360 Insight*, 500 F.3d at 604–05. Whether to issue a permanent injunction and the scope of any such injunction are matters committed to our discretion. *Consumer Fin. Prot. Bureau v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 712 (7th Cir. 2021); *Liebhart*, 998 F.3d at 779.

### A.      Is a Permanent Injunction Warranted?

Plaintiffs contend that two bases justify their request for a permanent injunction. Their primary contention is that a permanent injunction is justified as a sanction under Federal Rule of Civil Procedure 37. (Mot. at 13–18; Plaintiffs' Response to the GL Leading Defendants' Objection to Plaintiffs' Motion for Permanent Injunction and Attorneys' Fees (Dkt. No. 451) at 2–3.) Alternatively, Plaintiffs argue that a permanent injunction is authorized under the DTSA or the ITSA and warranted after applying the traditional four-factor test for permanent injunctions. (Mot. at 13, 18–22.)

### 1.      Sanction Under Rule 37

We start with Plaintiffs' reliance on Rule 37. Plaintiffs argue that the Seventh Circuit in *In re Uranium Antitrust Litigation*, 617 F.2d 1248 (7th Cir. 1980) "endorsed injunctive relief as a remedy under Rule 37." (Mot. at 14 n.3.) Plaintiffs further contend that Rule 37 authorizes a broad injunction following default judgment where, as here, there have been discovery violations and "a 'long history of dilatoriness' and conduct that exhibits 'willfulness and bad faith' by a foreign defendant who refuses to follow discovery orders issued by a U.S. District Court." (*Id.* at

14 (quoting *Graco Inc. v. PMC Global, Inc.*, No. 08-cv-01304 (FLW) (DEA), 2010 WL 11475487, at *1 (D.N.J. Aug. 17, 2020)).)

Plaintiffs' contentions miss the mark. Although Rule 37 lists several sanctions that may be appropriate for a party's failure to obey a court's discovery order, a permanent injunction is not one of them. Fed. R. Civ. P. 37(b)(2)(A). What is more, the Kunshan Defendants have already been sanctioned for their discovery noncompliance: all reasonable inferences from their failure to respond to Plaintiffs' document requests are drawn in Plaintiffs' favor and, more significantly, they have had a default judgment entered against them. (Dkt. No. 416 at 1–2; Dkt. No. 419.) We see no reason to impose an injunction as yet another punishment for the same discovery violations.

Nor does *In re Uranium Antitrust Litigation* endorse injunctive relief as a remedial sanction under Rule 37. In that case, the district court entered default judgment against several defendants and then, after discovering that the defaulting defendants were transferring funds out of the United States to avoid execution on the default judgment, enjoined them from doing so without prior court approval. 617 F.2d at 1250–51. On appeal, the defaulting defendants argued that the district court lacked the power to enter these injunctions. *Id.* at 1258–59. The Seventh Circuit disagreed, holding that the district court "was empowered to enter all equitable orders necessary to preserve" the default judgment, including an order restraining the removal of assets from the United States. *Id.* at 1259. Nothing about this holding suggests that the district court could have entered a permanent injunction to punish discovery noncompliance under Rule 37. Indeed, the *In re Uranium Antitrust Litigation* court did not rely upon Rule 37 in any way to affirm the district court's authority to issue the injunctions. *See id.* at 1259–60. Plaintiffs' reliance on *In re Uranium Antitrust Litigation* is misplaced.

