**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC. and PHILIPS MEDICAL SYSTEMS DMC, GmbH, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOSE BUAN, GL LEADING TECHNOLOGIES, INC., KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD., KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD., SHERMAN JEN, and ALLISON HIBBARD, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 19-cv-2648

Judge Marvin E. Aspen

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Having obtained a default judgment against Defendant GL Leading Technologies, Inc.

("GL Leading"), Plaintiffs Philips Medical Systems (Cleveland), Inc. and Philips Medical

Systems DMC, GmbH now move for a permanent injunction and an award of attorneys' fees

against GL Leading. (Philips' Motion for Permanent Injunction and Attorneys' Fees Against GL

Leading Technologies, Inc. ("Pls.' Perm. Inj. Mot.") (Dkt. No. 507, 508).)[1]  Pursuant to our

January 10, 2023 memorandum opinion and order, Plaintiffs have also submitted a legal

---

[1] Docket No. 507 is the publicly available, redacted version of Plaintiffs' permanent injunction motion, and Docket No. 508 is the sealed version.  In this opinion, we cite to the sealed version of Plaintiffs' motion, as well as the sealed versions of any other filings.  We attempt to refer to sealed documents without revealing any information that could be reasonably deemed confidential.  Nonetheless, to the extent we discuss confidential information, we have done so because it is necessary to explain the path of our reasoning.  *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

memorandum and supporting documentation justifying the amount they seek to recover in reasonable attorneys' fees from Defendants Kunshan Yiyuan Medical Technology Co. ("Yiyuan") and Kunshan GuoLi Electronic Technology Co., Ltd. ("GuoLi") (collectively, the "Kunshan Defendants") for trade secret misappropriation. (Motion for Accounting of Attorneys' Fees Against Kunshan Yiyuan Medical Technology Co., Ltd. and Kunshan Guoli Electronic Technology Co., Ltd. (Dkt. Nos. 489, 490) ("Pls.' Att'y Fee Mem.").)[2] Finally, Plaintiffs seek contempt sanctions against the Kunshan Defendants due to their alleged noncompliance with the terms of our permanent injunction order. (Philips' Motion for Contempt Against Kunshan Yiyuan Medical Technology Co., Ltd. And Kunshan Guoli Electronic Technology Co., Ltd. (Dkt. No. 512) ("Pls.' Contempt Mot.").)

For the reasons that follow, we grant Plaintiffs' motion for a permanent injunction against GL Leading and approve Plaintiffs' request for attorneys' fees, subject to further briefing regarding the proper amount of fees. We also award Plaintiffs $2,486,408.17 in attorneys' fees on account of their trade secret claims against the Kunshan Defendants. Finally, we conclude that civil contempt sanctions against the Kunshan Defendants are appropriate.

## BACKGROUND

The factual background of this lawsuit is set forth at length in our January 10, 2023 memorandum opinion and order granting Plaintiffs' motion for a permanent injunction in part.

---

[2] With respect to Plaintiffs' attorney fees memorandum, we refer to redacted information concerning Plaintiffs' counsel's hourly rates, total fees, and number of attorneys in this opinion in order to explain our reasoning, notwithstanding the fact that this information has been redacted in Plaintiffs' memorandum. Plaintiffs "have not identified any "statute, rule, or privilege justif[ying] confidentiality" with respect to this information. *Specht,* 622 F.3d at 701; *see also Gracia v. Sigmatron Int'l, Inc.*, No. 11 C 07604, 2016 WL 6892861, at *9 (N.D. Ill. Nov. 23, 2016) (denying motion to seal information concerning defendants' hourly rates, total fees, and number of attorneys worked on the case).

(Dkt. No. 484 ("Perm. Inj. Op.").)  We take the following facts from that opinion and the Third Amended Complaint.  (*See id.*; Third Amended Complaint ("3d Am. Compl.") (Dkt. No. 445).)[3]

Plaintiffs are affiliated companies that research, develop and commercialize medical imaging technology, including X-ray tubes.  (Perm. Inj. Op. at 2–3.)  The Kunshan Defendants are Chinese corporations that compete with Plaintiffs to manufacture X-ray tubes for the Chinese market.  (*Id.* at 3.)  Defendant GL Leading was formerly an Illinois corporation established to assist the Kunshan Defendants with the design of their X-ray tubes.  (*Id.*)[4]

Plaintiffs filed this lawsuit in 2019 against GL Leading and three of its former employees (the "Individual Defendants") asserting claims for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*; (2) trade secret misappropriation under the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*; and (3) unjust enrichment under Illinois law.  (Perm. Inj. Op. at 5.)  The Kunshan Defendants were added as defendants in November 2019.  (*Id.*)  The Individual Defendants are former Philips employees who were hired by GL Leading and allegedly stole trade secrets and protected information in violation of their employment agreements.  (*See generally* 3d Am. Compl.)  GL Leading participated in the scheme by sharing the misappropriated trade secrets with the Kunshan Defendants, who used them to develop knockoff X-ray tubes to compete with Plaintiffs in the Chinese market.  (*See id.*)

