# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC., and PHILIPS MEDICAL SYSTEMS DMC, GmbH,<br><br>    Plaintiffs,<br><br>v.<br><br>JOSE BUAN, GL LEADING TECHNOLOGIES, INC., KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD., KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD., and SHERMAN JEN,<br><br>    Defendants. | Civil Action No. 1:19-cv-02648<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' SECOND MOTION FOR CONTEMPT AGAINST
## KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD. AND LANYONG ZHANG

Philips Medical Systems (Cleveland), Inc., and Philips Medical Systems DMC, GmbH (collectively, "Plaintiffs" or "Philips") respectfully request that this Court hold defendant Kunshan Yiyuan Medical Technology Co., Ltd. ("Yiyuan") in contempt for its continued violation of the Permanent Injunction Order (Dkt. 503) and its additional violation of this Court's July 24, 2023 Contempt Order ("First Order of Contempt" or "FOC") (Dkt. 527). Yiyuan has taken no action to cease manufacturing, advertising, distributing and selling the GLA2153 and/or YY8019 X-ray tubes in violation of paragraphs 3, 5, and 6 of the Permanent Injunction Order. Nor has it returned any document, file, program, data and other information comprising, reflecting, related to, or derived from any of Plaintiffs' Trade Secrets as required by paragraphs 5-6 of that Order. *See generally*, Dkt. 512. And now, in violation of the First Order of Contempt, Yiyuan has failed to provide to Plaintiffs and the Court sworn schedules of Yiyuan's financial institution accounts, real property, and personal property exceeding $5,000 in value. Dkt. 527 ¶ 3. Yiyuan also failed to serve on Plaintiffs and the Court sworn schedules of "every transaction involving the purchase, sale or other disposition of any real or personal property or other tangible thing having a value greater than $5,000.00 by or for Yiyuan on or after May 18, 2023." *Id.* ¶ 4.

On July 13, 2023, the Court held "that there is clear and convincing evidence that the Kunshan Defendants violated our permanent injunction order and that civil sanctions are warranted." Dkt. 520 at 21; *id.* at 15-21. Per the Court's July 13 Order, Philips submitted a Proposed Contempt Order on July 17, 2023. Dkt. 522. And on July 24, 2023, the Court entered a judgment of civil contempt against Yiyuan, ordered it to preserve all funds and assets located in the United States, and ordered it to provide Philips and the Court with sworn schedules of its assets and transactions. Dkt. 527. The Court Ordered these remedies after finding clear and convincing evidence that Yiyuan violated the Court's Permanent Injunction Order (Dkt. 503), which permanently enjoined Yiyuan from, *inter alia*: using Plaintiffs' Trade Secrets; manufacturing,

distributing, or selling Yiyuan's GLA2153 and/or YY8019 products; and also required Yiyuan to return all of Plaintiffs' Trade Secrets and any information reflecting, related to, or derived from Plaintiffs' Trade Secrets within 21 days of notice of the Permanent Injunction Order. Dkt. 503 ¶¶ 1-6. Rather than comply with any aspect of the Permanent Injunction Order, Yiyuan, through its CEO, Mr. Lanyong Zhang, claimed that it and co-defendant, Kunshan GuoLi Electronic Technology, Co., Ltd. ("GuoLi") (collectively "Kunshan Defendants") "withdrew from this litigation" (relying on rationale this Court previously rejected) and threatened a retaliatory suit against Plaintiffs and their counsel. *See, e.g.*, Dkt. 512 at 4-5; Dkt. 512-3.

For the reasons set forth below, Plaintiffs seek additional coercive contempt sanctions in view of Yiyuan's recidivist and continuing misconduct and blatant disregard for this Court and its lawful authority. Plaintiffs' thus request that the Court enter additional civil sanctions against Yiyuan and Zhang, including barring the transaction of any business of any kind in the United States, freezing their assets and barring them from obtaining any parts or components that can be used in the manufacture of the GLA2153 and/or YY8019 (without geographic limitation). Plaintiffs also request that the Court refer Yiyuan and Zhang to the United States Attorney's Office for criminal contempt proceedings for their continuing violation of the Court's Permanent Injunction Order and FOC.

