IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC., and PHILIPS MEDICAL SYSTEMS DMC, GmbH, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOSE BUAN, GL LEADING TECHNOLOGIES, INC., KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD., KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD., SHERMAN JEN, and ALLISON HIBBARD, <br><br> *Defendants*. | No. 19 C 2648 <br><br> Chief Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions, two for contempt and one for sanctions, Plaintiffs Philips Medical Systems (Cleveland), Inc. and Philips Medical Systems DMC, GmbH (together, "Philips") have filed against Defendants Kunshan Yiyuan Medical Technology Co., Ltd. ("Yiyuan") and Kunshan GuoLi Electronic Technology Co., Ltd. ("GuoLi") (together, the "Kunshan Defendants"); Yiyuan's nonparty CEO, Lanyong Zhang; and GuoLi's nonparty chairman, Jianping Yin. (Dkt. 545; Dkt. 673; Dkt. 700) For the below reasons, the Court grants Plaintiffs' contempt motions [545] [673] and grants Plaintiffs' motion for sanctions [700].

## BACKGROUND

The parties are familiar with the facts of this 2019 trade secrets case as outlined in the Court's numerous prior orders. (*See* Dkt. 484 at 2–6; Dkt. 629 at 2). Accordingly, the Court

1

incorporates those prior factual summaries in full and only provides the most relevant facts to the resolution of the instant motions below.

After Philips obtained a default judgment against the Kunshan Defendants on May 26, 2022, (Dkt. 419), the Court issued a permanent injunction on February 9, 2023 directing Yiyuan and GuoLi to, among other things, cease using Philips's trade secrets; halt all manufacturing, distribution, and sales of the GLA2153 and YY8019 products; and return Philips's trade secrets within 21 days of receiving notice of the Permanent Injunction Order. (Dkt. 503). Four months after issuing the Permanent Injunction Order, on July 13, 2023, this Court found that there was clear and convincing evidence that the Kunshan Defendants violated the injunction and that civil contempt sanctions were warranted. (Dkt. 520 at 21). Philips submitted a proposed contempt order four days later, on July 17, 2023. (Dkt. 522). At this point, the Kunshan Defendants had been unrepresented by counsel for nearly fourteen months. (*See* Dkt. 420; Dkt. 690 at 1–3). On July 19, 2023, however, a new attorney filed an appearance on GuoLi's behalf and promptly filed a motion for reconsideration of the Court's decision that contempt sanctions were appropriate. (*See* Dkt. 524; Dkt. 629 at 2).

The Court entered its First Order of Contempt against Yiyuan, which remained unrepresented, on July 24, 2023. (Dkt. 527). But because of GuoLi's motion for reconsideration and additional legal challenges—all of which were ultimately rejected—the Court did not enter an order of contempt against GuoLi until January 19, 2024. (Dkt. 630). The substance of the two contempt orders are the same. In relevant part, the First Orders of Contempt required both Yiyuan and GuoLi to, within seven calendar days, serve on Philips and file with the Court "schedules sworn by a knowledgeable officer and/or director of the entity" setting forth: (1) specific information concerning all "interests in any United States bank or other financial institution

2

account or real or personal property or other tangible asset(s) located in the United States," (Dkt. 527 ¶ 3; Dkt. 630 ¶ 3), and (2) "every transaction involving the purchase, sale or other disposition of any real or personal property or other tangible thing having a value greater than $5,000.00 . . . on or after May 18, 2023, the date on which Plaintiffs filed their Motion for Contempt" and detailed information pertaining to each transaction, (Dkt. 527 ¶ 4; Dkt. 630 ¶ 4).

