**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC., and PHILIPS MEDICAL SYSTEMS DMC, GmbH, *Plaintiffs*, v. JOSE BUAN, GL LEADING TECHNOLOGIES, INC., KUNSHAN YIYUAN MEDICAL TECHNOLOGY CO., LTD., KUNSHAN GUOLI ELECTRONIC TECHNOLOGY CO., LTD., SHERMAN JEN, and ALLISON HIBBARD, *Defendants*. | ) | No. 19 C 2648<br><br>Chief Judge Virginia M. Kendall |

**<u>OPINION & ORDER</u>**

Following the Court's permission to file the pending Motion, (Dkt. 770), third parties Nextvac LLC, JF Technologies LLC, and Jose Frias moved to modify the Second Contempt Order against Kunshan GuoLi Electric Technology Co., LTD. (Dkt. 771). For the reasons below, the motion is denied [771] and their motion for a ruling is dismissed. [782].

**<u>BACKGROUND</u>**

This trade secrets misappropriation case started in April 2019. The record is replete with factual summaries, (*see e.g.,* Dkt. 470 at 1-3; Dkt. 484 at 2-6; Dkt. 520 at 2-4; Dkt. 722 at 1-4). The facts below pertain to this Motion and the Court assumes familiarity with the factual record.

Starting in 2001, Jose Frias, who previously worked at an American company that produced a variety of engine and brake parts, (Dkt. 772-1 ¶ 2), began a 20-year tenure at Jennings Technology, Co., which specialized in "non-thermionic vacuum products, including vacuum and

gas-filled capacitors and relays, vacuum interrupters, vacuum contactors and vacuum coaxial relays." (*Id.* ¶ 3). Several large conglomerates eventually acquired Jennings, and, in 2017, GuoLi obtained all United States manufacturing capabilities. (*Id.* ¶¶ 3-4; Dkt. 772 at 3). In 2019, ABB—Jennings' parent company—terminated Jennings. (Dkt. 772-1 ¶ 4). In 2020, Frias founded JF Technologies, in which he was the middleman between customers and GuoLi, which was then the world's only manufacturer of several Jennings products. (*Id.* ¶ 5). Given his years of experience working with Jennings technology, Frias claims that he is "considered one of less than a handful of leading experts in High Voltage Vacuum Technology." (*Id.* ¶ 6).

In 2023, shortly after the passage of the CHIPS and Science Act of 2022, Frias founded Nextvac, a company that "deals with vacuum switches, capacitors, and relay switches." (*Id.* ¶ 7). He founded Nextvac in order to leverage the requirements of the CHIPS Act and offer his expertise in the field. (*Id.* ¶ 7). Nextvac provides consulting services with an array of American and international companies. (*Id.* ¶¶ 7-8). Nextvac consults with these companies about performance challenges and parts requirements. (*Id.* ¶¶ 7-8). Nextvac then helps these companies "come up with improvements to such parts that will meet their needs." (*Id.*) Together, Nextvac and the companies discuss performance challenges for parts that the companies require for their products, and the companies discuss their product specifications. (*Id.*) Nextvac then supports the companies in improving their products. (*Id.*) With respect to Nextvac's work with GouLi in particular, Nextvac provides GouLi with product specifications, and GouLi manufactures the products. (*Id.*) GuoLi then assigns those products a Nextvac part number and GouLi then ships the products directly to customers or to Nextvac's California warehouse. (*Id.*) Nextvac subsequently sells these products to companies worldwide, keeps a cut of the profit, and reimburses GouLi for the manufacturing. (*Id.*) Sometimes, Nextvac also orders "standard" GouLi products. (*Id.*)

On April 19, 2019, Philips sued various Defendants, alleging that they unlawfully obtained and used Philips' trade secrets in designing their products. (Dkt. 1). Philips added GuoLi as a defendant in November of 2019. (Dkt. 46). In June 2022, Philips moved for a permanent injunction order against GuoLi. (Dkt. 425). In response, Frias and JF moved to intervene under Federal Rule of Civil Procedure 24 to oppose Philips' motion for a permanent injunction. (Dkt. 438). Frias and JF Technologies argued—and the Court rejected—that they could intervene as of right because an "injunction would severely harm their business interests." (*See* Dkt. 470 at 4-5); (Dkt. 438-1 at 3-4). After over three years of fraught litigation, the Court entered a permanent injunction against GuoLi on February 9, 2023. (Dkt. 503). In January of 2024, after finding that GuoLi violated the permanent injunction, the Court signed its First Contempt Order against several Defendants, including GuoLi. (Dkt. 630). Based on evidence of noncompliance with the First Contempt Order, the Court entered its Second Contempt Order against GuoLi on November 24, 2025. (Dkt. 744). Among other mandates, the second Contempt Order bars GuoLi from conducting business within the United States, including doing business with other companies or institutions that would bring GuoLi into the American market. (Dkt. 744 ¶ 3).