8

So too is Plaintiffs' reliance on several out-of-circuit cases, including *Graco Inc. v. PMC Global, Inc.* (*See* Mot. at 13–17.) In many of the cited cases, a permanent injunction accompanied a default judgment that was entered as a Rule 37 sanction, but nothing indicates that the court imposed the permanent injunction *itself* based on Rule 37. *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 448–50 (2d Cir. 2013); *Solvay Specialty Polymers USA, LLC v. Liu*, 331 F.R.D. 187, 189–90, 193 (N.D. Ga. 2019); *Apogee Telecom, Inc. v. Dungan*, Cause No.: A-16-CA-00061-SS, 2016 WL 9308329, at *5, *7 (W.D. Tex. Sept. 23, 2016). *Graco* differs from these cases in that one could read it as issuing a permanent injunction as a Rule 37 sanction, as the court stated that its order, which both entered default judgment against a defendant and permanently enjoined the defendant, was "entered as a sanction under Rule 37." 2010 WL 11475487, at *1–2. But the *Graco* court did not cite any legal authority that justified imposing a permanent injunction as a Rule 37 sanction, nor did the court analyze whether it was appropriate to do so. *See id.* Thus, even if *Graco* supports Plaintiffs' argument, we decline to follow it.

### 2. Statutory Remedy, Success on the Merits, and Four-Factor Test

That brings us to Plaintiffs' alternative argument—that a permanent injunction is authorized under the DTSA or the ITSA[4] and warranted after applying the traditional four-factor test for permanent injunctions. (Mot. at 18–22.) Both the DTSA and ITSA permit a court to enjoin actual or threatened trade secret misappropriation. 18 U.S.C. § 1836(b)(3)(A)(i); 765 Ill. Comp. Stat. 1065/3(a). Because "a permanent injunction is a form of relief on the merits," the

---

[4] Plaintiffs do not identify any legal authority that authorizes a permanent injunction as a remedy for unjust enrichment, and the Second Amended Complaint does not seek injunctive relief for Plaintiffs' unjust enrichment claim like it does for their trade secret misappropriation claims. (*Compare* SAC ¶ 216 (alleging only an entitlement to damages for Defendants' unjust enrichment), *with id.* ¶¶ 180, 198 (alleging an entitlement to injunctive relief for Defendants' trade secret misappropriation).) We therefore do not consider Plaintiffs' unjust enrichment claim when assessing their request for permanent injunctive relief.

plaintiff must first show actual success on the merits to obtain permanent injunctive relief under either statute. *See Vaughn v. Walthall*, 968 F.3d 814, 824–25 (7th Cir. 2020). But success on the merits alone does not justify a permanent injunction; the plaintiff must also satisfy a four-factor test derived from "well-established principles of equity." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). This test requires the plaintiff to "demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391.

As a preliminary matter, we note that Plaintiffs' request for injunctive relief asks us, among other things, to (1) enjoin the Kunshan Defendants from manufacturing and selling the GLA2153 and YY8019 products, and (2) require the Kunshan Defendants to return or destroy any Philips material received from any of Plaintiffs' former employees. (Plaintiffs' Proposed Permanent Injunction Order ("Proposed Inj.") (Dkt. No. 474) ¶¶ 1, 5.) Given the Kunshan Defendants' location in China, as well as the evidence that the Kunshan Defendants do not manufacture or sell the GLA2153 and YY8019 products in the United States (Kunshan Defs.' Answers to Pls.' First Set of Interrogs. at 9, 14–15 (Answers to Interrog. Nos. 1 & 5)), granting these requests would end up with us dictating actions on foreign soil. The DTSA expressly permits us to enjoin actual or threatened trade secret misappropriation "occurring outside the United States if . . . an act in furtherance of the offense was committed in the United States." 18 U.S.C. §§ 1836(b)(3)(A), 1837(2). Here, the Kunshan Defendants—through their officers, directors, and managing agents—engaged in activities in this District in connection with their

trade secret misappropriation. (SAC ¶¶ 16, 18.) For instance, the Kunshan Defendants' personnel traveled several times to Illinois as part of their work on the GLA2153 and YY8019 products, which unlawfully use Plaintiffs' trade secrets. (*Id.* ¶¶ 109, 116, 128, 130, 132, 135, 137, 140, 142, 145, 153, 156, 158, 160–61, 163; July 28, 2021 Op. at 4.) We therefore rely upon the DTSA as the basis for enjoining the Kunshan Defendants' activities, including their foreign activities, to the extent it is warranted.[5]

We now proceed to analyze whether Plaintiffs have demonstrated success on the merits and satisfied the equitable four-factor test. This analysis is necessary even though no defendant now objects to Plaintiffs' request for injunctive relief. *See e360 Insight*, 500 F.3d at 604 (vacating entry of permanent injunction that was based solely on the defendant's default and failure to object to the requested relief).