---

[3] The Third Amended Complaint, which was filed on August 8, 2022 prior to our entry of default against GL Leading, is the operative complaint for the purpose of Plaintiffs' motion for a permanent injunction against that entity.  Because GL Leading is in default, we take the allegations in the Third Amended Complaint as true.  *See Coast to Coast Claim Servs., Inc. v. Yagelski*, No. 21 C 04641, 2022 WL 16573461, at *1 (N.D. Ill. Oct. 31, 2022) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

[4] As of the time of this opinion, GL Leading has apparently been dissolved.  (Dkt. No. 476 at 9.)

On May 26, 2022, Plaintiffs obtained a default judgment against the Kunshan Defendants. (Dkt. No. 419.) We stayed this action as to the Individual Defendants and GL Leading based on the parties' representation that these defendants were the subject of an ongoing a federal criminal investigation. (Dkt. No 468.) On February 9, 2023, we entered a permanent injunction against the Kunshan Defendants. (Permanent Injunction Order ("Perm. Inj. Order") (Dkt. No. 503).) We found that Plaintiffs were entitled to reasonable attorneys' fees and ordered Plaintiffs to submit a legal memorandum and supporting documentation justifying the amount of fees they sought to recover from the Kunshan Defendants. (*See* Perm Inj. Op.) Plaintiffs have submitted the requested memorandum and now move for contempt sanctions against the Kunshan Defendants due to their failure to comply with the permanent injunction order. (*See* Pls.' Att'y Fees Mem.; Pls.' Contempt Mot.)

In a separate minute order entered on January 10, 2023, we denied Plaintiffs' request for a default judgment against GL Leading. (Dkt. No. 485.) We noted that, despite representations that GL Leading had terminated its employees, voluntarily dissolved, and ceased all operations, a stay remained in place against the entity. (*Id.*) We ordered the entity to inform us whether it would be retaining new counsel, and instructed the company that if it did not do so we would lift the stay and allow Plaintiffs to renew their default motion. (*Id.*) GL Leading failed to respond, and on February 9, 2023, we lifted the stay with respect to the company. (Dkt. No. 500.) Plaintiffs renewed their motion for a default judgment. (Dkt. No. 499.) On February 13, 2023, we granted judgment on the issue of liability, but did not rule what remedy was proper. (Dkt. No. 504.) Plaintiffs now move for an entry of a permanent injunction against GL Leading based on largely the same grounds as their prior motion against the Kunshan Defendants. (*See* Pls.' Perm. Inj. Mot.)

4

## ANALYSIS

Before embarking on our analysis, we observe that counsel for both GL Leading and the Kunshan Defendants have withdrawn from this litigation.  (*See* Dkt. Nos. 420, 478.)  No replacement counsel have been hired.  Corporations like GL Leading and the Kunshan Defendants cannot represent themselves *pro se* in federal litigation.  *See Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857–58 (7th Cir. 2011) ("[A corporation . . . is legally incapable of appearing in court unless represented by counsel—corporations must appear by counsel or not at all.") (citation and internal quotation marks omitted).

"[I]t bears emphasis that at any point in a federal litigation at which a party that is not entitled to proceed *pro se* finds itself without a lawyer though given a reasonable opportunity to obtain one, the court is empowered to bar the party from further participation in the litigation." *United States v. Hagerman*, 549 F.3d 536, 538 (7th Cir. 2008).  If a corporation's counsel withdraws and fails to hire replacement counsel within a reasonable time, it is appropriate to treat an opposing party's motions—even dispositive ones—as unopposed.  *See, e.g.*, *Mandarin Ent. Corp. v. Twelve Srl*, No. 09 C 5409, 2011 WL 4729791, at *2 (N.D. Ill. Oct. 6, 2011) (treating motion for summary judgment as "effectively unopposed" where defendant's counsel had withdrawn and the defendant had failed to retain new counsel); *accord Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, No. 01 CIV. 4788 RJH/HBP, 2006 WL 587483, at *9 (S.D.N.Y. Mar. 8, 2006).

We have given both the Kunshan Defendants and GL Leading ample opportunity to retain replacement counsel for this litigation, and they have failed to do so.  (*See* Dkt. Nos. 402, 420, 485, 488.)  We are "not required to wait indefinitely" for defendants "to obtain new counsel."  *See JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 792 (7th Cir. 2015) (citation

omitted).  Nor are corporate defendants like GL Leading and the Kunshan Defendants "entitled to grant [themselves] a continuance by firing or failing to pay [their] lawyers."  *Id.*  Because both GL Leading and the Kunshan Defendants have failed to retain replacement counsel despite being given a reasonable opportunity to do so, we find it appropriate to treat each of Plaintiffs' three pending motions as unopposed.