## I.       BACKGROUND

The procedural background of this lawsuit is summarized in the Court's January 10, 2023 Memorandum Opinion and Order, in which this Court granted, in part, Plaintiffs' request for a permanent injunction. Dkt. 484. Plaintiffs further summarized the pertinent background giving rise to the Court's First Order of Contempt against Yiyuan in their first motion for contempt. *See* Dkt. 512. To promote judicial economy and to avoid restating in full for the Court the lengthy relevant facts and the procedural and substantive underpinnings for the prior contempt order against the

Kunshan Defendants, Plaintiffs adopt and incorporate as if fully set forth herein, its background section from its first motion for contempt. *Id*. at 3-7. Plaintiffs have observed no change in Yiyuan's continuing pattern of unlawful conduct recited in their first motion for contempt, as shown by the continued advertisement of the GLA2153 and YY8019 for sale on Yiyuan's website. Ex. 3 (Supplemental Declaration of Yiyao Chen) at ¶¶ 3-6 and Ex. 1-3.

Granting Plaintiffs' first motion for contempt, on July 24, 2023, this Court entered the FOC against Yiyuan. The FOC clearly obligated Yiyuan to do the following, among other things:

- Within seven (7) calendar days of the entry of this [FOC], Yiyuan shall serve on Plaintiffs and file with the Court schedules, sworn by a knowledgeable officer and/or director of the entity, setting forth the following information concerning its interests in any United States bank or other financial institution account or real or personal property or other tangible asset(s) located in the United States . . . [followed by clearly articulated information that Yiyuan was to provide for each bank, financial institution, and piece of real property of any kind, and of any personal property or tangible thing in which Yiyuan holds an interest that exceeds a value of $5,000]. Dkt. 527 ¶¶ 3 (a-c).

- Within seven (7) calendar days of the entry of this [FOC], Yiyuan shall serve on Plaintiffs and file with the Court a schedule, sworn by a knowledgeable officer and/or director of the entity, setting forth every transaction involving the purchase, sale or other disposition of any real or personal property or other tangible thing having a value greater than $5,000 by or for Yiyuan on or after May 18, 2023, the date on which Plaintiffs filed their Motion for Contempt, including: a description of the real or personal property or other tangible thing involved in such transaction; the date and amount of such transaction; the identity of each person or entity involved in such transaction; and the source of all funds used for such transaction. Dkt. 527 ¶ 4.

Yiyuan was required to comply with these conditions by July 31, 2023.

Yiyuan and its CEO, Zhang, are on actual notice of the terms of the FOC since at least the day after it issued. On July 25, 2023, counsel for Plaintiffs served a copy of the FOC on Yiyuan and Zhang via Federal Express and also by way of an email directed to Mr. Zhang.[1] Ex. 1.

---

[1] As the Court previously recognized, Zhang received notice of the Permanent Injunction Order at the same email address to which the FOC was sent, and he used this same email address to threaten Plaintiffs and their counsel with retaliation. Dkt. 520 at 19-20.

Plaintiffs' counsel received confirmation that the FedEx copy of the FOC was delivered to Yiyuan and Mr. Zhang on July 31, 2023 at 11:22 a.m. Ex. 2. Despite receiving electronic and hard copies of the FOC, Yiyuan and Zhang have not complied with, at minimum,[2] the two specific time-sensitive deadlines imposed by the Court's FOC.

## II.    LEGAL STANDARD

"A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." Dkt. 520 at 15 (quoting *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001)); *see also* Fed. R. Civ. P. 70(e); 18 U.S.C. § 401. "Indeed, the court whose order was defied must enforce the injunction through the contempt power because contempt is, in essence, an affront to the court that issues the order." *SEC v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008). "Courts have broad discretion to fashion contempt remedies and the particular remedy chosen should be based on the nature of the harm and the probable effect of alternative sanctions." *Id.* at *4 (quoting *F.T.C. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009)).

A primary purpose of civil contempt sanctions is to "coerce compliance with a court order. . . ." *Mon Ros Int'l for Gen'l Trading and Contracting v. Anesthesia USA, Inc.*, No. 17 C 7365, 2019 WL 132596, *3 (N.D. Ill. Jan 8, 2019) (citing *In re Grand Jury Proceedings*, 280 F.3d 1103, 1107 (7th Cir. 2002)). "For example, sanctions that are designed to lapse once the contemnor