Philips argues that Yiyuan, and its CEO Zhang, have done nothing to comply with the terms of the First Order of Contempt, but specifically point to the company's failure to provide the required schedules described above. (Dkt. 545 at 3–4, 4 n.2). GuoLi, for its part, submitted some information pertaining to its current assets and volume of transactions exceeding $5,000 during the period specified in the First Order of Contempt, and requested an extension to fully comply with paragraph four of the contempt order. (Dkt. 673 at 4; Dkt. 632 at 2–3). The Court granted GuoLi an extension but, instead of complying by the new deadline, GuoLi instead filed an interlocutory appeal challenging the order, (Dkt. 643), and moved to stay compliance with the contempt order pending appeal, (Dkt. 644). When both of those maneuvers proved unsuccessful, GuoLi failed to file or serve the schedule of transactions required in paragraph four of the contempt order. (Dkt. 673 at 3–4; Dkt. 630 ¶ 4).

Based on the above conduct, Philips filed a Second Motion for Contempt against Yiyuan on August 23, 2023 and a Second Motion for Contempt against GuoLi on May 30, 2024. (Dkt. 545; Dkt. 673). As part of those motions, Philips asks the Court to also hold GuoLi's chairman, Jianping Yin and Yiyuan's CEO, Lanyong Zhang in contempt.[1] Finally, Philips requests that both entities and both individuals be referred to the United States Attorney's Office for criminal

---

[1] Philips's First Motion for Contempt requested the Court hold Yin and Zhang in contempt as well as the entities, but the Court declined to do so. (Dkt. 520 at 21).

3

contempt proceedings based on their continuing violation of Court orders. (Dkt. 545 at 10; Dkt. 673 at 11–12).

On July 7, 2025, this case was reassigned to this Court from the Hon. Marvin E. Aspen. (Dkt. 715). At a status hearing on July 17, 2025, Philips's counsel confirmed that the Kunshan Defendants have not materially changed their conduct in the months since both contempt motions became fully briefed. (Dkt. 718).

## **LEGAL STANDARD**

Contempt sanctions may be civil or criminal. In distinguishing between the two, the Court considers "the character and purpose of the punishment." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102 (N.D. Ill. 2012). Criminal contempt is designed to punish, deter, and vindicate the court's authority while civil contempt is coercive or remedial, "designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Courts may impose civil contempt sanctions against parties based on their "inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Id.* (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir.1999)). A court must have personal jurisdiction over an individual before holding him in contempt. *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 n.2 (N.D. Ill. 2008); *see also Brook v. McCormley*, 873 F.3d 549, 551–52 (7th Cir. 2017) ("In order for a district court to bind an individual, the court must have personal jurisdiction over the individual").

The Court also possesses the inherent authority to sanction parties who have willfully abused the judicial process or otherwise litigated in bad faith. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)

4

(recognizing sanctions may be appropriate when a party, in bad faith, delays or disrupts the litigation or hampers the enforcement of court orders). Any sanction imposed must be proportionate to the circumstances. *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019).

## DISCUSSION

### I. The Court's Authority Over Nonparties Lanyong Zhang and Jianping Yin

The Court declined Philips's first request to hold Zhang and Yin in contempt. (*See* Dkt. 512 at 1; Dkt. 520 at 20–21). Philips's second contempt motions now reargue the point on why these individual nonparties should themselves be held in contempt, not just the companies for which they work. (*See* Dkt. 545 at 10–11; Dkt. 673 at 12). In response, both Zhang and Yin argue that, as nonparty Chinese nationals, the Court has no personal jurisdiction over them. *See Brook*, 873 F.3d at 551–52.

Federal Rule of Civil Procedure 65 extends a permanent injunction's reach to a company's "officers, agents, servants, employees, and attorneys." Fed. R. Civ. P. 65(d)(2)(B). The rule further provides the court with "independent authority to enforce its own injunctive decrees." *S.E.C. v. Homa*, 514 F.3d 661, 673 (7th Cir. 2008); *see* Fed. R. Civ. P. 65(d). Thus, regardless of party status, any "person who knowingly circumvents a [court] order . . . thereby submits to the jurisdiction of the court for contempt proceedings." *Homa*, 514 F.3d 661, 674 (7th Cir. 2008). The Seventh Circuit relied heavily on the Fifth Circuit's decision in *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985) in establishing this principle in *Homa*, which extends directly from the "long-established" rule that "activity designed to have a purpose and effect in the forum" will subject the person who undertook those actions to the court's jurisdiction. *Homa*, 514 F.3d at 673–75.