On April 6, 2026, pointing to Local Rule 5.6, the Third Parties moved for leave to file a motion to modify the Second Contempt Order. (Dkt. 765). The Court granted that motion (Dkt. 770), and the Third Parties filed the pending Motion on May 1, 2026. (Dkt 771). They allege that the Second Contempt Order has "severely harmed" them and that they "will be irreparably harmed" unless the Court makes "some modifications to the order[.]" (Dkt. 772 at 2). They request that the Court "slightly modify" the Second Contempt Order so that the Third Parties may engage in various business practices that the Second Contempt Order allegedly bars. (*Id.* at 5-6).

## LEGAL STANDARDS

## I. Intervention as of Right and Permissive Intervention

"[I]ntervention may be as of right or it may be permissive." Fed R. Civ. P. 24. "A non-party who wishes to intervene as of right must (1) claim an interest "relating to the property or transaction that is the subject of the action," (2) "be so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect that interest," and (3) existing parties must not be adequate representatives of the movant's interest. Fed. R. Civ. P. 24(a)(2); *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 190 (2022). Permissive intervention, on the flipside, empowers a district court to allow a third party to intervene if—among other things—they have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is within the sound discretion of the district court. *Bost v. Illinois State Bd. of Elections*, 75 F.4th 682, 690 (7th Cir. 2023). "In exercising [this] discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Regardless of the intervention method, the potential intervenor bears the burden of establishing the requisite elements for intervention. *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019) (intervention as of right requires that the movant prove all four elements, and failure to show even one element equates to denial); *see Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (the proposed permissive intervenor must demonstrate that there is a common question of law or fact). All motions to intervene must also be timely. Fed R. Civ. P. 24(a)-(b). Four factors affect the timeliness of an intervention: "(1) the length of time the intervenor knew or should have known of [its] interest in the case, (2) the prejudice to the original party caused by the delay, (3) the prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances." *Heartwood, Inc. v. U.S.*

*Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (cleaned up). Whether a motion is timely is within the discretion of the trial court, and the court evaluates it under the totality of the circumstances. *Shea v. Angulo*, 19 F.3d 343, 348 (7th Cir. 1994).

## II. Civil Contempt Orders

The Court possesses the inherent authority to sanction parties who have willfully abused the judicial process or otherwise litigated in bad faith. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (recognizing sanctions may be appropriate when a party, in bad faith, delays or disrupts the litigation or hampers the enforcement of court orders). Sanctions must be proportionate to the circumstances. *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019).

# DISCUSSION

## I. The Third Parties' Intervention

Before reaching the merits of the Third Parties' arguments, the Court must address a procedural hurdle: whether the Third Parties are, in fact, intervenors. The Third Parties are not named parties to this case and have not received permission to intervene, despite their assertion that the Court permitted them to "come into" the case in its April 29, 2026, minute entry. (Dkt. 777 at 3; *see* Dkt. 770). While the Third Parties are correct that the Court allowed them to file a motion to modify the Second Contempt Order, (Dkt. 770), the Court's minute entry does not transform them into interveners. Rather, the Court entered Dkt. 770 in response to the Third Parties' request for leave to file a motion (Dkt. 765). In other words, Dkt. 770 merely allowed the Third Parties to file the currently pending Motion (Dkt. 771). The minute entry is, on its face, a mere permission to file the present Motion. (*See* Dkt. 770). The minute entry therefore could not have been an order on whether the Third Parties are proper intervenors. *See State v. City of Chi.*,

212 F.3d 979, 989 (7th Cir. 2019) (on a motion to intervene, the district court must consider "the appropriate factors and discuss them in detail sufficient for [the appellate court] to review on appeal.").

Unless and until the Court allows intervention, the Third Parties may not file motions requesting relief. *See* L.R. 5.6 ("No pleading, motion (except for a motion to intervene), or other document shall be filed in any case by any person who is not a party thereto, unless approved by the court."); *see Saban v. U.S. Dep't of Lab.*, 509 F.3d 376, 379 (7th Cir. 2007) ("the [non-party], while peppering us with briefs, has never moved to intervene, and so is not a party to this proceeding."). In the interest of judicial efficiency, however, the Court addresses the Third Parties' Motion as both one to intervene and one seeking modification of the Second Contempt Order. *See e.g.*, *U.S. v. Griffin*, 782 F.2d 1393, 1399 (7th Cir. 1986) ("The . . . motion was not styled as one for intervention, but a court is entitled to disregard labels and treat pleadings for what they are.").

The first prong of intervention as of right requires the proposed intervenor to have a "direct, significant and legally protectable interest in the [subject] at issue in the lawsuit." *Bost*, 75 F.4th at 686 (citing *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985)) (alterations in original). The interest must be "unique" to the proposed intervenor. *Wisc. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (citing *Keith*, 764 F.2d at 1268). In other words, it must be "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *Bost*, 75 F.4th at 687 (quoting *Keith*, 764 F.2d at 1268). A "mere economic interest" is insufficient for purposes of Rule 24(a). *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009); *see also Thompson v. United States*, 268 F.R.D. 319, 322 (N.D. Ill. 2010) (a purely practical economic interest fails Rule 24(a)).