### a.    Success on the Merits

As already noted, the default judgment establishes that the Kunshan Defendants are liable to Plaintiffs for trade secret misappropriation under the DTSA. Consequently, Plaintiffs have succeeded on the merits of their DTSA claim against the Kunshan Defendants. *Monsanto Prod. Supply LLC v. Rosentreter*, No. 3:16-cv-03038, 2017 WL 4284566, at *1–2 (C.D. Ill. Sept. 27, 2017) (plaintiff who obtained a default judgment had obtained success on the merits); *see also Autism Homes All., LLC v. 6146–48 N. Oakley Condo. Ass'n*, No. 16-cv-5970, 2018 WL 3630012, at *2 (N.D. Ill. July 31, 2018) ("Default judgments . . . plainly constitute judgments on the merits.").

---

[5] Thus, we need not determine whether the ITSA also authorizes us to enjoin foreign activities.

### b.   Irreparable Injury and Inadequate Legal Remedies

We address the first two equitable factors—irreparable injury and inadequate legal remedies—together, as they tend to merge. *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, No. 20-cv-3375, 2020 WL 3960451, at *12 (N.D. Ill. July 13, 2020). "Harm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). "Inadequate does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Id.* (quotation marks omitted).

The Second Amended Complaint's factual allegations regarding the Kunshan Defendants, taken as true, establish that Plaintiffs will suffer irreparable harm for which legal remedies are inadequate. The Kunshan Defendants, without authorization, have used and are using Plaintiffs' trade secrets to develop, manufacture, and commercialize X-ray tubes that compete with Plaintiffs' X-ray tubes. (*E.g.*, SAC ¶¶ 104, 116, 128, 130, 132, 135, 137, 140, 142, 145, 153, 156, 158, 160–61, 163.) The Kunshan Defendants' wrongdoing has damaged Plaintiffs in an amount that "cannot be compensated by money alone" (*id.* ¶ 178), which fits the definition of irreparable harm. *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (defining irreparable harm as "harm that cannot be repaired and for which money compensation is inadequate" (quotation marks omitted)). Moreover, it is inevitable that the Kunshan Defendants will continue to disclose Plaintiffs' trade secrets, and this continuing trade secret misappropriation will cause Plaintiffs to forever lose "[t]he business advantage, value, and goodwill" they earned through their "development and lawful exploitation" of the trade secrets. (SAC ¶¶ 175, 176, 180.) These injuries also constitute irreparable harm. *See Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."); *Zeigler Auto Grp. II, Inc. v. Chavez*, No. 19-cv-02748, 2020 WL 231087, at *10

12

(N.D. Ill. Jan. 15, 2020) (monetary damages could not adequately cure the plaintiffs' potential loss of "goodwill, competitive position, and continuity of business relationships with its customers and employees" (quotation marks omitted)); *Park-Ohio Indus., Inc. v. Carter*, No. 06-15652, 2007 WL 470405, at *12 (E.D. Mich. Feb. 8, 2007) ("The loss of customer goodwill, fair competition or business advantage is recognized as legitimate harm which is not readily quantified."). Finally, we agree with Plaintiffs that the Kunshan Defendants' decision to abandon the litigation will make it difficult to ascertain the full extent of damages caused by their trade secret misappropriation. (Mot. at 20); *see Area 55, Inc. v. Celeras LLC*, No. 09-CV-2755-H (NLS), 2011 WL 1375307, at *4 (S.D. Cal. Apr. 11, 2011) ("Plaintiffs could not adequately determine their damages in this case due to Defendant's failure to participate in this action."). Plaintiffs have satisfied the first two factors of the permanent injunction test.