## I.     Plaintiffs' Motion for a Permanent Injunction and Attorneys' Fees Against Defendant GL Leading

Moving to the merits, we first address Plaintiffs' motion for a permanent injunction against GL Leading and related request for attorneys' fees.

### A.     Permanent Injunction

We previously entered a default judgment against GL Leading on Plaintiffs' trade secret misappropriation and unjust enrichment claims.  (Dkt. 504.)  We made no ruling as to what remedy was appropriate based on this finding of liability, however.  (*See id.*); *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) ("[A] default judgment... does not answer whether any particular remedy is appropriate.").  We now consider whether a permanent injunction is an appropriate remedy for GL Leading's default.

Plaintiffs brought claims against GL Leading under the DTSA and ITSA.  (*See generally* 3d. Am. Compl.)  Both statutes permit a court to enjoin actual or threatened trade secret misappropriation.  18 U.S.C. § 1836(b)(3)(A)(i); 765 ILCS 1065/3(a).  To obtain permanent injunctive relief under either statute, a plaintiff must first show actual success on the merits.  *See Vaughn v. Walthall*, 968 F.3d 814, 824–25 (7th Cir. 2020).  The plaintiff must also "demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). The first two of these factors—irreparable injury and inadequate remedy at law—are frequently addressed together. *Inventus Power, Inc. v. Shenzen Ace Battery Co.*, No. 20-cv-3375, 2020 WL 3960451, at *12 (N.D. Ill. July 13, 2020).

Plaintiffs argue that our entry of a default judgment establishes actual success on the merits. (Pls.' Perm. Inj. Mot. at 4.) They argue further that each of the remaining factors required for permanent injunctive relief is satisfied for substantially the same reasons as those set forth in our January 10, 2023 memorandum opinion and order. (*Id.* at 9–13.) We agree. In the first place, the default judgment establishes that Plaintiffs have succeeded on the merits of their claim against GL Leading. "Default judgments . . . plainly constitute judgments on the merits." *Autism Homes All., LLC v. 6146–48 N. Oakley Condo. Ass'n*, No. 16-c-5970, 2018 WL 3630012, at *2 (N.D. Ill. July 31, 2018); *see also Monsanto Prod. Supply LLC v. Rosentreter*, No. 3:16-c-03038, 2017 WL 4284566, at *1–2 (C.D. Ill. Sept. 27, 2017).

We also find that Plaintiffs have established irreparable injury and the unavailability of an adequate remedy at law. "Upon default, the well-pleaded allegations in the complaint relating to liability are taken as true." *Coast to Coast Claim Servs., Inc.*, 2022 WL 16573461, at *1. The allegations in the Third Amended Complaint establish that GL Leading used Plaintiffs' trade secrets without authorization to develop, manufacture, and commercialize competing X-ray tubing technology, (3d Am. Compl. ¶¶ 203–212, 223–231, 246), and that GL Leading's wrongdoing damaged Plaintiffs in an amount that "cannot be compensated by money alone." (*Id.* ¶¶ 210, 229.) These allegations, taken as true, establish that Plaintiffs suffered irreparable harm. *See Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020).

We also find that the balance of hardships weighs in Plaintiffs' favor. Without an injunction, Plaintiffs risk losing the business advantage, value, and goodwill connected to the development and lawful exploitation of their trade secrets. (*See* Perm. Inj. Op. at 12.) As we held with respect to the Kunshan Defendants, GL Leading has no right to use Plaintiffs' trade secrets. *Inventus Power*, 2020 WL 3960451, at *14. Moreover, as Plaintiffs point out, GL Leading has apparently been dissolved. Any harm that will result from enjoining its activities is therefore minimal. *See, e.g.*, *Segment Consulting Mgmt., Ltd. v. Bliss Nutraceticals LLC*, No. 1:20-CV-01837-TWT, 2020 WL 9814152, at *1 (N.D. Ga. June 22, 2020) (holding that the fact that an entity had been administratively dissolved meant that it would suffer no harm if injunctive relief was granted, and thus the balance of the harms favored the moving party).

Finally, granting permanent injunctive relief is in the public interest. As we noted in our permanent injunction opinion, "the public has an interest in ensuring that trade secrets remain protected and businesses do not engage in anti-competitive conduct." (Perm. Inj. Op. at 14 (quoting *Inventus Power*, 2020 WL 2960451 at *14).) "There is little incentive in our capitalist system for business to strive to develop trade secrets in order to excel if such secrets can be stolen at will without repercussions and without the protection of the legal system." *Mazak Optonics Corp. v. Marlette*, No. 17 C 1023, 2017 WL 3394727, at *3 (N.D. Ill. Aug. 8, 2017). Entering a permanent injunction serves the public interest by preventing GL Leading and its affiliates from profiting from the theft of Plaintiffs' trade secrets.