---

[2] On information and belief, Yiyuan has not done anything to comply with Paragraph 2 of the FOC, which requires Yiyuan to "preserve all funds and other assets located in the United States, and Yiyuan and its officers, agents, servants, employees, attorneys and any persons in active concert or participation with Yiyuan and any banks, savings and loan associations or other financial institutions, agencies that engaged in the transfer of real property, product distributors, importers, customs agencies and/or representatives who receive actual notice of this Contempt Order by personal service or otherwise, are prohibited, directly or indirectly from transferring, selling assigning, encumbering, pledging, dissipating, concealing or otherwise disposing of in any manner, any funds, assets, real property, or other property located in the United States belonging to, or in the possession, custody, or control of Yiyuan." Dkt. 527 ¶ 2. As discussed in this Motion, Yiyuan's refusal to even identify any assets subject to the non-transfer provision of Paragraph 2 of the FOC, prevents Plaintiffs and the Court from evaluating any compliance with that provision.

purges his or her contempt such that the contemnor 'carries the keys of his prison in his own pocket' are civil contempt sanctions." *Id.* (quoting *In re Grand Jury Proceedings*, 280 F.3d at 1107); *see Clay Financial LLC v. Mandell*, No. 16-cv-115771, 2020 WL 13608316, at *8 (N.D. Ill. Nov. 30, 2020) (noting "[c]oercive sanctions seek to induce future behavior by attempting to coerce a recalcitrant party or witness to comply with an express court directive." (quotations omitted)). "When the purpose is to make the defendant comply, the court must consider the 'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *South Suburban Hous. Ctr. v. Berry*, 186 F.3d 851, 854 (1999) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). In addition, sanctions for civil contempt "may transform into a criminal contempt sanction if there is 'no reasonable possibility that the contemnor would ever comply with the court's demands.'" *Anesthesia USA*, 2019 WL 132596, at *3 (quoting *In re Grand Jury Proceedings*, 280 F.3d at 1100); *see also* Fed. R. Crim. P. 42 (setting forth criminal contempt procedures).

> A party moving for an order of contempt must prove, by clear and convincing evidence, that: (1) a court order sets forth an unambiguous command; (2) violation of that command by the contemnor; (3) that the contemnor did not substantially comply with the order, resulting in a significant violation; and (4) the contemnor failed to undertake "a reasonable or diligent effort to comply."

Dkt. 520 at 15 (quoting *Clay Financial*, 2020 WL 13608316, at *3 (citing *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010)). Thus, "[a]ll that is required to sustain a finding of civil contempt is proof that the defendant was aware of the court's order, and knowingly refused to comply. *His motive does not count.*" *R-BOC Representatives, Inc. v. Minemyer*, No. 11 C 8433, 07 C 1763, 2017 WL 3491974, *7 (N.D. Ill. Aug. 15, 2017) (emphasis added) (noting defendant's "attempted self-exoneration . . . is astonishing – and unavailing"); Dkt. 520 at 20 (quoting same).

In contempt proceedings, as the court issuing the underlying order, this Court "has the authority to deal with defiance of its order *regardless of where that defiance occurs*." *SEC*, 514 F.3d at 674 (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985)) (emphasis added). "An injunction binds not only the parties to the injunction but also nonparties who act with the named party." *Id.* at 674 (applying *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)); *see Clay Financial*, 2020 WL 13608316, at *4 (holding "[c]ourts may hold individuals in contempt for violating not only a citation against the individual in the individuals' personal capacity, but also for violating citations against entities in the individual's capacity as a corporate officer."). Thus, these principles apply to nonparties who reside outside the territory of the United States:

> Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum.

*Id.* (quoting *Waffenschmidt*, 763 F.2d at 714). And so, where "'obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party.'" *Id.* (quoting *Stoler v. Able*, 870 F.2d 1158, 1164 (7th Cir. 1989)).

## III. ARGUMENT

### A. Yiyuan Continues to Violate the Permanent Injunction Order

Among other things, this Court's Permanent Injunction Order:

- "[P]ermanently restrained and enjoined" the Kunshan Defendants "from manufacturing, distributing, or selling the GLA2153 and/or YY8019 products under any model name, alias, or other designation." Dkt. 503 ¶ 3.

- Required the Kunshan Defendants "to return to Plaintiffs all of Plaintiffs' Trade Secrets" and "all documents, files, programs, data, and other information reflecting, related to, or derived [there]from . . . within 21 days of receiving actual notice of this Order. . . . Defendants shall not retain any such documents, files, programs, data, and other information reflecting, related to, or derived from any of Plaintiffs' Trade Secrets." *Id.* ¶¶ 5-6.