5

Zhang, as Yiyuan's CEO, and Yin, as GuoLi's Chairman, are undoubtedly "officers" of two companies, bound by this Court's permanent injunction. Fed. R. Civ. P. 65(d)(2)(B); (Dkt. 503 at 3–4 ("Pursuant to Federal Rule of Civil Procedure 65(d)(2), this Order is binding upon . . . the Kunshan Defendants; the Kunshan Defendants' officers, agents, servants, employees, and attorneys; and any other entities or persons who are in active concert or participation with any entity or person described in this paragraph.")). Neither Zhang nor Yin contest that they have actual knowledge of the Permanent Injunction Order. And the Court has previously found that Zhang's conduct, particularly as evidenced by an email he sent to Philips's counsel, (Dkt. 512-3), demonstrates his own "willful noncompliance" with a Court order that is "clearly sanctionable." (Dkt. 520 at 20). As the Court has previously discussed, Zhang, in that email, cc'd Yin and spoke on both of their behalf, for example, threatening to sue Philips and their counsel: "If you continue to disseminate information about the U.S. litigation, including the injunction, to GuoLi and Yiyuan's customers and stakeholders in China, *we* will consider suing Philips and you in the Chinese courts for alleged commercial disparagement." (Dkt. 512-3 (emphasis added)). Presented with no new information explaining Zhang's or Yin's actions from the time the Court entered its Permanent Injunction Order and today, (*see* Dkt. 588 at 14–15; Dkt. 676 at 6–9), the Court declines to revisit its prior rulings and finds that both individuals have personally and knowingly circumvented this Court's Permanent Injunction Order, rendering civil contempt proceedings appropriate as to each of them. *See Reich v. Sea Sprite Boat Co., Inc.*, 64 F.3d 332, 334 (7th Cir. 1995) (noting "corporate officers who procure their firm's disobedience to judicial orders are responsible for their acts" and may be held in contempt of court).

Conduct aside, Zhang and Yin's personal jurisdiction arguments primarily rely on their status as nonparty Chinese nationals. They suggest *Homa*'s holding is limited by the fact that the

6

nonparties held in contempt in that case were American citizens living abroad, and does not extend to foreign nationals like themselves. (Dkt. 588 at 7–8; Dkt. 676 at 8–9). This is a losing argument. The court in *Homa* unequivocally stated that "[j]urisdiction over persons who knowingly violate a court's injunctive order, even those *without any other contact with the forum*, is 'necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process.' " *Homa*, 514 F.3d at 675 (quoting *Waffenschmidt*, 763 F.2d at 714). While the *Homa* nonparties' U.S. citizenship strengthened the case for the court's exercise of personal jurisdiction, there is nothing in the opinion to suggest that it was necessary to the outcome. *Id.* To the contrary, the court held that the nonparties' knowing actions in concert with the defendant to violate the district court's orders were alone sufficient to establish jurisdiction and satisfy due process. *Id.* With such clear direction from the Seventh Circuit, Zhang and Yin's citizenship does not materially alter the calculus, even considering one out-of-circuit case to the contrary. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 227 (4th Cir. 2019) (holding *Waffenschmidt*'s " 'super-contact' theory is insufficient as a matter of law" when applied to foreign nonparties).