The Third Parties contend that they have suffered both actual and imminent economic harm because of the Second Contempt Order. (Dkt. 772 at 6-7). They argue that their "[b]usiness existence is on the brink of ruin," and that, without modification to the Second Contempt Order, they will continue to suffer economic harm. (*Id.* at 7, 9). Because the only harms that they assert boil down to an economic interest in doing business with GuoLi, the Third Parties fall short of Rule 24(a)'s requirements for intervention as of right. *See e.g., Thompson*, 268 F.R.D. at 322 (a purely practical economic interest is insufficient to justify intervention). Because the Third Parties fail on the first required prong, they cannot intervene as of right, and the Court declines to review the other required elements.

The Third Parties also fail to show that permissive intervention pursuant to Rule 24(b) is proper. This is Frias and JF's second bite into the intervention apple. (*See* Dkt. 470). Again, they—and now, Nextvac, too—do not identify a claim or defense that they seek to assert in the ongoing litigation. Throughout their Motion, the Third Parties explain that their industry requires them to work with GuoLi, that their business has nothing to do with X-ray tubes, and that the Second Contempt Order forces their businesses to suffer in a few ways: decreased sales and consulting revenue despite still paying renthouse rent, absorption of operational expenses, and termination of several employees. (Dkt. 772 at 3-7). These are all factual assertions, but none of them are claims or defenses that they seek to assert in this litigation. As with Frias and JF's first motion to intervene, the Third Parties fall short of their burden; permissive intervention is not warranted.

Even if the Third Parties provided a claim or defense to the underlying action, permissive intervention would still not be proper. In weighing whether permissive intervention is warranted, the Court considers whether intervention would prejudice the original parties. Fed. R. Civ. P. 24(b)(3). GuoLi has violated the Court's Permanent Injunction Order several times. (Dkt. 527 at

1; Dkt. 744 at 1). The violations were sufficient to warrant not one, but two, contempt orders. (Dkt. 630; Dkt. 744). Philips contends that allowing Third Parties to intervene for the purpose of modifying the Second Contempt Order would fundamentally undermine the intent of both Contempt Orders. (Dkt. 776 at 13-14). Indeed, Nextvac facilitates GuoLi's engagement with the U.S. market: Nextvac operates as a consulting bridge between GuoLi and its customers through which Nextvac communicates customer needs and specifications to GuoLi. (Dkt. 772-1 at 3). GuoLi then manufactures the products and ships them to Nextvac's California warehouse, where the products are assigned a Nextvac part number. (*Id*. at 3-4). Nextvac finally sells the products to American and international customers, then pays GuoLi for the manufacturing costs. (*Id*. at 4). Allowing this collaboration would invite GuoLi back into the U.S. marketplace and undermine the purpose of the Second Contempt Order. It would also raise the potential for GuoLi to misappropriate Philips' trade secrets and would complicate enforcement of the Court's orders. Permissive intervention is not proper.

## II. Modification of the Second Contempt Order Against GuoLi

Setting aside that the Third Parties are not proper intervenors, their Motion would still be unsuccessful in seeking modification of the Second Contempt Order. The Third Parties purport to bring their Motion under Local Rule 5.6 and do not identify any other rule as the basis for their Motion. (Dkt. 772 at 1). Except for parties moving to intervene, Local Rule 5.6 *bans* individuals without Court approval from filing documents in cases to which he or she is not a party.

Regardless, modification of the Second Contempt Order is improper. Civil contempt rests on a court's inherent authority "to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999)). The Third

parties urge the Court to modify the Second Contempt Order against GuoLi because the industry in which the Third Parties work has developed in a way that forces them to work with GuoLi and because the Second Contempt Order has and will continue to irreparably economically harm them. (Dkt. 772 at 3-7). Philips argues that the Third Parties' requested relief would materially benefit GuoLi and undermine the contempt sanctions, (Dkt. 776 13-14), and that any modification would promote a willful violation of Court Orders. (*Id.* at 15). Philips also raises a slippery slope argument, positing that if the Court modifies the Second Contempt Order, it will swing open the door to any affected third party to seek modification of the Second Contempt Order. (*Id.*) As discussed, modifying the Second Contempt Order would allow GuoLi to reenter the American market and undermine and risk the potential for GuoLi to misappropriate Philips' trade secrets. It would also complicate enforcement of the Court's orders. The Court declines to exercise its discretion in favor of modifying the Second Contempt Order.

**CONCLUSION**

The Third Parties' Motion to Modify the Second Contempt Order Against GuoLi is denied. [771] and their motion for a ruling as dismissed. [782].

Virginia M. Kendall
United States District Judge

Date: November 12, 2026