### c. Balance of Hardships

Plaintiffs must also show that a permanent injunction is warranted given "the balance of hardships" between them and the Kunshan Defendants. *eBay*, 547 U.S. at 391. On one side of the balance, the Kunshan Defendants' wrongdoing has damaged Plaintiffs in an amount that "cannot be compensated by money alone" and, without an injunction, Plaintiffs will forever lose "the business advantage, value, and goodwill" they earned through their "development and lawful exploitation" of their trade secrets. (SAC ¶¶ 178, 180.) On the other side of the balance, the Kunshan Defendants have no right to use Plaintiffs' trade secrets in the first place, so any harm caused by an injunction prohibiting their use of the trade secrets is of their own doing. *Inventus Power*, 2020 WL 3960451, at *14. This balance therefore weighs in Plaintiffs' favor. *See id.* (finding that the balance of hardships weighed in the plaintiffs' favor in a similar situation).

13

### d. Public Interest

For the final factor, Plaintiffs must show "that the public interest would not be disserved by a permanent injunction" against the Kunshan Defendants. *eBay*, 547 U.S. at 391. "[T]he public has an interest in ensuring that trade secrets remain protected and that businesses do not engage in anti-competitive conduct." *Inventus Power*, 2020 WL 3960451, at *14; *accord Zeigler Auto Grp. II*, 2020 WL 231087, at *10. Entering an injunction to protect Plaintiffs' trade secrets serves this interest. *See Zitan Techs., LLC v. Yu*, No. 3:18-cv-00395-RCJ-WGC, 2019 WL 95779, at *5 (D. Nev. Jan. 3, 2019). This factor favors a permanent injunction as well.

*      *      *

In sum, Plaintiffs have demonstrated that a permanent injunction is authorized by the DTSA and warranted based on their success on the merits and application of the equitable four-factor test.

### B. What is the Scope of the Injunction?

Because Plaintiffs are entitled to a permanent injunction against the Kunshan Defendants, we next must define the scope of that injunction. Plaintiffs seek a wide-ranging injunction that would:

1. permanently prohibit the Kunshan Defendants from the "manufacture, marketing, promotion, advertising, distribution, sale, transfer, or disclosing of the designs of the GLA2153 and YY8019 products, and any other similar products derived from or related to those products whatever their names or model designations, as well as any parts or components of these products";

2. permanently prohibit the Kunshan Defendants from "the manufacture, marketing, promotion, advertising, distribution, sale, transfer, or disclosing of the designs of any products, equipment, or components thereof previously ever manufactured, marketed,

sold, promoted, or developed by Philips, including but not limited to parts or components of Philips' 2XXX X-ray tubes and/or iMRC X-ray tubes";

3. permanently prohibit the Kunshan Defendants "from receiving any Philips[] proprietary information from GL Leading and/or any individual who left Philips' Illinois facility to work for GL Leading";

4. permanently prohibit the Kunshan Defendants "from doing any business of any kind within the United States of America and its territories";

5. freeze the Kunshan Defendants' assets within the United States;

6. require the Kunshan Defendants to "immediately return and/or destroy any Philips material received from, or by way of, any person formerly employed by Philips" and "to certify once such return and/or destruction of such material is complete"; and

7. require the Kunshan Defendants to "immediately identify each third party to which the Kunshan Defendants disclosed any Philips[] material received from, or by way of, any person formerly employed by Philips, and the specific material disclosed."

(Proposed Inj. ¶¶ 1–6.)