Because each of the four factors have been satisfied, permanent injunctive relief is appropriate. We next address the appropriate scope of the injunction. Federal Rule of Civil Procedure 54(c) prohibits the relief granted upon a default judgment from "differ[ing] in kind from, or "exceed[ing] in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Plaintiffs have attached a proposed permanent injunction to their motion for a permanent injunction that largely follows the form of the order that we previously entered against the Kunshan Defendants. (Dkt. No. 506-1.) We agree with Plaintiffs that, to the extent that the relief requested is identical, the scope of the requested relief is appropriate for the reasons set forth in our previous memorandum opinion. (*See* Perm. Inj. Op. at 14–22.)

Plaintiffs have also requested certain modifications to the proposed order based on allegations in the Third Amended Complaint.[5] In particular, Plaintiffs have added the "Hibbard Download of Proprietary Philips Files," the "Hibbard Misappropriated One Note File," and the "Hibbard 2018 Access Files" to the definition of trade secrets that GL Leading is prohibited from using, accessing, disclosing, or distributing. (Dkt. No. 506-2.) These modifications are supported by the allegations in the Third Amended Complaint. (3d Am. Compl. ¶¶ 120, 121, 190.) Plaintiffs have also added additional provisions to the injunction based on allegations that GL Leading's trade secret misappropriation helped the Kunshan Defendants develop knock-offs of two additional models of Philips X-ray tubes: the YY5021 and the YY4021. (Dkt. No. 506-2 ¶ 3.) This provision, too, is supported by allegations in the Third Amended Complaint. (*See generally* 3d Am. Compl.) Finally, Plaintiffs have added language prohibiting GL Leading from aiding and abetting the Kunshan Defendants, which is generally consistent with the allegations set forth in the Third Amended Complaint. We agree with Plaintiffs that the modifications to the permanent injunction are reasonable. We therefore grant Plaintiffs' motion for a permanent injunction against GL Leading. A separate permanent injunction order will issue.

---

[5] The Second Amended Complaint was the operative complaint at the time of the Kunshan Defendants' default.

### B.    Attorneys' Fees

Plaintiffs also request an award of reasonable attorneys' fees in prosecuting this action against GL Leading.  As we concluded in our prior memorandum opinion, such fees are appropriate under the DTSA and ITSA.  (*See* Perm. Inj. Op. at 22.)  Both statutes permit attorneys' fees to be awarded to a prevailing party where a trade secret has been willfully and maliciously misappropriated.  (*Id*.)

The default judgment that we entered against GL Leading establishes that the company knowingly, willfully, and maliciously misappropriated Philips' trade secrets in a conscious disregard for Philips' rights in a deliberate attempt to injure Philips' business.  (3d Am. Compl. ¶¶ 211, 230.)  There are no circumstances that suggest we should decline to award attorneys' fees.  We therefore order GL Leading to pay reasonable attorneys' fees that Plaintiffs incurred in connection with litigating their trade secret claims against GL Leading.  Plaintiffs shall submit a legal memorandum and supporting documentation justifying the amount they seek to recover in reasonable attorneys' fees from GL Leading.

## II.    Plaintiffs' Request for Approval of its Attorneys' Fees Against the Kunshan Defendants

Next, we consider Plaintiffs' memorandum seeking recovery of reasonable attorneys' fees from the Kunshan Defendants due to their misappropriation of Plaintiffs' trade secrets.  We have already held that Plaintiffs are entitled to reasonable attorneys' fees in prosecuting their misappropriation action.  (Perm. Inj. Op. at 23.)  The only question remaining is "the appropriate *amount* of attorneys' fees and costs."  *Burberry Ltd. v. Yarbrough*, No. 20-c-6909, 2021 WL 5356757, at *1 (N.D. Ill. Nov. 17, 2021) (quoting *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999)) (emphasis in original).  While we have "wide discretion" in making this determination, *Spegon*, 175 F.3d at 550, we must "apply the correct standard," and we "bear[]

the responsibility of justifying [our] conclusions." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Plaintiffs' memorandum and related exhibits show that they are entitled to $2,486,408.17 of attorneys' fees.[6] This amount is comprised of 6009.73 billable hours performed by lawyers at the law firms of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz"), and Steptoe & Johnson LLP ("Steptoe"), as well as contract attorneys. (See Pls.' Att'y Fees Mem. at 8.) Although we are treating Plaintiffs' memorandum as unopposed, we have an independent obligation to ensure that the requested fee award is reasonable. *See Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995) ("We have no doubt that the district court has an independent obligation to scrutinize the legitimacy of [a fee petition].").

In assessing the reasonableness of attorneys' fees, the product of the hours expended on the case multiplied by the hourly rate is the "lodestar." *Montanez*, 755 F.3d at 553. "Although the lodestar yields a presumptively reasonable fee, the court may nevertheless adjust the fee based on factors not included in the computation," including the complexity of the legal issues involved, the degree of success obtained, and the public interest addressed by the litigation. *Id.* (citation omitted).