These commands are unambiguous. *Clay Financial*, 2020 WL 13608316 at *3. And Yiyuan's and Zhang's continuing violation of those commands is equally unambiguous. Yiyuan's website continues to advertise the GLA2153 and YY8019 for sale. Ex. 3 (Chen Decl.), ¶¶ 3-6, Exs. 1-3. This continued manufacture, distribution and sale of the GLA2153 and YY8019 X-ray tubes is in clear violation of Paragraph 3 of the Permanent Injunction Order. Moreover, none of the Kunshan Defendants, Yin, or Zhang have returned a single document or piece of information reflecting, related to, or derived from Plaintiffs' Trade Secrets, as required by paragraphs 5-6 of the Permanent Injunction Order. These violations are significant, going to the very core of the Permanent Injunction's mandate in response to Kunshan Defendants' adjudged misappropriation of Plaintiffs' Trade Secrets.

Neither Yiyuan nor Zhang have complied in any way, much less "substantially," with the Court's Permanent Injunction Order. Dkt. 520 at 15 (quoting *Clay Financial*, 2020 WL 13608316, at *3). Nor did Yiyuan make any effort to comply, much less a "reasonable or diligent effort" required to avoid a finding of contempt. *Id.* Yiyuan and has made no attempt to communicate with Plaintiffs, remains unrepresented, has filed nothing with the Court, and has simply disregarded each and every Order issued by this Court for more than a year. Indeed, Yiyuan through its CEO, Zhang, has affirmatively represented that it (along with GuoLi) does not recognize the authority of this Court and will not comply with its Orders. *See e.g.*, Dkt. 512-3 (Zhang's email discussing Yiyuan's and GuoLi's disregard of Injunction Order). Zhang even threatened Plaintiffs and their U.S. counsel with suit in "Chinese courts" for "alleged commercial disparagement" for even "disseminat[ing] information about the U.S. litigation, including the injunction, to Guoli and Yiyuan's customers and stakeholders in China . . . ." *Id.* This is the antithesis of "a reasonable or diligent effort to comply." *Clay Financial*, 2020 WL 13608316 at *7; Dkt. 520 at 19-20 (noting "Zhang's email is clear and convincing evidence that the Kunshan Defendants did not make 'a

reasonable or diligent effort to comply' with the provisions of our permanent injunction order" (quoting *Hyatt*, 621 F.3d at 692)). Rather, it is the apex of bad faith and contumacious conduct in this face of this Court's lawful and unambiguous order.

### B. Yiyuan Violated the Key Provisions of the First Order of Contempt

Like its continued violation of the Permanent Injunction Order, Yiyuan has made no effort to comply with the FOC. Among other things, this Court's FOC required Yiyuan to serve on Plaintiffs and file with the Court, schedules sworn by a knowledgeable officer and/or director of the company, providing clearly-articulated information (set out in the FOC) regarding Yiyuan's interests located in the United States in any bank or financial institution account, real property, personal property, and tangible assets exceeding $5,000. Dkt. 527 ¶ 3(a-c). Yiyuan was also ordered to serve and file similar sworn schedules regarding "every transaction involving the purchase, sale or other disposition of any real or personal property or other tangible thing having a value greater than $5,000 by or for Yiyuan on or after May 18, 2023, the date on which Plaintiffs filed their Motion for Contempt . . . ." *Id.* ¶ 4. These commands are unambiguous. *Clay Financial*, 2020 WL 13608316 at *3. And Yiyuan's violation of these commands is equally unambiguous. Yiyuan was required to provide information about assets to the Court and to the Plaintiffs by July 31, 2023. It did no such thing.

Instead, Yiyuan did nothing to comply in any way, much less "substantially," with the Court's Order. Dkt. 520 at 15 (quoting *Clay Financial*, 2020 WL 13608316, at *3). Nor did Yiyuan make any effort to comply with the FOC, much less a "reasonable or diligent effort" required to avoid a finding of contempt. *Id.* As explained in section II.A, *supra*, regarding their Permanent Injunction Order violations, Yiyuan and Zhang have taken none of the actions required by the FOC, and thus should be held in further contempt.

### C.     This Court Should Issue Sanctions Sufficiently Severe to Coerce Compliance with the First Order of Contempt.

As demonstrated above, at least Yiyuan and Zhang[3] are on actual notice of the FOC since July 25, 2023 and are in flagrant violation of at least two of its terms. Zhang's prior correspondence regarding the Permanent Injunction Order demonstrates abject disregard for this Court's authority and lawful orders, and so there would be no point to giving them further opportunity or warning to come into compliance. *See* Dkt. 520 at 19-20.