Moreover, the broader body of caselaw from circuit and district courts around the country cite both *Waffenschmidt* and *Homa* favorably for the proposition that a person's knowing violation of a court order subjects them to that court's jurisdiction. *See ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1215–16 (10th Cir. 2011) (adopting the rule from *Homa* that a "district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order"); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970–71 (11th Cir. 2012) (citing *Waffenshmidt* and recognizing a district court's power to assert personal jurisdiction over nonparty contemnors who knowingly violate that court's

order); *GCM Partners, LLC v. Hipaaline Ltd.*, 2021 WL 1526669, at \*7 (N.D. Ill. Apr. 19, 2021) (applying *Homa* to exercise jurisdiction over nonparties who knowingly violated the court's preliminary injunction order); *Empire Indus., Inc. v. Winslyn Indus., LLC*, 2019 WL 339544, at \*4 (N.D. Ill. Jan. 28, 2019) (same but limited to contempt proceedings); *ABI Jaoudi & Azar Trading Corp. v. Cigna Worldwide INS. Co.*, 2016 WL 3959078, at \*7 (E.D. Pa. July 22, 2016) (rejecting the argument that *Waffenshmidt*'s reasoning does not apply to foreign nationals and noting "there is nothing unfair about conferring a court's jurisdiction over any individual who conspires with a bound party to violate that court's injunction").

Especially in our interconnected business world—where trade secrets can be whisked off to foreign jurisdictions in milliseconds—a foreign national loophole to the court's ability to hold foreign officers and agents, or aiders and abettors more broadly, in contempt would dramatically undercut the Court's inherent ability to enforce its own orders and the force of Fed. R. Civ. P. 65(d). The Court declines to create such a loophole in this case and instead follows the Seventh Circuit's direction from *Homa*. *Cf. Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."). Any resulting intrusion on Chinese sovereignty is limited and does not compel a different result. For one, the Court has repeatedly rejected the Kunshan Defendants' invocation of Chinese sovereignty to limit the reach of the Court's authority or the potency of its orders. (*See* Dkt. 303 at 31–33; Dkt. 386 at 7, 13–16; Dkt. 520 at 19). And second, this is not a case where the nonparty contemnor merely "help[ed] another violate an injunction for selfish reasons that make him merely indifferent to any effect in the forum," as was the case in *Hawkins*, but rather involves

a pattern of flagrant violations of this Court's rulings expressly aimed at the forum, bolstering the Court's interest in holding Zhang and Yin accountable for their actions irrespective of where they live. *Hawkins*, 935 F.3d at 231; *see also Atricure, Inc. v. Meng*, 842 F. App'x 974, 983 (6th Cir. 2021) ("[T]he international reach of the injunction comports with the equities of the case and [] the injunction does not offend international comity."); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 2021 WL 5276668, at *10 (D. Minn. Nov. 12, 2021) (rejecting *Hawkins*'s reasoning in part because the nonparty contemnors acted not with indifference but with the express purpose of avoiding the court's judgment).

For the above reasons, the Court concludes that exercising personal jurisdiction over Zhang and Yin for the purposes of the instant contempt motions "comport[s] with traditional notions of fair play and substantial justice." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 623 (7th Cir. 2022) (quoting *Curry v. Revolution Lab'ys., LLC*, 949 F.3d 385, 398 (7th Cir. 2020)).

## II. Contempt as to the Kunshan Defendants, Lanyong Zhang, and Jianping Yin

The Court now turns to the substance of Philips's motions for contempt. Philips requests that the Court: (1) bar Yiyuan, GuoLi, Zhang, and Yin from doing any business of any kind in the United States; (2) freeze all of their assets in the United States; (3) bar them from "obtaining any parts or components that can be used in the manufacture of the GLA2153 and/or YY8019"; (4) and refer all four to the United States Attorney's Office for criminal contempt proceedings. (Dkt. 545 at 12; Dkt. 673 at 14). Philips further asks the Court to impose a $20,000 per day sanction on GuoLi until it complies with the Permanent Injunction and paragraph four of the First Order of Contempt. (Dkt. 673 at 12–14). A party moving for an order of contempt must prove, by clear and convincing evidence, that: (1) a court order sets forth an unambiguous command; (2) violation of that command by the contemnor; (3) that the contemnor did not substantially comply with the