The Kunshan Defendants' liability is premised on a default judgment, so we start our analysis by looking to Federal Rule of Civil Procedure 54(c).[6] Rule 54(c) prohibits a default judgment from "differ[ing] in kind from, or exceed[ing] in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This means that "the pleadings control the relief that may be awarded" for a default judgment, "both as to the kind of relief and its scope." 10 *Moore's Federal Practice* § 54.71[1] (3d ed. 2022). In other words, the injunctive relief sought in the

---

[6] Neither side addressed Rule 54(c) in its briefing, but we "are entitled to apply the right body of law, whether the parties name it or not." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001).

relevant complaint restricts the kind and scope of any permanent injunction we impose on the Kunshan Defendants. *See, e.g.*, *Engineered Abrasives, Inc. v. Am. Mach. Prods. & Serv. Inc.*, No. 13 C 7342, 2015 WL 1281460, at *8 (N.D. Ill. Mar. 18, 2015) ("Because of the default posture of this case, the Court is limited to considering only the injunctive relief requested in the Complaint."); *CliC Goggles, Inc. v. Morrison*, No. 6:15-cv-Orl-28GJK, 2016 WL 7665441, at *2 (M.D. Fla. Mar. 28, 2016) ("[D]istrict courts routinely decline to enter a permanent injunction that contains terms not contained in the complaint, pursuant to Rule 54(c)[.]").

The relevant complaint here is the Second Amended Complaint, which was the operative complaint when we entered default judgment against the Kunshan Defendants. In that complaint, Plaintiffs request a permanent injunction that:

1. prohibits the Kunshan Defendants "from using, accessing, disclosing, or distributing any [of] Philips' confidential or proprietary information and/or trade secrets" ("SAC Injunctive Request No. 1");

2. requires the Kunshan Defendants to "return all documents, files, programs, data, metadata, and other information of any kind preserved, without alteration, deletion, or spoliation, together with any and all copies of any of the foregoing in any medium or format including but not limited to their personal computers, drop box accounts, and the like" ("SAC Injunctive Request No. 2"); and

3. requires the Kunshan Defendants "to return all [of] Philips' confidential or proprietary information and/or trade secrets, and Philips' property in their possession, custody, or control" ("SAC Injunctive Request No. 3").

(SAC at 61–62 (Prayer for Relief ¶¶ (b), (c), & (d)).) The Second Amended Complaint also requests "such additional and further relief as this Court deems just and proper" (*id.* at 62 (Prayer

for Relief ¶ (j))), but this is insufficient to expand the scope of injunctive relief beyond the specifically requested restrictions. 10 *Moore's Federal Practice* § 54.71[1] (for Rule 54(c) purposes, "a complaint's inclusion of a generic request for 'such other and further relief as the Court deems just and proper' does not constitute a sufficient demand for an amount or kind of relief that is not otherwise explicitly demanded in the pleading"). Accordingly, any permanent injunction we issue against the Kunshan Defendants is limited by SAC Injunctive Request Nos. 1, 2, and 3. We do not consider injunctive relief that exceeds or differs in kind from these restrictions, such as prohibiting the Kunshan Defendants from doing any business within the United States, freezing the Kunshan Defendants' U.S. assets, requiring the Kunshan Defendants to certify the destruction of documents, or requiring the Kunshan Defendants to identify third parties to whom they have disclosed certain material. *See Engineered Abrasives*, 2015 WL 1281460, at *7–8 (declining to consider requests for injunctive relief that were not contained in the plaintiff's complaint based on Rule 54(c) and the case's "default posture").

Furthermore, the Second Amended Complaint's injunctive requests only set the outer bounds of any injunction we issue, as we still must tailor any permanent injunctive relief "to the scope of the violation found." *e360 Insight*, 500 F.3d at 604 (quotation marks omitted). Thus, to the extent the injunctive requests are not sufficiently tailored to the violations established by the default judgment, we must modify them accordingly. We address each injunctive request in turn.