---

[6] We note that Plaintiffs' memorandum fails to comply with Local Rule 54.3, which, among other things, requires the parties to meet and confer, attempt in good faith to agree on the amount of fees, and submit a joint statement to the extent that there are matters in dispute prior to filing a motion. N.D. Ill. LR 54.3(d), (e). We find it appropriate to excuse Plaintiffs' noncompliance with the Local Rule in this case because the Kunshan Defendants' counsel have withdrawn from the litigation and the Kunshan Defendants have indicated that they refuse to participate further in these proceedings. (*See generally* Pls.' Contempt Mot.) It is appropriate to excuse noncompliance with Local Rule 54.3 when meeting and conferring or drafting a joint statement "would be futile." *Charles Schwab & Co. v. Gomez*, No. 19 C 3833, 2021 WL 4239590, at *2 (N.D. Ill. Feb. 22, 2021), *aff'd*, No. 21-1344, 2022 WL 523085 (7th Cir. Feb. 22, 2022) (citation omitted); *accord Vito & Nick's, Inc. v. Barraco*, No. 05 C 2764, 2008 WL 4594347, at *5 (N.D. Ill. Oct. 10, 2008).

We first review Plaintiffs' lodestar calculation by assessing the reasonableness of (1) the rates of Plaintiffs' counsel and (2) the hours worked. We begin with Plaintiffs' counsel's rates. In general, reasonable rates are established by the market rate of the services rendered. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011); *accord Spegon*, 175 F.3d at 555. The movant bears the burden of proof on this issue. *Spegon*, 175 F.3d at 550. "[T]he best evidence of whether attorneys' fees are reasonable is whether the party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *see also City of Chi. v. Garland*, No. 18 C 6859, 2021 WL 1676387, at *6 (N.D. Ill. Apr. 28, 2021) (approving fees where "attorneys established their market rates based on the actual billable rates charged to and paid by firm clients"); *Worldpay US, Inc. v. Haydon*, No. 17 C 4179, 2020 WL 3050344, at *17 (N.D. Ill. June 8, 2020) (using the plaintiff's counsel's billing rates to calculate an attorney fee award where counsel had "provided evidence of their actual billing rates").

Plaintiffs have presented evidence that the hourly rates charged by Philips' counsel during their trade secret litigation against the Kunshan Defendants ranged from $348 to $681. (Pls.' Att'y Fees Mem. at 7.) The billing partners for each of the law firms that Plaintiffs hired, as well as Philips' Senior Legal Counsel, submitted declarations disclosing counsel's hourly rates, stating that these rates were billed and paid, and attesting that the rates are similar to what the firms customarily charge other clients (and were in some instances lower). (*See generally* Declaration of Adam P. Samansky ("Samansky Decl.") (Dkt. No. 491); Declaration of Jeremy S. Goldkind ("Goldkind Decl.") (Dkt. No. 493); Declaration of Michael Lapin (Dkt. No. 495).) Plaintiffs' counsel delegated work to contract attorneys with lower billable rates in instances when they believed that doing so would be economically beneficial. (Samansky Decl., ¶¶ 14-15.) Plaintiffs have presented evidence that the rates charged are substantially less than those

found to be reasonable in complex trade secret disputes between global competitors. (*Id.* ¶ 5; Goldkind Decl. ¶ 5.) Plaintiffs' counsel have sought to minimize the amount of fees expended by reducing or eliminating charges where appropriate. (Samansky Decl. ¶ 23.) And the rates charged by Philips' counsel are within the 75th percentile of local rates as reported by the American Intellectual Property Law Association, a range that is appropriate given the complexity and duration of this case, as well as its international scope. (*See* Dkt. No. 489-2.) We find that Plaintiffs have met their burden of demonstrating that their counsel's hourly rates are reasonable.

Having determined that Plaintiffs' hourly rates are reasonable, we next turn to the second factor in the lodestar calculation: the number of hours charged. *Montanez*, 755 F.3d at 553. Because the Kunshan Defendants only need to pay for hours *reasonably* expended by Philips' personnel on this case, we must exclude "hours that are excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (quotation marks omitted).

Philips is seeking fees for a total of 6009.73 hours. (Pls.' Att'y Fees Mem. at 4.) This total includes 3,671.48 hours for Mintz timekeepers, 278.1 hours for Steptoe timekeepers and 2,060.15 hours for contract attorneys. (*Id.* at 8.) This number of hours strikes us as not unreasonable considering the length and complexity of this litigation. In support of their request for attorneys' fees Plaintiffs attach an unpublished memorandum opinion holding that reimbursement for 35,005 hours of attorney time in an unfair competition dispute involving international competitors was reasonable. *Motorola Sols., Inc. v. Hytera Comms. Corp. Ltd.*, Case No. 17-c-01973, Dkt. No. 1250 at 2 (N.D. Ill. Oct. 15, 2021). Holding that the number of hours billed by counsel was reasonable, Judge Norgle observed that the case "spanned more than

1200 docket entries . . . more than 68 million pages of documents . . . unparalleled motion practice, and a trial that occurred over more than three and a half months." *Id.* at 12–13. While admittedly not as complicated as *Hytera*, this case has involved over 500 docket entries and extensive motion practice during discovery, where the Kunshan Defendants staunchly opposed Plaintiffs' efforts to schedule depositions and obtain documents. Despite this complexity, the hours billed by Plaintiffs' counsel are a fraction of those found to be reasonable in *Hytera*. We find the *Hytera* court's reasoning to be persuasive that the number of hours billed by Plaintiffs' counsel is reasonable.