As a preliminary matter, where the Department of Justice is already conducting an investigation into the conduct at issue in this civil case, *see* Dkt. 468, 500, and especially in view of the "disrespect, deceit, and flat-out hostility toward the court, its officers, and opposing counsel during the [four] years this case has been pending," Plaintiffs respectfully request that the Court again hold Yiyuan and Zhang in contempt, and send a copy of its Order so holding "to the United States Attorney so that [s/]he may consider whether a criminal prosecution for perjury or contempt of court is appropriate." *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 352 (7th Cir. 2018); *see also Anesthesia USA*, 2019 WL 132596, at *3 (noting sanctions for civil contempt "may transform into a criminal contempt sanction if there is no reasonable possibility that the contemnor would ever comply with the court's demands" (quotations omitted)); *see also* Fed. R. Crim. P. 42.

In the Order finding contempt sanctions warranted against Kunshan Defendants, the Court declined "at this time" to consider Plaintiffs' request for criminal sanctions because this was Plaintiffs' "first contempt motion" and "coercive sanctions are generally reserved for those cases involving current or continuing violations . . . ." Dkt. 520 at 16 (quoting *Anesthesia USA*, 2019 WL 132596, at *3). The Court also held that, at the time, "Plaintiffs have failed to show that there

---

[3] Plaintiffs reserve all rights as to whether GuoLi and Yin are in contempt of any of the Court's orders, as Plaintiffs' first Proposed Contempt Order (Dkt. 522) has not yet been entered against them and is the subject of ongoing briefing.

is no reasonable possibility that the Kunshan Defendants will comply absent the requested referral" to the United States Attorney's Office for criminal contempt investigation and prosecution. *Id.* But Yiyuan's actions since receiving actual notice of the FOC – i.e., ignoring it completely – have established unequivocally that the Kunshan Defendants will not comply with the Court's orders "absent the requested referral." *Id.* Thus, it is now time for the Court to "transform [its civil contempt sanction] into a criminal contempt sanction [because] there is no reasonable possibility that the contemnor would ever comply with the [C]ourt's demands." *Id.* (quoting *Anesthesia USA*, 2019 WL 132596, at *3). As a result, the Court should now refer at least Yiyuan and Zhang to the United States Attorney's Office for criminal contempt proceedings for their continuing violation of the Court's Permanent Injunction Order and FOC.

For a second order of civil contempt, this Court should additionally enter sanctions sufficient to "induce future behavior by attempting to coerce a recalcitrant party or witness to comply with an express court directive." *Clay Financial*, 2020 WL 13608316, at *8 (quotations omitted)). Fashioning coercive sanctions, this Court "must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *South Suburban Hous. Ctr. v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999) (quotations omitted). Here, given the magnitude of harm, and intransigence of Yiyuan, only broader coercive sanctions that will immediately affect Yiyuan's (and Zhang's) ability to transact business worldwide will have any likelihood of changing their course of unlawful conduct. **This Court should, therefore, bar Yiyuan and Zhang from doing any business of any kind in the United States, and immediately freeze any/all of their assets**[4] **in**

---

[4] The Kunshan Defendants' failure to abide by this Court's injunction or FOC is a harbinger of the difficulty Plaintiffs anticipate in recovering money damages from the Kunshan Defendants, whether in the form of an award of attorneys' fees or actual damages. Thus, in addition to serving as coercive sanction, freezing the Yiyuan and Zhang's assets in the United States would assist in recover of money damages once this

**the United States at least until they comply with the terms of the Permanent Injunction Order and FOC**. **The Court should also bar Yiyuan and Zhang from obtaining any parts or components that can be used in the manufacture of the GLA2153 and/or YY8019, without geographic restriction**.