9

order, resulting in a significant violation; and (4) the contemnor failed to undertake "a reasonable or diligent effort to comply." *Clay Fin. LLC v. Mandell*, 2020 WL 13608316, at *3 (N.D. Ill. Nov. 30, 2020) (citing *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010)). Contempt sanctions are an appropriate remedy for a violation of a court-issued injunction. *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1114 (N.D. Ill. 2012).

Philips has proposed robust civil contempt sanctions in addition to those already imposed on GuoLi and Yiyuan that it claims will have at least some "likelihood of changing [the Kunshan Defendants'] unlawful conduct." (Dkt. 545 at 10; Dkt. 673 at 12). Yet at the same time Philips claims to have met its burden of showing that the Kunshan Defendants have themselves "established unequivocally that [they] will not comply with the Courts orders" absent a referral to the United States Attorney's Office for criminal contempt proceedings. (Dkt. 545 at 10). Philips cannot have it both ways. *See United States v. Wilson*, 421 U.S. 309, 317 n.9 (1975) ("The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate."). Philips's proposed sanctions are both broad and severe, and the Court deems at least some of them appropriate considering the Kunshan Defendants' and their leaderships' continued intransigence and willful disregard of Court orders. If these measures fail to coerce the Kunshan Defendants and their high-ranking officers to comply with the Permanent Injunction and First Order of Contempt, then it may be appropriate to resort to criminal sanctions. But the Court will not issue broader civil contempt sanctions at the same time as a referral for criminal contempt proceedings considering criminal contempt sanctions are only appropriate when there is "no reasonable possibility that the contemnor would ever comply with the court's demands." *Mon Ros Int'l for Gen. Trading & Contracting, W.L.L. v. Anesthesia USA, Inc.*,

10

2019 WL 132596, at *3 (N.D. Ill. Jan. 8, 2019) (citation modified). Philips implicitly concedes some reasonable possibility of compliance, even if slim, in proposing additional civil sanctions.

Next, the Court considers whether Philips has made the necessary showing for a second order of civil contempt against the Kunshan Defendants, and a first order of civil contempt against Zhang and Yin. At bottom, nothing has changed in the many months since the Court first held GuoLi and Yiyuan in contempt for violating the unambiguous terms of the Permanent Injunction. (*See* Dkt. 520 at 17–18). Indeed, Zhang, GuoLi, and Yin, in their opposition papers to Philips's contempt motions say nothing about any efforts they have undertaken to change their conduct. As for Yiyuan, it has remained without counsel since May 27, 2022 and filed no opposition to Philips's Second Motion for Contempt. *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008) ("A corporation is not permitted to litigate in a federal court unless it is represented by a lawyer licensed to practice in that court.").

GuoLi reaches for stale arguments that the Court has conclusively rejected as to why it is not in violation of the Permanent Injunction Order. For example, it claims that Yiyuan is not a GuoLi subsidiary (it is). (*See* Dkt. 629 at 12–13). The Court previously adjudged GuoLi to be in violation of the permanent injunction, (Dkt. 520 at 17–19), and rejected GuoLi's request for reconsideration of that determination, (Dkt. 629 at 10–14). The Court will not permit GuoLi a third bite at the apple when it declines to offer any substantive discussion of how it has altered its conduct in response to the Court's prior orders. As demonstrated by the declarations and exhibits accompanying Philips's contempt motions, as well as counsel's statements on the record during a July 17, 2025 status hearing, both the GLA 2153 and YY8019 remain on the market, in clear violation of the Permanent Injunction, which prohibits the Kunshan Defendants from "manufacturing, distributing, or selling the GLA2153 and/or YY8019 products under any model

11

name, alias, or other designation." (Dkt. 503 ¶ 3; *see also* Ex. 1, Dkt. 673-1). Accordingly, the Kunshan Defendants remain in significant violation of the unambiguous provisions of the Permanent Injunction and have made no reasonable or diligent efforts to comply, justifying further sanctions, especially considering more than two years has passed since the Court initially made these same findings. (*See* Dkt. 520 (July 13, 2023)).