***SAC Injunctive Request No. 1.*** This request seeks to prohibit the Kunshan Defendants "from using, accessing, disclosing, or distributing any [of] Philips' confidential or proprietary information and/or trade secrets." Prohibiting the Kunshan Defendants from using, accessing, disclosing, or distributing Plaintiffs' trade secrets is legitimately related to the Kunshan

17

Defendants' misappropriation of these trade secrets.  But restricting the Kunshan Defendants' use of confidential or proprietary information that does *not* rise to the level of a trade secret is not.  Trade secret misappropriation requires trade secrets in the first place, and not all confidential or proprietary information is entitled to trade secret protection.  *See, e.g.*, *Miller UK Ltd. v. Caterpillar Inc.*, 859 F. Supp. 2d 941, 944 (N.D. Ill. 2012) ("[N]ot all confidential information is a trade secret[.]"); *Genesys Telecomms. Laboratories, Inc. v. Morales*, No. 1:19-cv-00695-TWP-DML, 2019 WL 5722225, at *12 (S.D. Ind. Nov. 5, 2019) ("Trade secrets are a narrow category of confidential information[.]").

We therefore narrow SAC Injunctive Request No. 1 to prohibit the Kunshan Defendants from using, accessing, disclosing, or distributing Plaintiffs' *trade secrets* only.  Based on paragraph 163 of the Second Amended Complaint, Plaintiffs' "Trade Secrets" are the First Tranche of Proprietary Philips Files; the Second Tranche of Proprietary Philips Files; the Philips Oil Plug Specifications, Tolerances and Manufacturing Methods; the Philips CXRH-0125 Specification; the Philips Cathode Wiring Schematic; the Philips CT WWPP; the Philips Engine Stand Schematic; the Philips Engine Stand Universal Schematic; the Philips Cathode End Cap Sub-Assembly; the Philips Anode End Cap Schematic; the Philips Extrusion for Bellow Chamber Schematic; the Philips Extruded Bellow Chamber Schematic; the Philips Part Classification due to Safety Risk Form; the Philips Smart ID Layout; the Philips Smart ID Schematic; the Philips Anode-Frame Weld Procedure; the Philips CTR2150 BOM; the Philips Materials and Processes Specification for Fabrication of X-ray Tube Parts; and the Philips CTR2250 Final Inspection Checklist, as those items are defined elsewhere in the Second Amended Complaint.  (SAC ¶ 163.)  We decline to include "other Philips information taken by" Buan and Jen in this defintion of trade secrets (see *id.*) because this phrase fails to reasonably

describe in detail what information cannot be used or disclosed.  *See* Fed. R. Civ. P. 65(d)(1) (every injunction order must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required").

To avoid doubt, the restriction on "accessing" Plaintiffs' Trade Secrets encompasses the acquisition of Plaintiffs' Trade Secrets from others, including GL Leading, its successors, or any individual who left the Aurora facility to work for GL Leading.  Moreover, in view of the finding that the Kunhsan Defendants used Plaintiffs' Trade Secrets to develop the GLA2153 and the YY8019 models (e.g., SAC ¶¶ 109, 116, 128, 130, 132, 135, 137, 140, 142, 145, 153, 156, 158, 160–61, 163), this restriction prohibits the Kunshan Defendants from manufacturing, distributing, and selling the GLA2153 and YY8019 products, as well as disclosing the designs of these products.  This restriction, however, does not extend to actions with respect to "similar products derived from or related to" the GLA2153 and YY8019 products or "any parts or components of these products" (see Proposed Inj. ¶ 1), as it has not been established that products derived from or related to the GLA2153 and YY8019 products or their parts and components necessarily use Plaintiffs' Trade Secrets.