This conclusion is confirmed by our independent review of the time sheets that Plaintiffs' counsel submitted. These time sheets "clear[] the threshold . . . of specifying who did what any at what cost. *Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, No. 17-c-8872, 2020 WL 2098059, at *3 (N.D. Ill. May 1, 2020), *aff'd*, 989 F.3d 556 (7th Cir. 2021). Our review of Plaintiffs' counsel's time sheets has not disclosed any entries indicating work that is of an administrative or clerical nature (and hence unrecoverable). *Compare Burberry*, 2021 WL 5356757, at *4–5. We observe that certain time entries reflect time spent on litigation with both the Kunshan Defendants and the other defendants. For these entries, Plaintiffs have attempted to estimate the percentage of time attributable to the litigation with the Kunshan Defendants. The fact that Plaintiffs have "block billed" in this manner does not render their fees unreasonable. *Phoenix Bond & Indem. Co. v. Bridge*, No. 05 C 4095, 2012 WL 6091112, at *7 (N.D. Ill. Dec. 7, 2012) ("In a . . . large and complex [case], in which attorneys are routinely performing multiple tasks on any given day, it is neither surprising nor inappropriate for them to aggregate their work into a single entry.") Plaintiffs will not be allowed a double recovery of these fees

14

from any of the other defendants in this action. *See, e.g.*, *Collins v. Kibort*, 143 F.3d 331, 339-40 (7th Cir. 1998) ("[T]he law abhors duplicative recoveries.") (quotation marks omitted).

Plaintiffs' lodestar calculation of $2,486,408.17 is therefore presumptively reasonable. *Montanez*, 755 F.3d at 553. Although we are entitled to adjust this fee, we see no reason to do so. Plaintiffs have not requested an upward adjustment of their fees. (*See generally* Pls.' Att'y Fees Mem.) Nor will we decrease the lodestar. Plaintiffs have been successful on all of the claims that they have asserted. *Burberry*, 2021 WL 5356757, at *6. Moreover, as indicated in our permanent injunction opinion, the public interest is served by holding those who misappropriate trade secrets accountable. (*See* Perm. Inj. Op. at 4.) We therefore find that Plaintiffs are entitled to recover $2,486,408.17 in attorneys' fees from the Kunshan Defendants.

## III.    Plaintiffs' Motion for Contempt Sanctions

Finally, we turn to Plaintiffs' motion for contempt sanctions. "A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999)). A party moving for an order of contempt must prove, by clear and convincing evidence, that: (1) a court order sets forth an unambiguous command; (2) violation of that command by the contemnor; (3) that the contemnor did not substantially comply with the order, resulting in a significant violation; and (4) the contemnor failed to undertake "a reasonable or diligent effort to comply." *Clay Fin. LLC v. Mandell*, No. 16-c-11571, 2020 WL 13608316, at *3 (N.D. Ill. Nov. 30, 2020) (citing *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010)). Contempt sanctions are an

appropriate remedy for a violation of a court-issued injunction. *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102 (N.D. Ill. 2012).

"Contempt can be either criminal or civil." *Id.* In distinguishing between civil and criminal contempt, we look to "the character and purpose of the punishment." *Id.* (citations omitted). Contempt is criminal in nature if the purpose is to punish the violating party, vindicate the court's authority, or deter future violations. *Dowell*, 257 F.3d at 699. Civil contempt, by contrast, can be coercive or remedial; its purpose is to either compel a party into compliance with an existing court order or compensate the complainant for losses sustained as a result of the contemnor's disobedience. *Id.*

Plaintiffs request both civil and criminal sanctions. (*See generally* Pls.' Contempt Mot.) As a coercive sanction, they request that we freeze the Kunshan Defendants' assets and prohibit them from doing business in the United States, as well as prohibit them from purchasing X-ray tubing components, until they comply with the permanent injunction order. (*Id.* at 12.) As a punitive sanction, Plaintiffs request that we refer the Kunshan Defendants to the United States Attorney's Office for investigation and prosecution. (*Id.* at 2, 13.) Since the ostensible purpose of the referral is to punish the Kunshan Defendants rather than induce compliance or compensate Plaintiffs, it is a criminal sanction. *See Dowell*, 257 F.3d at 699.