Plaintiffs recognize that the Court declined to order this scope of relief "at this time" when it issued the FOC. Dkt. 520 at 21. But Yiyuan's and Zhang's continued willful noncompliance with this Court's Permanent Injunction Order and FOC merit the full scope of sanctions Plaintiffs initially requested in their motion for contempt against Kunshan Defendants (Dkt. 512). This scope of relief is appropriate as a coercive sanction for contempt, as "sanctions that are designed to lapse once the contemnor purges his or her contempt such that the contemnor 'carries the keys of his prison in his own pocket' are civil contempt sanctions." *Anesthesia USA*, 2019 WL 132596, at *3 (citing *In re Grand Jury Proceedings*, 280 F.3d at 1107). If Yiyuan and Zhang can continue to openly violate this Court's FOC and injunction, ignore its discovery orders, and flout its jurisdiction while otherwise reaping the profits of doing business in the United States, then broad injunctive relief barring their doing business and freezing all assets in the United States is both necessary and proportionate as a sanction to coerce compliance with this Court's lawful contempt orders and injunction. This relief is especially appropriate in view of Yiyuan and Zhang's refusal to follow this Court's discovery, contempt, and mandatory injunctive orders, especially when coupled with their "disrespect, deceit, and flat-out hostility toward the court, its officers, and opposing counsel during the [four] years this case has been pending." *Teledyne Techs. Inc.*, 739 F. App'x at 352.

---

Court so orders. *See In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1260-61 (7th Cir. 1980)); *see also Area 55, Inc. v. Celeras LLC*, No. 09-CV-2755, 2011 U.S. Dist. LEXIS 39620, at *11 (S.D. Cal. Apr. 11, 2011).

Given Yiyuan and Zhang's deliberate and willful litigation misconduct leading to entry of default judgment, including their attempts to elude the jurisdiction of this Court through contradictory representations, coupled with their serial violations of this Court's discovery orders and dilatory tactics throughout more than three years of litigation, this continued misconduct is emblematic of their bad faith and deceit. And apt for the flagrant and knowing violation of a lawful injunction, "[a]s one judge's decision has implied, *if you don't like the rules, then stop doing business in the U.S.*" *In re Valsartan*, No. MDL 2875, 2021 WL 6010575, at *18-19 (D.N.J. Dec. 20, 2021) (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, Philips respectfully requests that this Court: (1) bar Yiyuan and Zhang from doing any business of any kind in the United States; (2) immediately freeze any/all of their assets in the United States; (3) bar Yiyuan and Zhang from obtaining any parts or components that can be used in the manufacture of the GLA2153 and/or YY8019, without geographic restriction; and (4) refer at least Yiyuan and Zhang to the United States Attorney's Office for criminal contempt proceedings for their continuing violation of the Court's Permanent Injunction Order and FOC.

Dated: August 23, 2023

PHILIPS MEDICAL SYSTEMS
(CLEVELAND), INC., and
PHILIPS MEDICAL SYSTEMS DMC, GmbH,

By its attorneys,

/s/ *Adam P. Samansky*
Adam P. Samansky (admitted *pro hac vice*)
Joseph D. Rutkowski (admitted *pro hac vice*)
Nicholas W. Armington (admitted *pro hac vice*)
Mintz, Levin, Cohn, Ferris, Glovsky
 and Popeo, P.C.
One Financial Center

12

Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
apsamansky@mintz.com
jdrutkowski@mintz.com
nwarmington@mintz.com

Jeremy Goldkind (ARDC No. 6282972)
Steptoe & Johnson LLP
227 West Monroe St., Suite 4700
Chicago, IL 60606
Ph: (312) 577 1251
Fax: (312) 577 1370
jgoldkind@steptoe.com

## CERTIFICATE OF SERVICE

I, Adam P. Samansky, do hereby certify that I caused a copy of the foregoing document to be served upon the below-listed individual and counsel of record via E-mail on August 23, 2023, at the following addresses:

Lanyong Zhang, CEO
(zhanglanyong@ksyymedical.com)
Kunshan Yiyuan Medical Technology Co, Ltd.
No. 28 Xihu Road
Kunshan
Jiangsu Province, China 215333

/s/ *Adam P. Samansky*
Adam P. Samansky (admitted *pro hac vice*)
Joseph D. Rutkowski (admitted *pro hac vice*)
Nicholas W. Armington (admitted *pro hac vice*)
Mintz, Levin, Cohn, Ferris, Glovsky
 and Popeo, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
apsamansky@mintz.com
jdrutkowski@mintz.com
nwarmington@mintz.com

Jeremy Goldkind (ARDC No. 6282972)
Steptoe & Johnson LLP
227 West Monroe St., Suite 4700
Chicago, IL 60606
Ph: (312) 577 1251
Fax: (312) 577 1370
jgoldkind@steptoe.com

14