It is also clear that the Kunshan Defendants are now in clear violation of the First Orders of Contempt entered against them. (Dkt. 527; Dkt. 630). Paragraph four of both orders require GuoLi and Yiyuan to provide Philips and the Court with a schedule of "every transaction involving the purchase, sale or other disposition of any real or personal property or other tangible thing having a value greater than $5,000.00 . . . on or after May 18, 2023, the date on which Plaintiffs filed their Motion for Contempt." (Dkt. 527 ¶ 4; Dkt. 630 ¶ 4). Yiyuan, having done nothing in this litigation for years, has not complied with the unambiguous terms of this paragraph, and has made no reasonable efforts to do the same, resulting in a significant violation. GuoLi took some steps that, at one point, could have been characterized as reasonable efforts to comply, including seeking an extension, which the Court granted. (*See* Dkt. 633). Subsequently though, GuoLi filed an interlocutory appeal of the permanent injunction, which was dismissed for lack of jurisdiction approximately one year ago, on September 26, 2024. (Dkt. 687). Then GuoLi's attorney moved to withdraw from the case, and, to date, GuoLi has failed to comply with paragraph four of the First Order of Contempt, also representing a significant violation. Renewed contempt sanctions are thus appropriate against the Kunshan Defendants for their disregard of the Court's first contempt orders in addition to their continued violation of the Permanent Injunction Order.

As discussed above in the Court's review of jurisdiction, nonparties Zhang and Yin have also knowingly violated the Court's Permanent Injunction Order. The Court incorporates here its

prior finding that "Zhang's willful noncompliance" with the Permanent Injunction Order is "clearly sanctionable," based, at least in part, on his email to Philips's counsel justifying the Kunshan Defendants' noncompliance and threatening to retaliate against Philips and its counsel with Chinese lawsuits for their efforts to enforce the injunction. (Dkt. 520 at 19–20). Yin was included on that email and Zhang purported to speak on both individuals' behalf. Again, neither Zhang nor Yin explain how, if at all, their conduct has changed considering this Court's orders. Accordingly, the Court finds that there is clear and convincing evidence Zhang and Yin "willfully refused to comply with a court order," here the permanent injunction. *Bailey v. Roob*, 567 F.3d 930, 935 (7th Cir. 2009). While the Court declined to hold either individual in contempt in its prior order, their continued pattern of noncompliance now calls for more specific sanctions, as opposed to those levied solely against the Kunshan Defendants. (Dkt. 520 at 20–21).

      Zhang's separate arguments that contempt sanctions against him are inappropriate because he was improperly served with Philips's First Motion for Contempt and denied a meaningful opportunity to be heard on that motion are moot. (Dkt. 588 at 11–14). The motion currently pending before the Court is Philips's *Second* Motion for Contempt. (Dkt. 545). While Philips requested that Zhang be held in contempt in its first motion, the Court did not impose any contempt sanctions against Zhang personally. (Dkt. 520). Zhang makes no mention of insufficient service of process or inadequate opportunity to be heard concerning this Second Motion for Contempt or the Permanent Injunction Order itself. This is true despite having an opportunity to address those points in his Sur-Reply after Philips raised them in its Reply brief. (Dkt. 593 at 12; Dkt. 602 at 4–6). Just as the filing of an amended complaint moots a motion to dismiss for insufficient service of process, so too does Philips's renewed motion for contempt moot Zhang's argument that service of the first motion—which did not result in a contempt finding—was deficient. *Cf. Johnson v.*