***SAC Injunctive Request No. 2.***  This request seeks to require the Kunshan Defendants to "return all documents, files, programs, data, metadata, and other information of any kind preserved, without alteration, deletion, or spoliation, together with any and all copies of any of the foregoing in any medium or format including but not limited to their personal computers, drop box accounts, and the like."  As currently worded, this restriction is patently overbroad; it would require the Kunshan Defendants to send every document, file, and program in their possession to Plaintiffs, even those entirely unrelated to their misappropriation of Plaintiffs' trade secrets.  Accordingly, we modify this restriction to require the Kunshan Defendants to

return all documents, files, programs, data, and other information reflecting, related to, or derived from any of Plaintiffs' Trade Secrets.

**SAC Injunctive Request No. 3.** This request seeks to require the Kunshan Defendants "to return all [of] Philips' confidential or proprietary information and/or trade secrets, and Philips' property in their possession, custody, or control." Requiring the Kunshan Defendants to return all of Plaintiffs' Trade Secrets is relief closely tailored to the Kunshan Defendants' trade secret misappropriation. But as discussed in connection with SAC Injunctive Request No. 1, not all confidential or proprietary information constitutes trade secret information, so injunctive relief requiring the return of non-trade secret information does not coincide with the scope of the Kunshan Defendants' trade secret misappropriation. Nor does requiring the Kunshan Defendants to return all of Plaintiffs' property in their possession, even if that property is not confidential or proprietary. As such, we limit SAC Injunctive Request No. 3 to requiring the Kunshan Defendants to return all of Plaintiffs' Trade Secrets in their possession, custody, or control.

We have also considered whether a temporal limitation on the injunction is appropriate. A permanent injunction in a trade secret misappropriation case often lasts only for as long as it would have taken the defendant, "either by reverse engineering or by independent development," to develop the offending product without improperly using the plaintiff's trade secrets. *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (quotation marks omitted); 3 Callmann on Unfair Competition, Trademarks & Monopolies § 14:45 (4th ed. Dec. 2022 update) ("Some authorities . . . limit the injunction against defendant's use of the trade secret to the period of time the defendant would have needed to acquire the technology lawfully by reverse engineering or independent development, thus depriving the defendant of its illegal 'head start' but not permanently eliminating it as a competitor."); *see also Televation Telecomm.*

*Sys., Inc. v. Saindon*, 169 Ill. App. 3d 8, 18 (2d Dist. 1988) ("[A] trial court should not enjoin a defendant's reproduction of plaintiff's product, notwithstanding defendant's reliance on misappropriated trade secrets, for a period of time longer than that required to duplicate the product by lawful means." (quotation marks omitted)).  The following allegations, however, establish that the Kunshan Defendants could not have legitimately developed the GLA2153 and YY8019 products absent their misappropriation of Plaintiffs' trade secrets:

- someone would be unable "to reverse engineer the internal workings, the logic behind [the] electrical and physical workings, and other features that differentiate" Plaintiffs' 2XXX and iMRC X-ray tubes from other products in the market;

- information on Plaintiffs' "designs, design history, specifications, and manufacturing techniques cannot be reverse engineered from a sample Philips 2XXX X-ray Tube";

- the Kunshan Defendants "would not have been able to so rapidly progress" in developing the GLA2153 and YY8019 X-ray tubes "without having misappropriated [Plaintiffs'] trade secrets"; and

- "it is unlikely that the Philips Trade Secrets could be duplicated at all without access to Philips trade secret and other confidential information."

(SAC ¶¶ 61, 65, 161, 166.)  Therefore, there is no need to include a temporal restriction on the permanent injunction we enter against the Kunshan Defendants.

## C.  Conclusion

Plaintiffs have demonstrated that the entry of a permanent injunction against the Kunshan Defendants is warranted based on the DTSA, Plaintiffs' success on the merits, and application of the equitable four-factor test.  In accordance with the injunctive relief requested by Plaintiffs in the Second Amended Complaint, Rule 54(c), and the scope of the violations established by the