We consider only Plaintiffs' request for civil contempt sanctions at this time. This is Plaintiffs' first contempt motion. "Because coercive sanctions are generally reserved for those cases involving current or continuing violations, a civil contempt sanction may transform into a criminal contempt sanction if there is no reasonable possibility that the contemnor would ever comply with the court's demands." *Mon Ros Int'l for Gen. Trading & Contracting, W.L.L. v. Anesthesia USA, Inc.*, No. 17 C 7365, 2019 WL 132596, at *3 (N.D. Ill. Jan. 8, 2019) (citations

and quotations omitted). While civil sanctions may ultimately be insufficient to induce the Kunshan Defendants' compliance, Plaintiffs have failed to show that there is no reasonable possibility that the Kunshan Defendants will comply absent the requested referral. We therefore decline to make such a referral at this time. *See United States v. Wilson*, 421 U.S. 309, 317 n.9 (1975) ("The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate.") (citation and quotation marks omitted); *Radio One, Inc. v. Direct Media Power, Inc.*, No. 16 C 1867, 2018 WL 4685470, at *11 (N.D. Ill. Sept. 28, 2018), *aff'd sub nom. Urb. One, Inc. v. Direct Media Power, Inc.*, 813 F. App'x 227 (7th Cir. 2020) (declining to impose criminal sanction of referral to U.S. Attorney's Office for prosecution where civil sanctions were deemed sufficient).

We next consider whether Plaintiffs have made the necessary showing for an order of civil contempt. We first find that our permanent injunction order makes an unambiguous command. *See Hyatt*, 621 F.3d at 692. Among other things, the order "permanently restrain[s] and enjoin[s]" the Kunshan Defendants "from manufacturing, distributing, or selling" Plaintiffs' X-ray tubing products "under any model name, alias, or other designation." (Perm. Inj. Order ¶ 3.). The order also requires that the Kunshan Defendants "return to Plaintiffs all of Plaintiffs' Trade Secrets" (as defined therein) and "all documents, files, programs, data, and other information reflecting, related to, or derived [there]from . . . within 21 days of receiving actual notice" of the order. (*Id.* ¶¶ 5-6.) Finally, the order prohibits the Kunshan Defendants from retaining any of Plaintiffs' Trade Secrets. (*Id.*) These provisions unambiguously instruct the Kunshan Defendants as to their obligations under the order.

Moving on to the second element, Plaintiffs have presented clear and convincing evidence that the Kunshan Defendants violated the permanent injunction by continuing to

17

distribute and promote knockoff products using Plaintiffs' trade secrets after receiving actual notice of the permanent injunction. *See Hyatt*, 621 F.3d at 692. The Kunshan Defendants received actual notice of the order no later than March 14, 2023, when Plaintiffs' counsel emailed a copy of the order and a certified translation to GuoLi's Chairman, Jiangpin Yin. (Dkt. No. 512-1); *see also* (Perm. Inj. Order ¶ 7 (stating that the order "is binding upon the following persons and entities to the extent they receive actual notice of this [o]rder by personal service or otherwise")); *Notice,* Black's Law Dictionary (11th ed. 2019) ("Actual notice" is "[n]otice given directly to, or received personally by, a party"). Plaintiffs also sent a physical copy of the order and translation to the Kunshan Defendants via FedEx. (Dkt. No. 512-1.) Despite receiving notice of the order, the Kunshan Defendants failed to comply with the turnover provision, retained Plaintiffs' trade secrets, and continued to sell and advertise the knockoff products that the order enjoined them from manufacturing, distributing, or selling. (*Id.*)

Plaintiffs have provided invoices, photographs and other evidence indicating that the Kunshan Defendants continued to manufacture and sell knockoff X-ray tubing products in violation of paragraph 3 of the permanent injunction order after the order was entered. (*See generally* Declaration of Yiyao Chen ("Chen Decl.") (Dkt. No. 512-5).) For example, the Kunshan Defendants sold knockoff products on April 13, 2023, over two months after we entered the permanent injunction order and nearly a month after the Kunshan Defendants were provided with notice thereof. (Dkt. No. 512-10.) The Kunshan Defendants' website continues to display the prohibited products for sale. (Chen Decl. ¶¶ 16–19.) What is more, the Kunshan Defendants appear to have been actively promoting the sale of their knockoff products at medical equipment conferences in China after the injunction was entered. (*See generally id.*)

We find that the Kunshan Defendants' actions were a substantial violation of our permanent injunction order. *See Hyatt*, 621 F.3d at 692. Indeed, it appears that the Kunshan Defendants simply ignored the order and took the position that they were not required to comply with it. On March 16, 2023, Yiyuan's CEO, Lanyoung Zhang, responded via email to Plaintiffs' demand letter. (Dkt. No. 512-3 ("Zhang Email").) In his email, Zhang makes several bullet-pointed arguments in an apparent attempt to justify the Kunshan Defendants' noncompliance. As Plaintiffs note, we have expressly rejected each of them. For example, Zhang argues that obeying U.S. court orders would cause the Kunshan Defendants to violate Chinese law (*id.* at 1), but we rejected this argument in our March 1, 2022 memorandum opinion and order (Dkt. No. 386 at 13– 4.) He implies that the fact that Plaintiffs had filed a similar suit in China provides grounds for dismissing or staying the instant litigation, but we rejected this contention in our July 28, 2021 memorandum opinion and order. (Dkt. No. 303 at 31–32.) Finally, he disputes that this court has personal jurisdiction over the Kunshan Defendants, but we have repeatedly rejected this argument as well. (*See* Dkt. No. 282 at 23; Dkt. No. 303 at 10.)