13

*Dossey*, 515 F.3d 778, 780 (7th Cir. 2008). Having failed to address the Second Motion for Contempt at all, Zhang has "waived any defense [he] might have based on defective service." *Greene v. CCDN, LLC*, 853 F. Supp. 2d 739, 743–44 (N.D. Ill. 2011). Finally, it is uncontroverted that Zhang had actual notice of the Permanent Injunction and Second Motion for Contempt. (*See* Dkt. 512-3; Dkt. 588). And his extensive briefing in response to the Second Motion for Contempt combined with his failure to ever request a hearing belies any argument that the Court has denied Zhang a meaningful opportunity to be heard. (Dkt. 588; Dkt. 602).

Considering all of the above, an order barring GuoLi, Yin, Yiyuan, and Zhang from doing any business of any kind in the United States; freezing any assets they have in the United States; and preventing them from obtaining any parts or components that can be used in the manufacture of the GLA2153 or YY8019, without geographic restriction, until they comply with the terms of the Permanent Injunction Order and First Order of Contempt is appropriate. *See In re Grand Jury Proceedings*, 280 F.3d 1103, 1107 (7th Cir. 2002) ("If the contemnor retains the ability to purge the contempt and obtain his release by committing an affirmative act . . . the order is coercive, and therefore civil."); *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir. 1988) ("A court has broad discretion to fashion a remedy based on the nature of the harm and the probable effect of alternative sanctions."). If, after 90 days of the entry of this order Philips believes the Kunshan Defendants and their executives remain in violation of this Court's orders, it may file a motion to convert these sanctions into criminal contempt sanctions.

### III. Sanctions Against GuoLi

Finally, the Court considers Philips's unopposed Motion for Sanctions against GuoLi for its alleged "bad faith delay tactics and abuses of the judicial process." (Dkt. 700 at 1). Specifically, Philips points to GuoLi's repeated changes of counsel to obtain discovery extensions and otherwise

delay the proceedings, only to fire its counsel when their representation is no longer convenient or furthers GuoLi's obstructionist ends. (*See* Dkt. 690 at 1–3). GuoLi is currently unrepresented, despite the well-settled rule that no corporation is "permitted to litigate in a federal court unless it is represented by a lawyer licensed to practice in that court." *Hagerman*, 545 F.3d at 581. But GuoLi has had four separate sets of attorneys over the more than six years this case has been pending. (*See* Dkt. 690 at 2 n.1 (summarizing GuoLi's attorneys' appearances and withdrawals)).

In 2021, GuoLi obtained two discovery extensions because of a counsel change and subsequently "abandoned" the litigation for fourteen months between 2022 and 2023. (Dkt. 629 at 8). GuoLi's lawyers who withdrew in 2022 cited "irreconcilable differences" born of GuoLi's refusal to comply with Court-ordered document productions against counsel's advice. (Dkt. 396; Dkt. 397). While GuoLi was unrepresented, the Court entered a default judgment against it, the "ultimate sanction" against a defendant for bad faith litigation conduct, based on the company's repeated disregard for Court orders. *United States v. Norwood*, F. App'x 365, 369 (7th Cir. 2020); (Dkt. 416 at 2–3; Dkt. 419). GuoLi did not reemerge in this case until July 19, 2023, when its most recent attorney filed her appearance. (Dkt. 523). This appearance came six days after the Court found that civil contempt sanctions against GuoLi were warranted, and two days after Philips filed a proposed contempt order. (Dkt. 520; Dkt. 522; Dkt. 523). GuoLi quickly moved for reconsideration of the contempt decision. (Dkt. 524). When that was denied, it filed a notice of appeal and moved for a stay of the contempt order. (Dkt. 643; Dkt. 644). The Court quickly denied GuoLi's motion for a stay because it failed to assert any basis for appellate jurisdiction. (Dkt. 647). And on September 26, 2024, the Seventh Circuit dismissed GuoLi's appeal for lack of jurisdiction. (Dkt. 686). Four days after the mandate issued—on October 22, 2024—GuoLi's most recent attorney moved to withdraw. (Dkt. 688).