default judgment, we will enter a permanent injunction that (1) prohibits the Kunshan Defendants from using, accessing, disclosing, or distributing Plaintiffs' Trade Secrets; (2) requires the Kunshan Defendants to return to Plaintiffs all documents, files, programs, data, and other information reflecting, related to, or derived from any of Plaintiffs' Trade Secrets; and (3) requires the Kunshan Defendants to return to Plaintiffs all of Plaintiffs' Trade Secrets in their possession, custody, or control. As part of the first restriction, the Kunshan Defendants are prohibited from acquiring Plaintiffs' Trade Secrets from others, including GL Leading, its successors, or any individual who left the Aurora facility to work for GL Leading, and further prohibited from manufacturing, distributing, and selling the GLA2153 and YY8019 products, as well as disclosing the designs of these products. The injunction will have no durational limit.

## II.    Attorneys' Fees

Plaintiffs also request an award of their "reasonable attorneys' fees in prosecuting this action against the Kunshan Defendants." (Mot. at 6.) They contend that such an award is appropriate under the DTSA, the ITSA, Rule 37, and/or our inherent authority. (*Id.* at 22–23.)

We conclude that an award of reasonable attorneys' fees against the Kunshan Defendants is warranted under the DTSA and the ITSA. Both the DTSA and the ITSA permit an award of reasonable attorneys' fees to the prevailing party where a trade secret has been willfully and maliciously misappropriated. 18 U.S.C. § 1836(b)(3)(D); 765 Ill. Comp. Stat. 1065/5(iii). Here, Plaintiffs have prevailed against the Kunshan Defendants by way of the default judgment. *e360 Insight*, 500 F.3d at 602; *Autism Homes All.*, 2018 WL 3630012, at *2. The default judgment further establishes that the Kunshan Defendants "knowingly, willfully, and maliciously misappropriated the Philips Trade Secrets in a conscious disregard for [Plaintiffs'] rights [and] in a deliberate attempt to injure [Plaintiffs'] business and improve" their own business. (SAC ¶¶ 179, 197); *see Arwa Chiropractic*, 961 F.3d at 948 ("When a court enters a default judgment

22

as to liability, it must accept as true all factual allegations in the complaint, except those regarding the amount of damages."); *Hill v. Longini*, 767 F.2d 332, 334 (7th Cir. 1985) (noting in dicta that an allegation of "willful misconduct" would have been deemed established if a default judgment had been entered).  Finally, we do not see any circumstances that militate against requiring the Kunshan Defendants to pay Plaintiffs' reasonable attorneys' fees.  *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 1:17-cv-01973, 2021 WL 3076780, at *3 (N.D. Ill. Mar. 10, 2021) ("[A]n award of attorney fees for willful and malicious trade secret misappropriation is within the discretion of the Court based on the totality of the circumstances.").  To the contrary, requiring adjudged willful and malicious trade secret misappropriators to pay their opponents' attorneys' fees may deter similar misconduct in the future.  *See* Uniform Trade Secrets Act § 4 cmt. (explaining that similarly worded attorneys' fee provision allows the award of attorneys' fees "as a deterrent to . . . willful and malicious misappropriation").  This, in turn, furthers the public's "interest in ensuring that trade secrets remain protected and that businesses do not engage in anti-competitive conduct."  *Inventus Power*, 2020 WL 3960451, at *14.  Accordingly, we order the Kunshan Defendants to pay the reasonable attorneys' fees that Plaintiffs incurred in connection with litigating their trade secret claims against the Kunshan Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a permanent injunction and attorneys' fees (Dkt. Nos. 425, 426) is granted in part and denied in part.  A separate permanent injunction order will issue.  Plaintiffs shall submit a Word version of a proposed permanent injunction order that complies with Federal Rule of Civil Procedure 65(d) and reflects the scope of relief granted by this opinion to Proposed_Order_Aspen@ilnd.uscourts.gov.  Plaintiffs shall also submit a legal memorandum and supporting documentation justifying the amount it seeks to recover in

reasonable attorneys' fees from the Kunshan Defendants.  Both submissions shall be made by February 7, 2023.  It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: January 10, 2023