Zhang also states that service was ineffective because it was not accomplished through the International Court of Justice in the Hague and approved by a Chinese Court. But he cites no authority for this proposition. By its terms, the permanent injunction order had worldwide effect after the Kunshan Defendants received actual notice. (Perm. Inj. Order ¶ 7.) Absent any authority to the contrary, we cannot conclude that the Kunshan Defendants' noncompliance was reasonable. The unreasonableness of the Kunshan Defendants' conduct is underscored by the fact that Zhang ends his email with a threat to sue Plaintiffs for "commercial disparagement" if they "continue to disseminate information about the U.S. litigation, including the injunction," to the Kunshan Defendants' customers and stakeholders. (*Id.*)

Zhang's email is clear and convincing evidence that the Kunshan Defendants did not make "a reasonable or diligent effort to comply" with the provisions of our permanent injunction order. *See Hyatt*, 621 F.3d at 692. To the contrary, the Kunshan Defendants willfully ignored the order and threatened retaliation against Plaintiffs for attempting to hold them accountable. *Teledyne Techs. Inc. v. Shekar*, No. 15-c-1392, 2016 WL 4494215, at *4 (N.D. Ill. Aug. 22, 2016), *aff'd*, 739 F. App'x 347 (7th Cir. 2018) (finding that party had willfully violated court orders, and should be sanctioned, where he was "ordered . . . to comply with the Court's orders" but "never manifested the slightest intention to do so"). Because "[a]ll that is required to sustain a finding of civil contempt is proof that the defendant was aware of the court's order, and knowingly refused to comply," Zhang's willful noncompliance is clearly sanctionable. *R-BOC Representatives, Inc. v. Minemyer*, No. 11 C 8433, 07 C 1763, 2017 WL 3491974 (N.D. Ill. Aug. 15, 2017); *see also Bailey v. Roob*, 567 F.3d 930, 935 (7th Cir. 2009) (stating that "evidence that a party has willfully refused to comply with a court order" may support civil contempt sanctions). We therefore find that contempt sanctions are appropriate.

Having determined that contempt sanctions are appropriate, we must next determine the proper scope of sanctions—a matter that is subject to our discretion. *See Feltner v. Title Search Co.*, 283 F.3d 838, 841 (7th Cir. 2002). Plaintiffs request that we bar the Kunshan Defendants, Yin, and/or Zhang from doing any business of any kind in the United States, and immediately freeze their assets in the United States until they comply with the terms of the permanent injunction. (Pls.' Contempt Mot. at 12.) Plaintiffs also request that we prohibit the Kunshan Defendants from purchasing materials to manufacture knockoff X-ray tubing. (*Id.* at 12.)

We agree with Plaintiffs that an order freezing the Kunshan Defendants' assets is an appropriate remedy to induce compliance with the permanent injunction given the fact that the

Kunshan Defendants operate overseas and have indicated that they believe they are not subject to this court's jurisdiction. *See Clay Fin.*, 2020 WL 13608316, at *8 ("The [C]ourt has 'broad discretion to fashion a remedy that coerces [Defendants'] compliance with the Court's orders'") (citation omitted); *see also In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1259 (7th Cir. 1980) "(Federal Courts are empowered to restrain the removal of assets from the United States through injunctive relief."). We decline to consider any further sanctions at this time.

## CONCLUSION

For the foregoing reasons, we grant Plaintiffs' motion for a permanent injunction against GL Leading. (Dkt. No. 507.) A separate permanent injunction order will issue. Within 21 days of the entry of the permanent injunction order, Plaintiffs shall submit a legal memorandum and supporting documentation justifying the amount they seek to recover in reasonable attorneys' fees from GL Leading. We also find that the amount of attorneys' fees that Plaintiffs seek to recover on account of the Kunshan Defendants' misappropriation of Plaintiffs' trade secrets is reasonable. (Dkt. No. 489.) We therefore award Plaintiffs $2,486,408.17 in attorneys' fees. Finally, we find that there is clear and convincing evidence that the Kunshan Defendants violated our permanent injunction order and that civil sanctions are warranted. Plaintiffs shall have 7 days from the entry of this order to submit a proposed contempt order in accordance with this memorandum opinion. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: July 13, 2023