15

Philips opposed GuoLi's prior attorney's motion to withdraw, raising concerns that it would be more difficult to bring this case to a conclusion if GuoLi was permitted to proceed without counsel. (Dkt. 700 at 2). But the Court eventually granted prior counsel's motion, primarily because GuoLi "(1) informed her they no longer want her to represent them; (2) directed her to stop working on the case; and, (3) stopped responding to counsel's requests for authority to respond to court orders." (Dkt. 695 at 1). The Court again warned GuoLi that it may be barred from "further participation in this litigation if it is unrepresented," and ordered that "[i]n the event GuoLi or Yin obtain new counsel, that lawyer must enter his or her appearance no later than 2/19/25." (*Id.* at 2–3). The February deadline came and went more than seven months ago and GuoLi has not hired replacement counsel.

GuoLi's pattern of hiring lawyers at the precise moment it wishes to challenge the Court's orders, only to fire them when that attorney's efforts to nullify those orders proves unsuccessful is problematic and has caused significant delays in bringing this case to final resolution. This is so even though the only thing remaining in this case concerning GuoLi is a prove-up hearing on actual damages. (Dkt. 677 at 4–5; *see also* Dkt. 691 at 4). Moreover, for years GuoLi has willfully and flagrantly violated Court orders, most recently the Permanent Injunction and First Order of Contempt. Accordingly, the Court finds that GuoLi has acted in bad faith in its routine hiring and firing of attorneys to disrupt the litigation and undermine the potency of the Court's orders. *See Chambers*, 501 U.S. at 46. Sanctions are appropriate.

The Court has considered Philips's requested sanctions in determining which are proportionate to the circumstances. *Donelson*, 931 F.3d at 569. At this time, the Court concludes that sanctions in line with those already imposed on GuoLi's subsidiary, Yiyuan, are appropriate, with certain modifications to account for GuoLi's additional aggravating conduct. (*See* Dkt. 642).

16

Accordingly, the Court grants GuoLi's first two requested sanctions and orders that: (1) GuoLi is barred from opposing, contesting, or presenting any evidence against the amount of damages sought by Plaintiffs and (2) all reasonable inferences must be drawn in Plaintiffs' favor and against GuoLi with respect to the amount of actual and punitive damages, if Plaintiffs are deemed to be entitled to punitive and/or exemplary damages. The Court declines to impose Philips's third requested sanction for a monetary penalty, payable immediately, in an amount equal to the recoverable attorneys' fees awarded as of July 2023 because the prove-up hearing date is close at hand, (Dkt. 719 (setting prove-up hearing for Nov. 24, 2025)), and the Court reserves entry of final judgment, including all monetary relief, until after that hearing. (Dkt. 520 at 10–15). And the Court declines to impose Philips's fourth requested sanction permanently barring GuoLi from conducting any business in the United States to avoid any conflict with the similar civil contempt sanction entered against GuoLi in this Memorandum Opinion.

**CONCLUSION**

For the above reasons, the Court grants Philips's Motions for Contempt [545] [673] and finds that additional civil sanctions are warranted. Philips is directed to file a proposed contempt order in accordance with this Memorandum Opinion within 14 days. The Court also grants Philips's Third Motion for Sanctions [700] against Defendant GuoLi. It is hereby ordered that GuoLi is barred from opposing, contesting, or presenting any evidence against the amount of damages sought by Plaintiffs and all reasonable inferences must be drawn in Plaintiffs' favor and against GuoLi with respect to the amount of actual and punitive damages, if Plaintiffs are deemed to be entitled to punitive and/or exemplary damages.

_____
Virginia M. Kendall
United States District Judge

Date: September 29, 2025